1  John P. Kristensen (SBN 224132)
2  **KRISTENSEN LAW GROUP**
   120 Santa Barbara St., Suite C9
3  Santa Barbara, California 93101
4  Telephone: (805) 837-2000
   *john@kristensen.law*
5

6  Josh Sanford*                              Devin J. Stone (SBN 260326)
   Arkansas Bar No. 2001037                   **EAGLE TEAM LLP**
7  Jarrett Ellzey*                            1050 Connecticut Ave., NW
   Texas Bar No. 24040864                     Suite 5038
8  Leigh S. Montgomery*                       Washington, DC 20036
9  Texas Bar No. 24052214                     Telephone: (833) 507-8326
   **EKSM, LLP**                              *devin@eagleteam.law*
10 1105 Milford Street
11 Houston, Texas 77066
   Telephone: (713) 554-2377
12 *jsanford@eksm.com*
13 *jellzey@eksm.com*
   ***Attorneys for Plaintiffs and all***
14 ***others similarly situated***
15 (* denotes *pro hac vice* forthcoming)

16

17                    **THE UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA –**
18                          **SAN JOSE DIVISION**

19 Wendover Productions, LLC, a        ) Case No.: 5:24-cv-9470
   Limited Liability Company;          )
20 Businessing, LLC, a Limited         ) **CLASS ACTION**
21 Liability Company;                  )
                                       ) **COMPLAINT FOR DAMAGES**
22    *Plaintiffs*                     ) **FOR:**
23                                     )
          vs.                          ) (1) Intentional Interference with
24                                     )     Contractual Relations; and
                                       ) (2) Intentional Interference with
25 PAYPAL, INC.,                       )     Prospective Economic
26                                     )     Relations; and
      *Defendant.*                     ) (3) Injunctive Relief.
27                                     )
                                       ) **DEMAND FOR JURY TRIAL**
28                                     )

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
-1-

Plaintiffs Wendover Production, LLC ("Wendover") and Businessing, LLC ("Businessing") (collectively "Plaintiffs"), by and through their undersigned counsel, plead on their own behalf and on behalf of all others similarly situated. Plaintiffs make the following allegations upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record.

## I. INTRODUCTION

1. Plaintiffs are content created who earn a substantial amount of their revenue through contracts for promoting products and services. Plaintiffs are paid when they send followers or subscribers to purchase the products of their contractual partners. The final step of the transaction that pays both the contractual partners, and the Plaintiffs through a commission is a checkout page on a web browser. Plaintiffs have affiliate links which tell their partners this sale was sent by me. It is the same as a salesperson getting acknowledged when the customer goes to the cash register.

2. This case involves a scheme by Defendant to unlawfully supplant affiliate links from content creators with its own affiliate links via Honey, thereby redirecting commission or tracking on those affiliate links to Defendant.

3. Defendant PayPal, Inc. ("Defendant" or "Paypal") owns Honey, a browser extension which purports to find consumers the best deal at checkout by scanning for and applying available discount codes.

4. The content creators whose commissions were redirected, which include Plaintiffs and the Proposed Class as described below, are entitled to damages under tortious interference with a business expectancy and unjust enrichment.

5. Because Defendant, via Honey, has standardized practices and procedures to which all content creators are subject or affected by, the appropriate vehicle for recovery is a class action lawsuit.

## II.   JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

6.   Under 28 U.S.C. § 1332(d), the Class Action Fairness Act, this Court has jurisdiction over the claims alleged herein. As alleged below, this claim has all of the following: (1) minimal diversity; (2) 100 or more putative class members; and (3) more than $5 million dollars in controversy.

7.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), because a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant has its principal place of business in this District.

8.   Since the acts or omissions which give rise to Plaintiff's claims occurred in the County of Santa Clara, Pursuant to Local Rule 3.2(c), this action must be assigned to the San Francisco division of the Northern District Court.

## III.   PARTIES

8.   Plaintiff Wendover Production, LLC is a limited liability corporation, with a domicile of Colorado.

9.   Plaintiff Businessing, LLC is a limited liability corporation, with a domicile in Los Angeles, California.

10.   PayPal is, and at all times mentioned herein was, a corporation with the principal place of business at 2211 North First Street, San Jose, CA 95311. It's agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Glendale, California 91203.

