| | |
|---|---|
| Dena C. Sharp (SBN 245869) | Elizabeth J. Cabraser (SBN 083151) |
| Adam E. Polk (SBN 273000) | Roger N. Heller (SBN 215348) |
| Trevor T. Tan (SBN 281045) | Jason L. Lichtman (*pro hac vice*) |
| Nina Gliozzo (SBN 333569) | Danna Z. Elmasry (*pro hac vice*) |
| **GIRARD SHARP LLP** | **LIEFF CABRASER HEIMANN &** |
| 601 California Street, Suite 1400 | **BERNSTEIN, LLP** |
| San Francisco, CA 94108 | 275 Battery Street, 29th Floor |
| 415.981.4800 | San Francisco, CA 94111 |
| Email: dsharp@girardsharp.com | 415.956.1000 |
| Email: apolk@girardsharp.com | Email: ecabraser@lchb.com |
| Email: ttan@girardsharp.com | Email: rheller@lchb.com |
| Email: ngliozzo@girardsharp.com | Email: jlichtman@lchb.com |
| | Email: delmasry@lchb.com |

Nanci E. Nishimura (SBN 152621)
Thomas E. Loeser (SBN 202724)
Karin B. Swope (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Rd #200
Burlingame, CA 94010
650.697.6000
Email: nnishimura@cpmlegal.com
Email: tloeser@cpmlegal.com
Email: kswope@cpmlegal.com
Email: jalhadeff@cpmlegal.com

*Plaintiffs' Interim Class Counsel*

[*Additional counsel on signature page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE PAYPAL HONEY BROWSER EXTENSION LITIGATION | Case No.: 5:24-cv-09470-BLF<br><br>[~~PROPOSED~~] **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. The parties agree to consult in good faith this District's Guidelines for the Discovery of Electronically Stored Information ("Guidelines") and utilize this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information ("Checklist").

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **DEFINITIONS**

All technical terms shall follow or be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management."

4. **LIAISON**

The parties each have identified or will identify e-discovery liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the e-discovery liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

5. **PRESERVATION**

The parties have discussed their preservation obligations and needs and agreed that preservation of potentially relevant ESI will be reasonable and proportionate. The parties are conferring about the preservation period for Responsive ESI and will submit joint or competing proposals to the Court within 30 days of entry of this Order. Defendants agree to meet and confer with Plaintiffs concerning those preservation efforts consistent with the Guidelines and Checklist.

6. **SEARCH/CULLING**

(a) *Duty to Meet and Confer*. The parties recognize that there exist a variety of search tools and methodologies that can be used in advance of producing documents, including but not limited to the use of search terms and technology assisted review ("TAR") tools. The parties agree to meet and confer over the use of search tools and methodologies, including the use of search terms and TAR, before any particular tool or methodology is applied.

(b) *Search Terms & Source Files*. Where potentially responsive ESI will be searched using search terms, the parties agree that the producing party will investigate what search terms and source files will be reasonably likely to uncover responsive information and then propose those search terms and source files for the requesting party's consideration. Specifically, a producing party shall disclose the custodians or other non-custodial sources, date range, and search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information.

Proposed search terms will be subject to an iterative and cooperative conferral process among the parties. The requesting party may ask for (and the producing party will not unreasonably withhold) qualitative and quantitative information regarding search methodology, including but not limited to, production of search term hit reports, with unique document "hit" counts (i.e., documents that do not hit on other search terms or queries and that have been de-duped within the set), and associated testing and validation to be conducted after the methodology is implemented, which testing and validation process shall be the subject of reasonable conferral among the parties.

The parties will reach an agreement on the search terms or queries to be used before the producing party produces documents hitting on those search terms or queries. Such search terms may be reasonably supplemented upon request of the requesting party.

