RICHARD A. JACOBSEN (*admitted pro hac vice*)
rjacobsen@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone:    +1 212 506 5000
Facsimile:    +1 212 506 5151

CLEMENT S. ROBERTS (SBN 209203)
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone:    +1 949 567 6700
Facsimile:    +1 949 567 6710

Attorneys for Defendants
PAYPAL, INC. AND PAYPAL HOLDINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE PAYPAL HONEY BROWSER EXTENSION LITIGATION | Case No. 5:24-cv-09470-BLF<br><br>**DEFENDANTS PAYPAL, INC. AND PAYPAL HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, AND THEIR MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   November 6, 2025<br>Time:   9:00 AM<br>Judge:  Honorable Beth Labson Freeman<br>Dept:   Courtroom 1 – 5th Floor |

# TABLE OF CONTENTS

INTRODUCTION AND ISSUES TO BE DECIDED ............................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

    A.    The Arbitration Plaintiffs Are PayPal or Venmo Users. ............................................ 2

    B.    The Arbitration Plaintiffs Agreed to the User Agreements When Opening Their Accounts. ................................................................................................................... 2

    C.    The User Agreements Contain Broad Agreements to Arbitrate Any Dispute with PayPal on an Exclusively Individual Basis. ............................................................... 3

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ............................................................................................................................. 4

    A.    The Arbitration Plaintiffs Agreed to Arbitrate This Dispute. .................................... 4

        1.    The Arbitration Plaintiffs Entered into Valid and Enforeceable Agreements to Arbitrate and Are Bound By the User Agreements' Current Terms. .......... 5

        2.    The LLC Arbitration Plaintiffs Are Bound by Their Owners' Agreements to Arbitrate. .................................................................................................... 7

        3.    The Agreements to Arbitrate Are Neither Procedurally Nor Substantively Unconscionable. ............................................................................................ 8

    B.    The Broad Agreements to Arbitrate Cover the Dispute at Issue. ............................. 9

CONCLUSION ....................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**                                                                                  **Page(s)**

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................................ 9

*AT&T Tech., Inc. v. Commc'n Workers*,
   475 U.S. 643 (1986) .......................................................................................................... 10

*Ball v. Steadfast-BLK*,
   196 Cal.App.4th 694 (2011) ............................................................................................... 7

*Benson v. Casa de Capri Enters., LLC*,
   980 F.3d 1328 (9th Cir. 2020) ............................................................................................ 9

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ............................................................................................ 4

*Cheng v. PayPal, Inc.*,
   2022 WL 126305 (N.D. Cal. Jan. 13, 2022) ........................................................... 4, 6, 8, 9

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ............................................................................................ 8

*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.*,
   47 Cal.App.4th 237 (1996) ................................................................................................. 8

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................................................ 4

*Edelist v. MBNA Am. Bank*,
   790 A.2d 1249 (Del. 2001). ................................................................................................ 7

*Evans v. PayPal, Inc.*,
   2022 WL 1813993 (N.D. Cal. June 2, 2022). ................................................................. 6, 9

*In re Facebook Biometric Info. Privacy Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016). ............................................................................. 7

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ............................................................................................................ 5

*Flores v. Chime Fin., Inc.*,
   2022 WL 873252 (S.D.N.Y. Mar. 23, 2022) ..................................................................... 5

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000). ............................................................................................................. 4

*Houtchens v. Google LLC*,
    649 F. Supp. 3d 933 (N.D. Cal. 2023). ................................................................... 6

*James v. Comcast Corp.*,
    2016 WL 4269898 (N.D. Cal. Aug. 15, 2016) ........................................................ 7

*Kaufman v. Relx Inc.*,
    211 A.D.3d 580 (2022) ............................................................................................ 8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ................................................................................................ 5

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ................................................................................. 9

*Lima v. Gateway, Inc.*,
    886 F. Supp. 2d 1170 (C.D. Cal. 2012)) ............................................................... 10

*Lucero v. PayPal, Inc.*,
    725 F. Supp. 3d 111 (D. Mass. 2024). ..................................................................... 6