## IV.   FACTUAL ALLEGATIONS

11.   Honey is a browser extension, free to consumers, which purports to "automatically look for [discount] codes when [consumers] shop on select sites" to provide consumers with "the biggest savings" available.[1]

12.   Defendant owns and operates Honey.[2]

---

[1]   *See* https://www.joinhoney.com/ (last visited Dec. 26, 2024).
[2]   *See*  https://help.joinhoney.com/article/302-what-does-honey-joining-paypal-mean-for-members (last visited Dec. 26, 2024).

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
-3-

13. Defendant has partnered with over 30,000 businesses to include Honey in the online checkout process for any consumer who has downloaded the browser extension ("Defendant's merchant partners").[3]

14. Plaintiffs are content creator with large followings on YouTube.

15. Plaintiff Wendover has multiple YouTube channels including Wendover Productions, with 4.7M subscribers and over 240 videos; Half as Interesting, with 2.77M subscribers and over 490 videos; and Jet Lag: The Game, with 761 subscribers and over 70 videos.

16. Plaintiff Wendover regularly partners with businesses, including Defendant's merchant partners, to promote products in his videos.

17. Plaintiff Wendover partners with, or has partnered with in the recent past, businesses such as Nord VPN, Ground News, Audible and Brilliant.org.

18. When Plaintiff promotes products, payment comes from the business with whom he has partnered and who is selling the product.

19. Plaintiff posts videos approximately twice per week, including all videos posted across his various channels, and all his videos are monetized as described above.

20. When Plaintiff promotes products, to viewers with an affiliate link by which they can access the product on the business's website and purchase it if they so choose.

21. The affiliate link tracks how many customers were acquired via Plaintiff's content.

22. The affiliate link tracking is necessary in determining how successful Plaintiff was in driving traffic to the business's website and acquiring customers.

23. Plaintiffs contractual business partners regularly evaluate whether Plaintiffs are overperforming or underperforming regarding the business's benchmark for average customer acquisition costs—i.e., the businesses track how

---

[3] *See* https://www.joinhoney.com/ (last visited Dec. 26, 2024).

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
-4-

many customers have been acquired via Plaintiffs' affiliate link and divide that number into the flat fee paid to Plaintiffs to determine if customer acquisition is less or more costly via Plaintiffs than the average.

24. If Plaintiffs are overperforming regarding a contractual business partner—i.e., if the business acquires many customers through Plaintiffs' affiliate links—then that business partner is more likely to renew contracts with Plaintiffs and offer him better terms on future contracts.

25. The affiliate link tracking therefore plays a crucial part in defining the future business relationship with Plaintiff's business partners.

26. Affiliate link tracking relies on "last click attribution," which is a model that credits the last touchpoint a customer interacted with before making a purchase as the cause of the conversion.

27. Last click attribution is the industry standard and, upon information and belief, is the model by which all or most of Plaintiff's business partners operate.

28. Last click attribution relies on affiliate cookies to notify businesses where certain sales originated from.

29. Plaintiff Businessing runs a similar operation, but with separate categories of influence. One Ali Spagnola's Fitness Outrageous has over 50,000 subscribers on YouTube. Another, @alispagnola has approximately 2.25 million subscribers for Ms. Spagnola's outrageous art and outrageous music for outrageous people. Businessing has similar affiliate agreements with third parties.

30. Defendant takes advantage of last click attribution by inserting a Honey pop-up at checkout for each customer that has installed the Honey browser: if the customer clicks on the Honey link after clicking on Plaintiffs' affiliate link, then Defendant's affiliate cookie replaces Plaintiffs' (or that of any other content creator who uses affiliate links).

31. In other words, if a customer clicks on one of Plaintiffs' affiliate link

and then directly purchases the product, the business will see that the sale originated from that Plaintiff's affiliate link; however, if the customer clicks on one the Plaintiff's affiliate link and then at checkout clicks on the Honey pop-up, then the business tracks the sale as originated from Defendant, and Plaintiff will receive no credit for the purchase. Honey erases Plaintiffs' affiliate links and replaces it with one of its one.

32. If the consumer clicks on the Honey pop-up at any point during checkout, Honey will receive the credit for the purchase even if it did not provide any discount codes to the consumer.

33. Because Honey disrupted the last click attribution for clicks that should have been attributed to Plaintiffs, Plaintiffs were responsible for customer acquisition that was unable to be tracked by his business partners.