(c) <u>*Reasonable Search/Discrete Collections.*</u> Agreement on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and responsive documents of which a party is aware, regardless of whether they contain agreed-upon search terms or are responsive to any other search methodology agreed to by the parties or ordered by the Court. To the extent a party is aware of non-duplicative

2
[~~PROPOSED~~] STIPULATED ORDER RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
Case No. 5:24-cv-09470-BLF

documents that are relevant, responsive, non-privileged, and reasonably accessible, such documents will be produced regardless of whether they contain search terms or are responsive to any other search methodology agreed to by the parties or ordered by the Court. Those portions of a party's documents that represent discrete document collections, such as substantially relevant folders of ESI specifically segregated by a party or its employees before or after the commencement of this litigation, that are relevant to the claims and defenses in this proceeding, must be reviewed for responsiveness without regard to whether a given document in the collection is responsive to a search term or other permitted search technique.

(d) *Modification of Search/Additional or Alternate Methodologies*. The parties acknowledge that there may be subsequent occasions on which potential modification to a previously agreed upon search protocol may be warranted, and/or that it may be appropriate to implement additional or alternate methodologies to identify possibly responsive documents from certain custodians and non-custodial data sources. Should such an instance arise, the parties agree to meet and confer about modifications to a search methodology. If a party requests such a meet and confer, the parties will meet and confer within seven days.

(e) *Use of Undisclosed Culling Techniques Not Permitted.* Apart from filtering out common system files and application executable files by using a commercially reasonable hash identification process (utilizing hash values in the National Software Reference Library ("NSRL") NIST hash set list), no software or other technologies will be used to eliminate sources of potentially responsive documents (including via file type culling, filtering, near de-duplication, etc.) absent disclosure, reasonable conferral, and specific agreement among the parties.

(f) *Responsiveness/Privilege Review*. Discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the parties' conferral and court orders concerning such requests, and search terms or tools do not supplant discovery requests. Nothing in this Order shall be construed as precluding a producing party from performing a privilege review to determine if certain documents should be withheld.

7. **PRODUCTION FORMATS**

With the exception of spreadsheets, presentation files (i.e. PowerPoint presentations), PDF files, image files, Multi-Media files, and native files that cannot be converted to image files, the parties shall produce all relevant, responsive, and non-privileged ESI as Bates stamped single-page 1-bit TIFF images with a load file in standard Opticon OPT or iPro LFP or Summation (DII) format that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

(a) *Production Media*. The parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (e.g., FTP), or readily accessible computer or electronic media (e.g., CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel or other files that cannot be understood reasonably unless displayed in native format. The producing party shall identify: (a) the Responding Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

(b) *Color*. Plaintiffs and Defendants shall produce documents in color where the document in its original format contained color (e.g., charts and graphics, tracked changes, or other highlights). Color images should be produced with a high quality setting as to not degrade the original image.

(c) *Unique IDs*. Images shall be produced using a unique file name that will be the Bates number of that page (e.g., ABC000001.TIFF). The Bates number must appear on the face of the image and to the extent practical, not obliterate, conceal, or interfere with any information from the source document. While Bates numbers will not appear on the face of the image for native documents produced, slipsheets shall be provided in accordance with subsection (h).

(d) *Parent-Child Relationships*. Parent-child relationships (association between an attachment/linked file and its parent document) shall be preserved. The attachment(s)/linked file(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment/linked file being named with the next sequential number after the parent, and any additional attachment(s)/linked file(s) sequentially numbered after that first attachment/linked file.

(e) *Redactions*. A Party may not redact information on the basis that it believes the information to be irrelevant. If the parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s). If documents that the parties have agreed to produce in native format need to be redacted, the parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained; provided, however, that spreadsheet documents that require redaction as permitted under this protocol shall be redacted on the native file and produced in native format, as redacted. Extracted text will not be provided for electronic documents that have been redacted. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

(f) *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file, indicated on its corresponding TIFF placeholder and/or set forth as a metadata field.

(g) *Metadata Fields*. Plaintiffs and Defendants shall provide the system-generated and metadata fields (the "Production Fields") set forth in Exhibit A.