*Mehan v. Travelers Ins. Co.*,
    1986 WL 15416 (Del. Super. Dec. 30, 1986) ......................................................... 7

*Meyer v. Uber Tech. Inc.*,
    868 F.3d 66 (2d. Cir. 2017). .................................................................................... 6

*Micro Focus (US), Inc. v. Ins. Servs. Off.*,
    2021 WL 4061141 (D. Del. Sept. 7, 2021). ............................................................ 6

*Mikkilineni v. PayPal, Inc.*,
    2021 WL 2763903 (Del. Super. Ct. Jul. 1, 2021) ................................................... 8

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .................................................................................................. 10

*Nedlloyd Lines B.V. v. Superior Ct.*,
    3 Cal. 4th 459 (1992) .............................................................................................. 5

*Nezri v. PayPal, Inc.*,
    606 F. Supp. 3d 985 (C.D. Cal. 2022) ............................................................ 6, 7, 9

*Parish v. Fitness Int'l, LLC*,
    2020 WL 5371510 (C.D. Cal. June 10, 2020) ...................................................... 10

*Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*,
    2002 WL 1558382 (Del. Ch. Jul. 9, 2002) .............................................................. 8

*Pyramid Travel, Inc. v. Sri Lankan Travel, Inc.*,
    2000 WL 34017119 (C.D. Cal. Sept. 18, 2000) ................................................... 10

*Shnayderman v. PayPal, Inc.*,
    2023 WL 2647898 (S.D.N.Y. Mar. 27, 2023) ........................................................................... 6

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    498 F.3d 976 (9th Cir. 2007) .................................................................................................... 8

**Statutes**

9 U.S.C. § 2 ................................................................................................................................. 4, 8

Cal. Corp. Code § 17703.01 ............................................................................................................ 8

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

PLEASE TAKE NOTICE that on November 6, 2025, at 9:00 AM, or at such later date and time as the Court may order, Defendants PayPal, Inc. and PayPal Holdings, Inc. ("PayPal" or "Defendants"), will and hereby do move to compel arbitration of claims asserted in Plaintiffs' Amended Consolidated Class Action Complaint ("Complaint") for the following Plaintiffs: Motion Butter, LLC, Dan Becker, LLC, Angry Snowboarder, Brevard Marketing LLC, Daniel Lachman, Justin Tech Tips LLC, Stephen Sistek, Storm Productions LLC, Red Beard Studios LLC, Reid Tomasko, Gent Scents LLC, Sebastian Ventura, Colbow Design LLC, Richard Young, Aaron Ramirez, Be Victorious LLC, Christopher Komuves, Eli Silva, John Pugh, David Hiser, Shanger Danger LLC, and Ahntourage Media LLC (collectively the "Arbitration Plaintiffs"). This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declaration of Alicia Sterzinar, the pleadings and records on file in this case, and all matters of which the Court may take judicial notice, and any other matter that the Court may properly consider. Preserving all defenses, Defendants hereby move for entry of an order compelling arbitration of the Arbitration Plaintiffs' claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq*.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION AND ISSUES TO BE DECIDED**

Plaintiffs sued PayPal to stifle competition for attribution credit for converting web-browsing shoppers into purchasing customers in online transactions. Plaintiffs' claims lack merit—as PayPal will ultimately prove before the proper forum—because both Plaintiffs and PayPal agreed to the attribution terms Plaintiffs now complain about. But the Arbitration Plaintiffs have a threshold problem that prevents their claims from proceeding in this Court: they agreed to resolve all their disputes with PayPal via individual, non-class arbitrations under the rules of the American Arbitration Association ("AAA").

Each Arbitration Plaintiff has an account with PayPal through PayPal or Venmo, which PayPal wholly owns. When opening those accounts, each Arbitration Plaintiff agreed to the respective PayPal User Agreement ("PUA") or Venmo User Agreement ("VUA") (together the "User Agreements"). Those valid, enforceable contracts contain binding commitments to arbitrate

*any and all* disputes each Arbitration Plaintiff might have with PayPal on an individual, non-class wide basis. This case raises such a dispute. Accordingly, this Court should enforce the terms of the parties' agreements and stay the case as to the Arbitration Plaintiffs in favor of arbitration.