34. Because Honey disrupted the last click attribution for clicks that should have been attributed to Plaintiffs, Plaintiffs' performance in regard to customer acquisition for his business partners has been artificially and negatively skewed.

35. Defendant's actions prevented Plaintiffs' business partners from counting all customers that were acquired via Plaintiffs' affiliate links.

36. Defendant is aware that its Honey browser extension takes credit for customer acquisition for which it is not responsible and for which, were the Honey browser extension not in place, Plaintiffs and other content creators would be properly credited.

37. Defendant's actions have damaged Plaintiffs' relationships with business partners.

38. Defendant's actions have caused Plaintiffs to receive less favorable contract terms from his business partners and/or led to a failure to renew contracts between Plaintiff and his business partners.

39. Defendant benefitted by disrupting last click attribution which should have been attributed to Plaintiffs by receiving credit (either in the form of

1  commissions or click tracking) for customer acquisition.

2  40.  Because Defendant received credit for customer acquisition instead of Plaintiffs, Defendant benefitted at Plaintiffs' expense.

### V.  CLASS ACTION ALLEGATIONS

#### A.  *Content Creator Proposed Class*

40.  Plaintiffs brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3) for monetary damages on behalf of themselves and all others similarly situated.

41.  Plaintiffs' proposed Class is as follows, subject to amendment as appropriate:

> <u>Class Definition</u>.  All persons (natural or corporate) who, from December 29, 2022, to the time of class certification, contracted with any business to promote a product/service and provided to consumers an affiliate link that led consumers to a checkout page which incorporated the Honey browser extension.

42.  Excluded from this class definition are employees, officers, directors of Defendant, and attorneys appearing this case, and any judge assigned to hear this action.

43.  Plaintiffs reserve the right to modify this class definition as he obtains relevant information, including attribution tracking data and other records, through discovery.

44.  Each of the persons identified in this Putative Class has been harmed by the acts of Defendant because Defendant interfered with a business relationship of each member of the Putative Class.

45.  Defendant has been unjustly enriched at the expense of each member of the Putative Class.

**The Action Meets the Requirements to be Certified as a Class**

46.  Plaintiffs are members of the proposed Class.

47. The proposed Class can be identified through Defendant's records and merchant partners' databases.

**B.   *Numerosity***

48. The number of Putative Class Members is believed to be in the thousands, rendering the class so numerous that individual joinder of all Class Members is impracticable.

49. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**C.   *Common Questions of Law and Fact***

50. There are common questions of law and fact raised in this Complaint which predominate over any questions affecting only individual Class members.

51. The following questions of law and fact common to the Class members are ripe for determination:

   (a) Did Defendant's policies and practices effectively steal attribution from members of the Putative Class?

   (b) Did Defendant profit from customer acquisition which was generated by members of the Putative Class?

   (c) Did Defendant's actions in stealing attribution from content creators damage the relationship between Defendant's merchant partners and members of the Putative Class?

   (d) Whether Defendant intentionally damaged the relationship between Defendant's merchant partners and members of the Putative Class?

**D.   *Typicality***

52. Plaintiff's claims are typical of the claims of the proposed Putative Class. In addition, Plaintiff is entitled to relief under the same causes of action

and upon the same facts as the other Members of the Proposed Putative Class.

### E.   *Adequacy*

53.   Plaintiffs are adequate representative of the proposed Putative Class because their interests coincide with, and are not antagonistic to, the interests of the Members of the proposed Putative Class they seeks to represent; they have retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Plaintiff and their Counsel will fairly and adequately protect the interests of Members of the proposed Putative Class.

### F.   *Superiority*

54.   Questions of law and fact common to the proposed Putative Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on Putative Class Members.

55.   The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Members of the proposed Putative Class to individually redress effectively the wrongs done to them, as the claims alleged herein have no attorney's fee shifting provision. Even if the Members of the proposed Putative Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

56. Class certification is appropriate because Defendant has acted on grounds generally applicable to the proposed Putative Class, making appropriate equitable injunctive relief with respect to Plaintiff and the proposed Putative Class Members. Fed. R. Civ. P. 23(b)(2).

57. <u>Injunctive and Declaratory Relief Appropriate.</u> Defendant has acted on grounds generally applicable to the Putative Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Putative Class appropriate on a class wide basis. Moreover, on information and belief, and based on his experience, Plaintiff alleges that Defendant's practices in stealing attribution from members of the Putative Class as complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

58. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

59. Plaintiffs and all members of the Putative Class had existing contractual relationships with one or more of Defendant's merchant partners.