(h) *Native Format*. The Responding Party shall produce spreadsheets (e.g., Excel), presentation files (e.g., PowerPoint), PDF files, and any materials not readily convertible to TIFF format (e.g., three-dimensional design files) in native format. To the extent that they are produced in this action, audio, video, image (e.g., .gif or .jpg) and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the .TIF

file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Exhibit A. For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively." Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied.

(i) *Text and Chat Messages.* The parties will collect and produce relevant text, chat, and ephemeral messages. When producing text and chat messages (*e.g.*, messages sent via SMS, Teams, Slack, WhatsApp, Signal, iMessage, or other short messaging platforms), those messages must be unitized on the conversation/channel level into 24-hour calendar-day chunks, or conversation days, with each conversation day including all messages in that conversation or channel on a given calendar day. Each conversation day must be reviewed and produced as a single record. The records must be produced with the metadata specified in the "IM/Text/Chat" column in Appendix A, including TXT-THREAD-GROUP (the DOCID of the first conversation day in a given discussion/channel) and TXT-PARTICIPANTS (a list of participant names). The producing party will use best available automated solutions to assign full names to participants who are identified only by phone number, email address, handle, or other identifier. If requested by the receiving party, the producing party agrees to employ reasonable efforts to locate the full names of participants in specific documents identified by the receiving party.

(j) *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (e.g., ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions. To

the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.

(k) *Physical/Hard Copy Documents*. Nothing herein shall relieve the parties of any obligations they may have to search for responsive Documents in hard copy form. The parties shall produce documents that exist solely in physical hard-copy format following this ESI Protocol. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The following objective coding fields should be provided, if applicable: (1) beginning Bates number, (2) ending Bates number, (3) page count, and (4) source location/custodian. The documents should be logically unitized for production to the extent reasonably practicable. Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable. The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto skewing" and "auto-rotation" should be turned on during the OCR process. The parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

(l) *Databases and Other Structured Data*. The parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database management systems (e.g., Oracle, SQL server, DB2), including the types of information stored in the database(s) (e.g., fields), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving Party will need any information in native form in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden. To facilitate the meet and confer process and production of this information, sample reports reflecting the types of information and fields contained in the database(s) shall not be unreasonably withheld.

     (m)   *Duplicates*. The Responding Party shall use software to identify duplicate documents that are in files of individual or multiple Production Custodians. To the extent there are duplicate documents, the Responding Party need only produce a single copy of a responsive document, unless the Requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level) and the custodian and path information will be provided for each document. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing party should provide an overlay file along with or within a reasonable time after each production.

     (n)   *Email Threading*. No email may be withheld from production or omitted from a privilege log because it is included in whole or in part in a more inclusive email.

**8. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases.

**9. COSTS**

Each party shall bear its own e-discovery costs, including costs for exemplification and copying.

**10. MODIFICATION**

This Order may be modified by Order of the parties or by the Court for good cause shown.

**11. WAIVER**

This order is without prejudice to, or waiver of, PayPal's right to seek to compel arbitration.

Dated: May 28, 2025                        Respectfully submitted,

By: */s/ Adam E. Polk*
Dena C. Sharp (SBN 245869)
Adam E. Polk (SBN 273000)
Trevor T. Tan (SBN 281045)
Nina Gliozzo (SBN 333569)

**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
apolk@girardsharp.com
ttan@girardsharp.com
ngliozzo@girardsharp.com

Elizabeth J. Cabraser (SBN 083151)
Roger N. Heller (SBN 215348)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
rheller@lchb.com

Jason L. Lichtman (*pro hac vice*)
Sean A. Petterson (*pro hac vice* forthcoming)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
jlichtman@lchb.com
delmasry@lchb.com

Nanci Nishimura (SBN 152621)
Thomas E. Loeser (SBN 202724)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
nnishimura@cpmlegal.com
tloeser@cpmlegal.com