## FACTUAL BACKGROUND

### A. The Arbitration Plaintiffs Are PayPal or Venmo Users.

PayPal provides digital payment services that facilitate consumers' and merchants' ability to buy and sell goods and services and send money securely worldwide. Declaration of Alicia Sterzinar ("DAS") ¶ 5. The following Arbitration Plaintiffs have PayPal accounts: Motion Butter, LLC, Dan Becker, LLC, Angry Snowboarder, Brevard Marketing LLC, Daniel Lachman, Stephen Sistek, Storm Productions LLC, Red Beard Studios LLC, Reid Tomasko, Gent Scents LLC, Sebastian Ventura, Colbow Design LLC, Richard Young, Be Victorious LLC, Christopher Komuves, John Pugh, David Hiser, Shanger Danger LLC, and Ahntourage Media LLC. *Id*. ¶ 26.

Venmo is a mobile payment service that allows users to send and receive money electronically. *Id*. ¶ 46. PayPal acquired Venmo in 2013 and has owned and controlled it since. *Id*. ¶ 47. The following Arbitration Plaintiffs have Venmo accounts: Brevard Marketing LLC, Justin Tech Tips, Aaron Ramirez, and Eli Silva. *Id*. ¶ 67.

### B. The Arbitration Plaintiffs Agreed to the User Agreements When Opening Their Accounts.

To open their PayPal accounts, the Arbitration Plaintiffs had to complete PayPal's registration process, which requires the new user to affirmatively accept the PUA by checking a box affirming that they "read and agree to" the PUA and clicking a button on the online registration form to "Agree and Create Account." *Id*. ¶¶ 6-8. Before accepting the PUA, new users, including the Arbitration Plaintiffs, are given the opportunity to review the PUA terms in full, either within a scroll box or via a hyperlink. *Id*. ¶ 7. The process for creating a Venmo account is functionally the same: the user has an opportunity to review the VUA, must affirmatively click a button to accept the VUA, and must click a button to complete the sign-up process. *Id*. ¶ 48-50.

The User Agreements are available to users and the public through a "Legal" link on every page of the paypal.com and venmo.com websites. *Id*. ¶¶ 9, 51. A new user cannot create a PayPal

or Venmo account without agreeing to the relevant User Agreement. *Id*. ¶¶ 10, 52.

PayPal states that it may amend the PUA by posting new terms as a "Policy Update" on PayPal's website, and for substantive amendments, PayPal also sends an email to its users notifying them in advance of the changes that will be made to the PUA. *Id*. ¶ 11. Likewise, Venmo provides users with written notice of changes to the VUA by sending an email to its users notifying them in advance of the changes that will be made to the VUA. *Id*. ¶ 53. The PUA and VUA state that by continuing to use the PayPal and Venmo services, respectively, after any changes to the PUA and VUA, a user "agree[s] to abide and be bound by those changes. If you do not agree with any changes to this user agreement, you may close your account." *Id*. ¶¶ 11, 53.

### C.   The User Agreements Contain Broad Agreements to Arbitrate Any Dispute with PayPal on an Exclusively Individual Basis.

The PUA references the Agreement to Arbitrate in conspicuous blue text in its introductory paragraphs. *Id*. ¶ 12. The PUA Agreement to Arbitrate provides:

> You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration or in small claims court. You or PayPal may assert claims in small claims court instead of in arbitration if the claims qualify and so long as the matter remains in small claims court and advances only on an individual (non-class, non-representative) basis. This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

*Id*. Ex. 1 at 48-49.  The PUA has contained a mandatory Agreement to Arbitrate any and all disputes between PayPal and users since November 1, 2012.  *Id*. ¶¶ 12, 20.  The VUA has contained a mandatory Agreement to Arbitrate any and all disputes between PayPal and users since May 23, 2022.  *Id*. ¶¶ 54, 62.