60. Defendants knew those contractual relationships existed. Defendant knew that its merchant partners collaborated with Plaintiffs and members of the Putative Class to drive traffic to merchant partners' websites via affiliate links.

61. Defendant's conduct prevented performance of Plaintiffs of their contractual obligations, or made performance more expensive or difficult.

62. Defendant intended to disrupt the Plaintiffs performance of their contracts, or knew that their actions made performance more expensive or difficult or impossible.

63. Defendant's interference harmed Plaintiffs and members of the Putative

Class by artificially and negatively skewing the data regarding customer acquisition via affiliate links, causing members of the Putative Class to appear to merchant partners to underperform relative to actual customer acquisition.

64. Defendant's conduct was a substantial factor in causing Plaintiffs and the Putative Class harm.

65. By virtue of the foregoing, Plaintiffs and members of the Putative Class have been harmed and incurred damages cumulatively in an amount that exceeds $5,000,000.

## SECOND CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

66. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

67. Plaintiffs had economic relationships with merchants that probably would have resulted in economic benefits to Plaintiffs.

68. Defendant was aware of the relationships.

69. Defendants conduct as described above of removing Plaintiffs affiliate links, and replacing with their own affiliate links, after Plaintiffs directed consumers to merchants checkout pages was wrongful

70. By engaging in this conduct, Defendants intended to disrupt the relationships and/or knew that disruption of the relationship was certain or substantially certain to occur.

71. Plaintiffs' relationships were disrupted.

72. Defendant's conduct was a substantial factor in causing Plaintiffs and the Putative Class harm.

73. By virtue of the foregoing, Plaintiffs and members of the Putative Class have been harmed and incurred damages cumulatively in an amount that exceeds $5,000,000.

## THIRD CAUSE OF ACTION

### <u>Injunctive Relief</u>

74. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

75. Plaintiff, on behalf of himself and the Putative Class, also seeks injunctive relief prohibiting Defendant's policies and practices described herein.

76. "[I]njunctive relief is appropriate . . . when there is a threat of continuing misconduct." *People ex rel. Herrera v. Stender,* 212 Cal. App. 4th 614, 630, 152 Cal. Rptr. 3d 16, 31 (2012), as modified (Jan. 16, 2013).

77. Injunctive relief is appropriate under Fed. R. Civ. P. 23(b)(2)

78. Defendant's misconduct does not constitute a single past act but rather a pattern of established practices that will likely continue unless this Court grants injunctive relief on behalf of Plaintiff and the Putative Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant Plaintiffs and the Class the following relief against Defendant:

A. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Class and/or any other appropriate Class under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiffs' counsel as Class Counsel;

B. For an award of damages, including actual, nominal, consequential, and punitive (exemplary) damages, as allowed by law in an amount to be determined at trial;

C. A permanent injunction restraining Defendant from replacing affiliate cookies from Plaintiff and members of the Class with its own affiliate cookies at checkout;

| | | |
|---|---|---|
| 1 | D. | For prejudgment interest on all amounts awarded, at the prevailing legal rate; |
| 2 | | |
| 3 | E. | Any and all statutorily enhanced fees; |
| 4 | F. | For an award of attorney's fees, costs, and litigation expenses, as allowed by law; |
| 5 | | |
| 6 | G. | For all other Orders, findings and determinations identified and sought in this Complaint; |
| 7 | | |
| 8 | H. | Leave to amend the complaint to conform to the evidence presented, including at trial; and |
| 9 | | |
| 10 | I. | All general, special, and equitable relief to which Plaintiff and the members of the Class are entitled to by law. |
| 11 | | |

Dated: December 29, 2024

**KRISTENSEN LAW GROUP || EKSM, LLP || EAGLE TEAM LLP**

*/s/ John P. Kristensen*

John P. Kristensen
Jarrett L. Ellzey
Josh Sanford
Devin J. Stone
***Attorneys for Plaintiffs and the Class***

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
-13-

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for all such triable claims.

Dated: December 29, 2024

**KRISTENSEN LAW GROUP || EKSM, LLP || EAGLE TEAM LLP**

*/s/ John P. Kristensen*

John P. Kristensen
Jarrett L. Ellzey
Josh Sanford
Devin J. Stone
***Attorneys for Plaintiffs and the Class***