Thomas E. Loeser (SBN 202724)
Karin B. Swope (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
**COTCHETT, PITRE & MCCARTHY, LLP**

9
[~~PROPOSED~~] STIPULATED ORDER RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
Case No. 5:24-cv-09470-BLF

|   |   |
|---|---|
|   | 1809 7th Avenue, Suite 1610<br>Seattle, WA 98101<br>Telephone: (206) 802-1272<br>tloeser@cpmlegal.com<br>kswope@cpmlegal.com<br>jalhadeff@cpmlegal.com |
|   | *Plaintiffs' Interim Class Counsel* |
| Dated: May 28, 2025 | By: */s/ Paul F. Rugani*<br>Paul F. Rugani (SBN 342647)<br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br>2050 Main Street, Suite 1100<br>Irvine, CA 92614-8255<br>Telephone: (949) 567-6700<br>prugani@orrick.com |
|   | Richard A. Jacobsen (*pro hac vice*)<br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br>51 West 52nd Street<br>New York, NY 10019-6142<br>Telephone: (212) 506-5000<br>rjacobsen@orrick.com |
|   | *Attorney for Defendants PayPal, Inc. and PayPal Holdings, Inc.* |

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the signatories above.

By: */s/ Adam E. Polk*
Adam E. Polk

**[PROPOSED] ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: May 29, 2025

_____
SUSAN VAN KEULEN
United States Magistrate Judge

## Exhibit A

## Production Fields

| | |
|---|---|
| BEGBATES | Start Bates (including prefix) -- No spaces or special characters |
| ENDBATES | End Bates (including prefix) -- No spaces or special characters |
| BEGATTACH | The identifier of the first page of the first document in a family group. This is used for page-level numbering schemes. |
| ENDATTACH | The identifier of the last page of the first document in a family group. This is used for page-level numbering schemes. |
| ATTACHNAME | File name of the attachment, with any attachments separated by semi-colon |
| ATTACHMENT | Child document list: BEGDOC# of each child (populated ONLY in parent records) |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| REDACTION | Whether the document contains redactions (Yes/No) |
| REDACTIONBASIS | The basis for any redactions made to the document by the producing party (*e.g.*, A-C Priv, Work Prod., etc.) |
| CUSTODIAN | Custodian/source/source party of initial instance of document/family collected |
| DUPCUSTODIAN | Custodian(s)/source(s)/source parties of any instances of document/family collected |
| FROM | Sender of an email. |
| TO | Recipient(s) from the to line of an email. |
| CC | Carbon copy recipient(s) on an email. |
| BCC | Blind carbon copy recipient(s) on an email. |
| SUBJECT | Subject line from an email. |
| DATESENT | The date an email was sent. |
| TIMESENT | The time an email was sent. |
| DATERCVD | The date an email was received. |
| TIMERCVD | The time an email was received. |
| FILEEXT | The file extension of the native file. |
| AUTHOR | Person who created the file. A file can have one or no author. |
| MODIFIEDBY | Person who last modified or saved the item, |
| CREATEDATE | The date the file was created. |
| CREATETIME | The time the file was created. |
| DATELASTMOD | The date changes were last made to a file. |
| TIMELASTMOD | The time changes were last made to a file. |
| FILENAME | The original name of the first instance native file. |
| PGCOUNT | The number of pages in a document. |
| DOCTYPE | The kind of file a document came from. |
| PARENTDATE | The date of the parent document. For emails this will be date sent and for non-emails date last modified. |
| PATH | The full file, folder, or directory structure from which the initial instance of a document was collected. This should be the path where the document is kept in the usual course. |
| HASH | Numeric value of a fixed length that uniquely identifies data. |
| NATIVEPATH | The path to a copy of a file within the production deliverable. |

| | |
|---|---|
| TITLE | Available title information extracted from MS Office and PDF documents. |

[~~PROPOSED~~] STIPULATED ORDER RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
Case No. 5:24-cv-09470-BLF