Likewise, the VUA references the Agreement to Arbitrate in conspicuous blue text in its introductory paragraphs. *Id*. ¶ 54. The Agreement to Arbitrate in the VUA is functionally identical to the PUA—the only difference is the VUA specifies that the arbitrable disputes include those arising out of the Venmo services or the user's Venmo account. *Id*. Ex. 24 at 24. In addition to agreeing to arbitrate, the Arbitration Plaintiffs agreed in the User Agreements that they

would pursue claims only on an individual basis and not as a plaintiff or class member in any purported class or representative action or proceeding. *Id.* ¶¶ 21, 63.

The User Agreements provide that any arbitration will be conducted under AAA rules. *See id.* Ex. 1 at 50; Ex. 24 at 24. The PUA includes a Delaware choice of law clause (*id.* Ex. 1 at 57) and the VUA includes a New York choice of law clause (*id.* Ex. 24 at 27). The User Agreements contain separate opt-out provisions that allow users to opt out of the Agreements to Arbitrate by mailing PayPal a written opt-out notice within 30 days of accepting the relevant User Agreements. *Id.* ¶¶ 15, 57. The PUA has contained this opt out provision since November 1, 2012 (*id.* ¶ 15); the VUA has contained this opt out provision since May 23, 2022 (*id.* ¶ 57). Users who choose to opt out of the Agreements to Arbitrate can elect to maintain their PayPal or Venmo accounts or discontinue them. *Id.* Each of the Arbitration Plaintiffs were advised of and had the opportunity to opt out of the Agreements to Arbitrate, but none did. *Id.* ¶¶ 16, 58.

## LEGAL STANDARD

The Federal Arbitration Act (FAA) governs arbitration agreements arising out of transactions involving interstate commerce and makes them "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Cheng v. PayPal, Inc.*, 2022 WL 126305, at *2 (N.D. Cal. Jan. 13, 2022) (Freeman, J.).

Under the FAA, the court engages in a limited two-part inquiry in deciding a motion to compel arbitration: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). There is "no place for the exercise of discretion," as the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Further, the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

## ARGUMENT

**A.    The Arbitration Plaintiffs Agreed to Arbitrate This Dispute.**

In determining whether there is an agreement to arbitrate between the parties, courts "apply

ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  As regards the applicable state law, where parties enter into a written agreement that includes a choice of law clause, California law "reflect[s] a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 465 (1992) (citation omitted); *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (noting that a federal court sitting in diversity applies the choice of law rules of the forum state). "The law of the state chosen by the parties to govern their contractual rights and duties will be applied" unless that state has no relationship to the parties or application of its laws would be fundamentally unfair. *Nedlloyd Lines B.V.*, 3 Cal. 4th at 465. Here, the PUA has a Delaware choice of law clause (DAS Ex. 1 at 57), and the VUA has a New York choice of law clause (*id*. Ex. 24 at 27). Neither exception under *Nedlloyd Lines B.V* applies or warrants disregard for the parties' chosen law. Thus, the court should apply the state law in the respective choice of law clauses. If the Court decides to apply California law—which does not govern here in light of the choice of law provisions in the User Agreements—the result would be the same because the applicable rules are the same under Delaware, New York, and California law. *See, e.g., Flores v. Chime Fin., Inc.*, 2022 WL 873252, at *4 (S.D.N.Y. Mar. 23, 2022) (enforcing an agreement to arbitrate in a clickwrap agreement and noting "there is no actual conflict between New York, Delaware, or California contract law on the question of whether parties have assented to a contract.").

### 1. The Arbitration Plaintiffs Entered into Valid and Enforeceable Agreements to Arbitrate and Are Bound By the User Agreements' Current Terms.

The Arbitration Plaintiffs agreed to the PUA or VUA when they registered for their respective accounts. DAS ¶¶ 6-8, 48-50. When creating their accounts, they were presented with a link to the relevant User Agreement and had an opportunity to review its terms. *Id*. ¶¶ 7, 49. Those User Agreements contained the Agreements to Arbitrate, which were conspicuously identified in blue text and set off from the other provisions. *Id*. Ex. 1 at 2, 48-53; Ex. 24 at 2, 24-250 And to complete the creation of their accounts, the Arbitration Plaintiffs were required to affirmatively check a box affirming they had read and agreed to the relevant User Agreement. *Id*. ¶¶ 7, 49. They were afforded the opportunity to opt out of the relevant arbitration agreement, but each declined to

do so. *Id*. ¶¶ 15-16, 57-58.

Delaware, New York, and California law confirm that clickwrap agreements—agreements made through online sign-up processes where users are required to assent to terms presented to them in order to proceed—are valid, enforceable agreements. *See Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.*, 2021 WL 4061141, at *6 (D. Del. Sept. 7, 2021) ("Clickwrap agreements are routinely recognized by courts and are enforceable under Delaware law"); *Meyer v. Uber Tech. Inc.*, 868 F.3d 66, 75 (2d. Cir. 2017) ("Courts routinely uphold clickwrap agreements [under New York law] for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"); *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 939 (N.D. Cal. 2023) (Freeman, J.) (under California law, "mutual assent manifests when internet users accept 'clickwrap' agreements.") (citations omitted). Indeed, courts—including this Court—routinely enforce the arbitration agreements at issue here. *See, e.g., Cheng*, 2022 WL 126305, at *7 (Freeman, J.); *Evans v. PayPal, Inc.*, 2022 WL 1813993, at *6 (N.D. Cal. June 2, 2022) (Freeman, J.); *Nezri v. PayPal, Inc.*, 606 F. Supp. 3d 985, 996 (C.D. Cal. 2022); *Lucero v. PayPal, Inc.*, 725 F. Supp. 3d 111, 115 (D. Mass. 2024); *Shnayderman v. PayPal, Inc.*, 2023 WL 2647898, at *6 (S.D.N.Y. Mar. 27, 2023).

While the Arbitration Plaintiffs created accounts and accepted the User Agreements at different times (DAS ¶¶ 27-45, 68-71), they are each bound by the terms of the *current* User Agreements.[1] For those Arbitration Plaintiffs who created their account or continued to use their account after the November 1, 2012 update to the PUA or the May 23, 2022 update to the VUA, they are bound by the terms of the current PUA because the User Agreements included a change of terms provision permitting PayPal to update terms in the future and providing that a user's

---

[1] Each Arbitration Plaintiff who created a PayPal account prior to the November 1, 2012 update to the PUA is bound by at least the November 1, 2012 PUA (DAS Ex. 4) which contains a mandatory Agreement to Arbitrate since they continued to use their accounts after November 1, 2012. *Id*. ¶¶ 28, 29, 33, 34, 38, 41, 43-45. Each Arbitration Plaintiff who created their Venmo account prior to the May 23, 2022 update to the VUA is bound by at least the May 23, 2022 VUA (*id*. Ex. 26) since they continued to use their accounts after May 23, 2022. *Id*. ¶¶ 68, 70.

continued use of the service constitutes acceptance of amended terms. *Id*. ¶¶ 11, 53; *see Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1257-58 (Del. 2001) (bank could unilaterally add arbitration clause after notifying cardholder of same and providing opportunity to opt out); *Nezri,* 606 F. Supp. 3d at 995 (noting that both Delaware and California law "permit[] to unilaterally amend [] agreements to add arbitration provisions, if they provide notice and opt-out clauses" and that PayPal's email and website notice are sufficient); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (updated terms enforceable where "plaintiffs accepted and agreed to the current terms by continuing to use Facebook after receiving" email notice of change); *James v. Comcast Corp.*, 2016 WL 4269898, *2 (N.D. Cal. Aug. 15, 2016) (continued use of service, failure to opt out after receiving notice of updated terms including arbitration provision demonstrated acceptance). For those Arbitration Plaintiffs who created their accounts prior to the mandatory Agreement to Arbitrate being included in the User Agreements, they too are bound because they assented by having received notice of the Agreement to Arbitrate (DAS Exs. 2-3, 25) and continuing to use their accounts (*id*. ¶ 28, 29, 33, 34, 38, 41, 43-45, 68, 70).

**2.    The LLC Arbitration Plaintiffs Are Bound by Their Owners' Agreements to Arbitrate.**

For certain of the LLC Arbitration Plaintiffs (Colbow Design LLC, Red Beard Studios LLC, and Ahntourage Media LLC)[2], the relevant PayPal account was created by the LLC's alleged owners or operators. However, that does not preclude enforcing the Agreements to Arbitrate against those Plaintiffs. Even if an LLC is not a signatory to the relevant User Agreement, a non-signatory may still be required to arbitrate if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it

---

[2] Plaintiff Angry Snowboarder is alleged to be a sole proprietorship, not an LLC. FAC ¶ 12. "[A] sole proprietorship is not a legal entity separate from its individual owner." *Ball v. Steadfast-BLK*, 196 Cal.App.4th 694, 701 (2011); *see also Mehan v. Travelers Ins. Co*., 1986 WL 15416, at *2 (Del. Super. Dec. 30, 1986), *aff'd,* 529 A.2d 772 (1987) ("A sole proprietorship does not exist as a legal entity separate from its owner"). Thus, the account created by Avran LeFeber, the owner and operator of Angry Snowboarder (FAC ¶ 188), binds Angry Snowboarder to the PUA and the Agreement to Arbitrate.

equitable to impose the duty to arbitrate upon the nonsignatory. *See County of Contra Costa v. Kaiser Foundation Health Plan, Inc.*, 47 Cal.App.4th 237, 245 (1996). Members or managers of LLCs are agents of the LLC and thus can bind the LLC when they act for the benefit of the LLC. Cal. Corp. Code § 17703.01. That is precisely what the individual LLC owners did here. As a result, the Arbitration Plaintiffs receive a direct benefit under the User Agreements. Estoppel compels arbitration when the "nonsignatory 'knowingly exploits'" the contract containing the arbitration clause. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).

### 3. The Agreements to Arbitrate Are Neither Procedurally Nor Substantively Unconscionable.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. One such ground is unconscionability. The tests for unconscionability under Delaware, New York, and California law are identical; the test is divided into procedural unconscionability—the lack of a meaningful choice—and substantive unconscionability—unreasonably favorable terms to one party. *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *11 n.46 (Del. Ch. Jul. 9, 2002); *Kaufman v. Relx Inc.*, 211 A.D.3d 580, 581 (2022); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007). Neither form of unconscionability precludes enforcing these User Agreements.

The User Agreements are not procedurally unconscionable. Users are presented with the terms and given the option to accept or reject them before creating a PayPal or Venmo. DAS ¶¶ 6, 48. Moreover, access to a PayPal or Venmo account is not conditioned on accepting the Agreement to Arbitrate. Instead, the user may create their account while opting out of the Agreement to Arbitrate (*id*. ¶¶ 15, 57) showing the User Agreements are not procedurally unconscionable. *See Cheng*, 2022 WL 126305, at *4 (finding "the very existence of the opt-out option forecloses the necessary finding under procedural unconscionability that [plaintiff] 'lacked a meaningful choice.'"); *see also Mikkilineni v. PayPal, Inc.*, 2021 WL 2763903, at *11 (Del. Super. Ct. Jul. 1, 2021) (compelling arbitration where plaintiff "could have opted-out" but "did not opt-out"). The Arbitration Plaintiffs were presented with the User Agreements before creating their PayPal or

Venmo accounts and chose to proceed; they were likewise given the opportunity to opt out of the arbitration provision but did not do so. DAS ¶¶ 16, 58.

The Agreements to Arbitrate also are not substantively unconscionable as the terms are not unreasonably favorable to one party. The User Agreements provide that arbitration will take place before the AAA (*see id*. Ex. 1 at 50; Ex. 24 at 24), a well-established organization that provides a structured framework for arbitration, ensuring the process is conducted efficiently and impartially. Further, the PUA and VUA state that for claims where the relief sought is $10,000 or less, PayPal agrees to pay all AAA or arbitrator fees associated with arbitration at the Plaintiffs' request, thereby preventing the arbitration from being unduly expensive for small value claims. *Id*. Ex. 1 at 51; Ex. 24 at 25. For claims where the relief sought is more than $10,000 and the Plaintiff is able to demonstrate that the costs of accessing arbitration will be prohibitive as compared to the costs of accessing a court for purposes of pursuing litigation on an individual basis, the PUA AND VUA state that PayPal will pay as much of the AAA or arbitrator fees as the arbitrator deems necessary to prevent the cost of accessing the arbitration from being prohibitive. Ex. 1 at 51-52; Ex. 24 at 25. Highlighting these procedures, this Court and others have found the Agreements to Arbitrate are not substantively unconscionable. *See Cheng*, 2022 WL 126305, at *4-5; *see also Evans*, 2022 WL 1813993, at *5; *Nezri*, 606 F. Supp. 3d at 994.

### B. The Broad Agreements to Arbitrate Cover the Dispute at Issue.

Under the FAA, the scope of an arbitration agreement is governed by federal substantive law. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). And "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Benson v. Casa de Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020). The U.S. Supreme Court has upheld arbitration provisions containing expansive language, like the ones at issue here. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (upholding provision requiring arbitration of "all disputes between the parties").

The PUA and VUA Agreements to Arbitrate subject "any and all disputes or claims that have arisen or may arise between [Plaintiff] and PayPal" to binding arbitration. DAS Ex. 1 at 48; Ex. 24 at 24. Moreover, the PUA and VUA Agreements to Arbitrate explicitly provide that they

are "intended to be broadly interpreted." *Id.* Ex. 1 at 48; Ex. 24 at 24. The instant lawsuit falls within the broad language of "any and all disputes" and, as such, Plaintiffs' claims fall squarely within the scope of the Agreements to Arbitrate.

While it is true that the Arbitration Plaintiffs' claims here do not arise out of the direct use of their PayPal or Venmo accounts, that does not alter the arbitrability analysis because the Agreements to Arbitrate are not limited to disputes arising out of a particular account or transaction. Instead, the Arbitration Plaintiffs agreed to a broader scope of arbitration—"any and all disputes" they have with PayPal are subject to arbitration. Courts routinely interpret such "sweeping language" to cover a broad range of disputes that may arise. *Parish v. Fitness Int'l, LLC*, 2020 WL 5371510, at *4 (C.D. Cal. June 10, 2020) (agreeing to arbitrate "'any dispute'" includes disputes "that may arise outside of the agreement"); *see also Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170, 1180 (C.D. Cal. 2012) (when parties agree to arbitrate "any Dispute," "it is difficult to imagine *any* dispute between [the parties] that would lie outside its bounds."); *Pyramid Travel, Inc. v. Sri Lankan Travel, Inc.*, 2000 WL 34017119, at *5 (C.D. Cal. Sept. 18, 2000) (an arbitration provision encompassing "any" dispute arising "between the parties" "is so broad that it is not restricted merely to disputes that are connected with the agreement but may also be applied to independent tort claims arising after the conclusion of the agreement").

On its face, an agreement to arbitrate "any and all" claims unambiguously applies to any and all claims a user might assert against PayPal. But even if the scope of the clause was ambiguous, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also AT&T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986) (presumption in favor of arbitration is "particularly applicable" where the arbitration clause is broadly worded). Thus, any doubts as to whether the Agreements to Arbitrate cover the dispute must be resolved in favor of arbitration.

## CONCLUSION

For the foregoing reasons, the Court should compel arbitration of the Arbitration Plaintiffs' claims and stay the case as to the Arbitration Plaintiffs.

| | |
|---|---|
| Dated: August 11, 2025 | Respectfully submitted,<br><br>By: */s/ Paul F. Rugani*<br>Paul F. Rugani (SBN 342647)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>2050 Main Street, Suite 1100<br>Irvine, CA 92614-8255<br>Telephone: (949) 567-6700<br>prugani@orrick.com<br><br>Richard A. Jacobsen (admitted pro hac vice)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019-6142<br>Telephone: (212) 506-5000<br>rjacobsen@orrick.com<br><br>*Attorneys for Defendants PayPal, Inc. and PayPal Holdings, Inc.* |