1  [*Submitting counsel on signature page*]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11  IN RE PAYPAL HONEY BROWSER                Case No. 5:24-cv-09470-BLF
    EXTENSION LITIGATION
12                                            **JOINT STATEMENT ON DISCOVERY**
                                              **DISPUTE RELATED TO SOURCE**
13                                            **CODE REVIEW PROTOCOL**

14                                            Date:
                                              Time:
15                                            Judge:  Honorable Susan van Keulen
                                              Dept:
16

17

18

19

20

21

22

23

24

25

26

27

28

Section 8 of the Stipulated Protective Order, Dkt. 169, contained a placeholder Source Code Review Protocol that indicated the parties would file joint or competing proposals. After multiple meet and confers via videoconference, the Parties are unable to reach agreement on three issues.

*Scheduling*. As of this filing, there is no fact discovery cutoff or trial date, but the Parties jointly proposed November 16, 2026 for the close of fact discovery. Dkt. 195.

*Unresolved Issues and Proposed Compromise Positions*. (1) Plaintiffs propose defining "Client-Side Code" and allowing review of such code with limited internet access. Defendants oppose. (2) Plaintiffs propose requiring a working telephone in Source Code review room. Defendants oppose. (3) Plaintiffs propose allowing for printed source code as "reasonably necessary." Defendants propose presumptive limits of 25 continuous pages and 400 pages in aggregate for the case.

The Parties attach: a Proposed Order that highlights the Parties' competing proposed language (**Exhibit A**), Plaintiffs' Proposed Order (**Exhibit B**), and Defendants' Proposed Order (**Exhibit C**).

## I.　　DISPUTE #1 – REVIEWING "CLIENT-SIDE CODE" WITH INTERNET ACCESS

The Parties dispute language in Sections 8(b) and (c).[1]

### A.　　Plaintiffs' Position

Source code is uniquely important here because Plaintiffs' allegations center on how the code behind Honey's web browser extension displaces Plaintiffs' Affiliate ID markers on consumers' computers and redirects affiliate commissions that Plaintiffs earned to PayPal instead. As Plaintiffs' Amended Complaint details, this displacement occurs in the dynamic environment created when a customer purchases a product recommended by content creators like Plaintiffs. Dkt. 188. Accordingly, for the portion of PayPal's code which resides on the consumer's computer, known as the Client-Side Code, Plaintiffs' experts should be permitted *limited* (and secure) internet access to observe how the source code actually operated for consumers, a so-called "dynamic" analysis. *See* Ex. B, ¶ 8(c).

As detailed by Plaintiffs' technical expert—who has prepared a declaration explaining technical details, if the Court should be inclined to consider it—Client-Side Code, which consumers must install on their browsers to use Honey, requires internet access to function. The Honey browser

---

[1] Because Plaintiffs propose two Source Code Computers (one with internet access and one without), this dispute will determine if the Source Code Review Protocol refers to Source Code <u>Computer</u> or <u>Computers</u> in Paragraphs 8(d)(3), (4), (5), (8), (10), (11), and (13), and (e)(1), (2).

1  connects to different servers and sends and receives data as the Honey extension operates. In such a

2  dynamic environment, Honey gains "permissions" to use the consumer's computer, scans the internet

3  to locate coupons for merchant websites, activates pop-up screens, and opens new links to merchant

4  websites to take credit for any purchase that the consumer may make, among other things. *See* Dkt.

5  188, at ¶¶ 95, 103, 109-17, 131-33, 141-49. By seeking a dynamic analysis, Plaintiffs merely seek to

6  replicate what actually happens in the real world with Honey's Client-Side Code.

7  Nevertheless, PayPal refuses to permit a dynamic analysis and seeks to limit Plaintiffs to only

8  a "static" analysis of the source code. While a "static" analysis is appropriate in some circumstances,

9  including for PayPal's more standard, "server-side" source code,[2] it is inappropriate for Client-Side

10  Code for two main reasons. *First*, it would unduly burden Plaintiffs by significantly reducing their

11  ability to meaningfully and efficiently analyze this key evidence and effectively prosecute this case.

12  To use an analogy, PayPal's "static" analysis proposal is the equivalent of a mechanic inspecting a car

13  only by looking at the engine, but not starting or driving the car, whereas Plaintiffs' "dynamic" analysis

14  is the equivalent of allowing the mechanic to start and run the car to see how it is working. *Second*,

15  the Client-Side Code is already in the public domain in a modified form, and Plaintiffs merely seek a

16  targeted, dynamic analysis that allows their experts to fully examine its designed and operation.

17  *A "dynamic" analysis is efficient, more accurate, and removes the undue burden of a "static"*

18  *analysis*. A dynamic analysis of the Client-Side Code, which requires at least some limited internet

19  access, is by far the most efficient and accurate way to actually view how Honey operates. As

20  Plaintiffs' expert explains, a dynamic analysis "is necessary to identify, without guessing, the exact

21  portions of source code responsible for specific functionality, such as detecting when and how the

22  extension interacts with merchant websites or triggers user-facing features." A dynamic analysis most

23  closely tracks how the code is developed and used, and live testing with the internet is how Honey's

24  own developers test and understand the extension. Accordingly, the need for live testing is more acute

25  in this case than, for example, patent infringement cases where the source code is a critical piece of

26  evidence, but can nonetheless be reviewed through a static analysis.

27

28  [2] To clarify, PayPal's "Server-Side" code is not public facing as it resides and operates on PayPal's
servers. Accordingly, the Parties agree it should be reviewed without internet access.

JOINT STATEMENT ON DISCOVERY DISPUTE
RELATED TO SOURCE CODE REVIEW PROTOCOL
5:24-CV-09470-BLF

By contrast, limiting Plaintiffs to a static analysis of the Client-Side Code would mean that Plaintiffs could look at the code but not run it. This would be inefficient and even potentially misleading because the code is likely to be very long and contain many functions and variables. Plaintiffs' expert explains that tracing the flow of data through static analysis of the code is "time-consuming and over-inclusive" because it may not be clear whether and how different functions spread across a large volume of code interact. "Without actually running the source code, [] apparent connections can be misleading and require additional effort to verify or dismiss."

Further, a dynamic analysis would allow Plaintiffs to identify and focus on the limited portions of Honey's code that are likely relevant to the claims. This would dramatically increase the efficiency of Plaintiffs' review and targeted analysis of those provisions. *Cf. Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2021 WL 4124220, at *2 (S.D. Cal. Sept. 9, 2021) (permitting automated comparison of source code despite confidentiality objections, given it would be "reasonable and (potentially) efficient"). In contrast, Plaintiffs' expert believes that a static analysis could take orders of magnitude longer, if the analysis could even be performed accurately. Dynamic analysis would also reduce the amount of code that Plaintiffs would need to request be printed, by pin-pointing the relevant portions.

PayPal offers no substantive rebuttal to Plaintiffs' positions on the efficacy of a dynamic review, only pointing to generalized security concerns. But the network access during a dynamic inspection can be configured to address any security concerns. Plaintiffs' expert explains that, for example, the computer used "can be protected using a firewall such that all inbound connections are blocked, preventing any external system from accessing the inspection machine" and it "can be placed on an isolated network."

The Court should reject PayPal's speculation that a dynamic analysis is not possible because Plaintiffs may review old versions of the code. Defendants acknowledge that they retain old versions, and part of the purpose of an inspection of that code is to analyze changes made over time. But as Plaintiffs' expert explains, even if some features do not work perfectly because of changes made on the server side, a dynamic inspection will still provide useful information.

*A version of the Client-Side code is already public.* Unable to engage with Plaintiffs' substantive positions, PayPal conjures a strawman—that Plaintiffs are seeking an advisory ruling on

the level of Confidentiality of the Client-Side Code. Not so. Plaintiffs are seeking to efficiently (and securely) review key evidence at the heart of the case. Plaintiffs' proposal seeks the ability to undertake a dynamic analysis regardless of how PayPal designates its Client-Side Code.

Importantly, Plaintiffs' proposal is a compromise that is agnostic as to how the Client-Side Code is designated. That is because Plaintiffs' goal is not to dispute a designation (at this time at least), but to efficiently and comprehensively review key information through establishing a protocol.

But because PayPal spends most of its submission arguing about its Client-Side Code's Confidentiality designation, Plaintiffs briefly respond to PayPal's position while reserving to challenge future designations under the Protective Order's procedures. Unlike typical source code, Client-Side Code (including Honey's) is active on the consumer's computer and necessarily in the public domain. Its public form can be seen on any browser that has Honey installed. The non-public portions of the Client-Side Code are in the "development version" of the code, as it was written by Honey's developers. The public version does not differ in function, but is prepared by transforming certain portions of the development version. For example, in the public version, comments from the developers are removed, variable names can be shortened (e.g. a variable named "Affiliate ID" in the development version could be shortened to "A123" in the public version), and parts of the code may be bundled to optimize its operation. Plaintiffs' expert explains that though the files in the public version of the Client-Side Code "are visible within the browser, they are not fully human-readable due to these transformations." For this reason, the public version alone is insufficient for Plaintiffs' review, but the development version is less sensitive than the types of source code that the Model Order contemplates providing special protection. *Cf. Rabin v. Google LLC*, 702 F. Supp. 3d 880, 882 (N.D. Cal. 2023) (recognizing burdens of "tendency … to over-designate materials").

PayPal asserts without citation that Client-Side Code is always designated as "Highly Confidential – Source Code" and reviewed on a quarantined computer without internet access, and argues that Plaintiffs seek to deviate from the norm. But in the experience of Plaintiffs' counsel, this type of code has been appropriately designated as only "Highly Confidential" in other litigation for the reasons explained above, and reviewed without the Source Code Protocol's special procedures. But again, the proper designation is not at issue here—only the procedures to review any code

1  legitimately designated as "Source Code."

2       PayPal also asserts that Plaintiffs describe the burden of a static analysis "without providing

3  any evidence." Plaintiffs are mindful of the Court's Standing Order, which limits the permitted exhibits

4  to a joint statement absent leave of Court. As noted above, Plaintiffs' expert has prepared a declaration

5  on this topic based on his extensive experience reviewing static and dynamic source code, which

6  Plaintiffs are prepared to provide at the Court's direction.

7       In sum, Plaintiffs' Proposed Order provides a targeted means of balancing access with

8  confidentiality by specifying that any Client-Side Code legitimately designated as "Source Code" be

9  made available on a separate "Source Code Computer that has network and Internet access to allow

10  the Client-Side Code to be engaged with live merchant websites." Ex. B, ¶ 8(c).

11       **B.    PayPal's Position**

12       The Court should reject Plaintiffs' attempt to review PayPal's confidential source code on an

13  inherently less-secure Internet-connected computer. Plaintiffs' proposed language for Section 8(c)

14  seeks to define a class of source code documents ("Client-Side Code") that may be produced in

15  discovery and gives PayPal a false choice: accept a lower level of confidentiality protection for this

16  source code or put PayPal's highly confidential source code at greater risk of inadvertent disclosure

17  by placing it on a computer connected to the Internet. This choice subverts a fundamental

18  understanding of the Protective Order, that certain documents may require "special protection from

19  public disclosure and from use for any purpose other than prosecuting this litigation may be

20  warranted." D.I. 169 § 1. PayPal's source code deserves heightened protection and it should be

21  reviewed just like other confidential source code is reviewed: on a secure computer without Internet

22  access.

23       The Court should reject this provision for several reasons. First, Plaintiffs' proposed carve-out

24  for "Client-Side Code" would effectively put Plaintiffs in control of the confidentiality designation for

25  certain of PayPal's highly confidential source code. This would upend the normal operation of the

26  Stipulated Protective Order, in which the Producing Party chooses a document's confidentiality

27  designation in the first instance. *See* D.I. 169 § 5.1. It is PayPal's prerogative to select the

28  confidentiality for its documents. The Court should not credit Plaintiffs' preference that they dictate

the confidentiality of PayPal's documents.

Second, it is unclear that Plaintiffs' proposed "dynamic analysis" is even technically possible because it may result in a combination of client and server code that does not exist. The Parties do not know what version of the Honey Browser Extension code they will inspect (Plaintiffs have not served discovery specifically targeting "Client-Side Code" and discovery is stayed until after PayPal's motion to dismiss, *see* D.I. 160). Since the Honey Browser Extension interacts with backend servers during its operation, the code Plaintiffs review (which will be from some time in the past) may not be compatible with PayPal's current backend servers.

Third, Plaintiffs' definition and treatment of "Client-Side Code" would put PayPal's confidential source code at increased risk of inadvertent disclosure. Source code is treated with more care than other documents because it is generally highly confidential and derives value from not being widely known. Restrictive source code protocol provisions are designed to give reviewers access while limiting the risk that the source code could be treated in a non-confidential manner (*e.g.*, not allowing the review computer to connect to the Internet, limiting the number of printed excerpts of code, prohibiting parties from making their own copies of printed excerpts, limiting what devices can be in the review room, etc.). Here, Plaintiffs would require that "Client-Side Code" either be produced at a lower confidentiality designation (foregoing the heightened protections of the "HIGHLY CONFIDENTIAL – SOURCE CODE" designation) or allow the code to be reviewed on a review computer that can access the Internet. This increases the risk that source code could be improperly accessed from outside via the Internet-connected review computer.

Fourth, Plaintiffs' proposal unnecessarily short-circuits a potential dispute about confidentiality designations in Plaintiffs' favor. Plaintiffs acknowledge that there may be a disagreement on the confidentiality designation for "Client-Side Code." The Parties agreed that Section 6 of the Stipulated Protective Order controls this type of dispute (instructing parties to meet and confer and then file a joint discovery statement with Magistrate Judge van Keulen if they cannot resolve the dispute). D.I. 169 § 6. To the extent the Parties have a dispute over confidentiality provisions, they should resolve it consistent with the Stipulated Protective Order.

None of Plaintiffs' arguments credibly support adopting this provision. First, Plaintiffs argue

they should be allowed to access PayPal's highly confidential source code on a less-secure Internet-connected computer because the code is "uniquely important" in this case. This case is no different than any other case where software behavior is at issue (*e.g.*, every case where software is alleged to infringe a patent). In those cases, plaintiffs review source code on a secure computer without Internet access to protect the confidentiality of non-public code.

Second, PayPal is not trying to "limit" Plaintiffs' review, as they suggest. Instead, it is Plaintiffs that are trying to buck source code review norms and weaken the reasonable protections for PayPal's code. Plaintiffs cite no case where a Court has categorically overridden a producing party's intent to designate source code as highly confidential and has mandated that review of that code take place on a computer that can access the Internet.

Third, Plaintiffs claim that a traditional "static analysis" would "unduly burden Plaintiffs by significantly reducing their ability to meaningfully and efficiently analyze this key evidence and effectively prosecute this case," without providing any evidence. Given the discovery stay the Parties agreed to, *see* D.I. 160, PayPal has neither produced any technical documents about the operation of its software, nor made any source code available for inspection. Thus, Plaintiffs' claims about the difficulty of conducting their review (*e.g.*, "the code is likely to be very long and contain many functions and variables" and the analysis "could take orders of magnitude longer") amount to mere speculation. But even if Plaintiffs' code review is technically challenging, as they often are, that does not mean it is per se unduly burdensome. Plaintiffs have provided no factual basis for their claims of burden that would warrant putting PayPal's source code at risk. To that end, the Court should not credit any statements, apparently from a Plaintiffs' expert declaration, claiming their *preferred* form of review is *necessary*, when nobody has reviewed any code yet. Moreover, Plaintiffs' citation to *Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2021 WL 4124220 (S.D. Cal. Sept. 9, 2021) is unpersuasive. That case does not suggest that a reviewing party's efficiency goals are of paramount importance. *Id.*, at *1 (the plaintiff refused to place both parties' code on the same secure review computer).

Fourth, PayPal's "Client-Side" source code is not "in the public domain" as Plaintiffs claim. As they acknowledge, the "development" (*i.e.*, non-public) version of the code contains expression

that is not publicly accessible (*e.g.*, developer comments and variable names). This supports PayPal's position that such code should only be reviewed on a computer without Internet access. Plaintiffs' conclusion that "the development version is less sensitive" lacks any factual support, is wrong, and underscores why attempting to categorically treat PayPal's source code with less confidentiality— before it's even been produced—is improper.

Finally, Plaintiffs cite *Rabin v. Google*, 702 F. Supp. 3d 880, 882 (N.D. Cal. 2023) to suggest that that PayPal's desire to protect its highly confidential source code is an example of "over-designat[ing] materials." Judge Pitts never mentions "source code" in his order because, as the plaintiffs in that case made clear in their related discovery letter, "***This is not a case that involves highly sensitive material*** that implicates the competitive concerns that animate the Patent Order. It is a breach of contract case about a consumer product. ***Plaintiffs do not seek source code, patent information, or sensitive technical information*** . . . ." *Rabin v. Google*, Case No. 22-cv-4547-PCP, D.I. 73, at *2 (Nov. 6, 2023) (emphasis added). This case is inapposite. The Court should reject Plaintiffs' "Client-Side Code" language in its entirety and allow PayPal to make its source code available on a secure review computer.

## II.     DISPUTE #2 – LANDLINE TELEPHONES IN SOURCE CODE REVIEW ROOM

The Parties dispute language in Sections 8(d)(3).

### A.     Plaintiffs' Position

Plaintiffs' proposal to make a telephone available in the room where the Source Code Computers are maintained is reasonable, as it will allow the inspecting expert to reach out with questions they may have without interrupting their inspection. Given the Parties' agreement on robust security measures, *see* Ex. A ¶ 8(d)(2)–(13), simply conferring with other signatories to the Protective Order via phone during the inspection poses no threat and would only ensure that the inspection is efficient. Plaintiffs requested a landline only after compromising by agreeing not to bring cell phones or other camera-enabled devices into the inspection room. Any portable telephone that satisfies Defendants' security concerns would suffice and PayPal does not dispute that it could do this (in fact, PayPal's counsel can be reached directly by telephone according to their firm website pages).

**B.**    **PayPal's Position**

Plaintiffs request that the room with the Source Code Computer also have a landline telephone. This is not a reasonable request for at least two reasons. First, landline telephones are not typically available in the rooms where PayPal's counsel hosts source code reviews. Requiring phones would either force PayPal's counsel to incur an unnecessary expense or limit how they use their own office space. Second, if a source code reviewer wishes to make a phone call, they can use the provided breakout room, which should alleviate Plaintiffs' efficiency concerns.

**III.    DISPUTE #3 – LIMITS ON PRINTOUTS OF SOURCE CODE**

The parties dispute language in Sections 8(e)(3) and (4).

**A.**    **Plaintiffs' Position**

At this juncture, there is no basis to deviate from, the Model Order's "reasonably necessary for permitted purposes" language regarding limits on printed portions of code. *See* Ex. B ¶ 8(e); Model Order ¶ 9(d) ("[t]he Receiving Party may request paper copies of limited portions of source code that are *reasonably necessary* for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial."). Defendants prematurely seek to transform a reasonableness requirement into a fixed limitation on the number of printed pages that Plaintiffs can request. While Plaintiffs' expert expects that there will be hundreds of thousands of lines of relevant code, what is "reasonably necessary" cannot be determined until Plaintiffs' actual inspection. PayPal has provided no good cause to impose its fixed (and arbitrary) benchmark rather than the "reasonableness" standard of the model protective order. *See OpenTV, Inc. v. Apple, Inc.*, 2014 WL 5079343, at *3 (N.D. Cal. Oct. 9, 2014) (no good cause to limit print portions of source code to 250 pages and deviate from model order).

With respect to the number of copies of printed code, the Parties agreed that "[t]he Receiving Party may create an electronic copy or image of limited excerpts of source code only to the extent necessary in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, or any drafts of these documents, or as is otherwise necessary for the preparation of its case" Ex. B at ¶ 8(h). This limitation is sufficient and tracks the Model Order. Model Order ¶ 9(e).

**B.**    **PayPal's Position**

PayPal requests reasonable presumptive limits (25 continuous pages and 400 pages in the

aggregate) to the number of printed copies of its highly confidential source code. The goal with this or any limit on printed source code is to protect PayPal's intellectual property and to manage the inherent risk of inadvertent disclosure associated with printing confidential materials that are not typically printed. These limits are also consistent with the prohibition on printing large blocks of code for review in the first instance, which the parties agree to. See Ex. A § 8(e)(1). These limits are reasonable because they are only *presumptive* limits and not absolute limits. PayPal's proposal would allow Plaintiffs to make reasonable requests to exceed these limits and any disputes about the amount of printed source code would be through the lens of the reasonableness of the request. Moreover, stating presumptive limits on printing will help make clear what requests will not result in a dispute, saving the parties and Court time.

PayPal also requests language in Section 8(e)(3) that restricts Plaintiffs from making its own additional sets of printed source code. The parties already agree that Plaintiffs may request two additional sets of printed source code. *See* Ex. A § 8(e)(3). If Plaintiffs are free to make as many additional sets of printed source code as they want, this unnecessarily increases the risk that its highly confidential source code could be inadvertently disclosed. Moreover, if Plaintiffs can freely make their own copies, it eviscerates the purposes of the limit of two additional sets.

Plaintiffs propose no limits on printing source code (either the consecutive lines or aggregate pages of source code). Nor do Plaintiffs provide any rubric for the grounds on which PayPal may object to a print request. PayPal is concerned this will lead to additional disputes. In addition, Plaintiffs' suggestion that the Model Protective Order should be treated as the presumptive protective order is not consistent with the current guidance on the Court's website that "With the exception of Patent Local Rule 2-2, the Local Rules do not require the parties to use any of the model protective orders and counsel may stipulate to or move for another form of protective order." Finally, Plaintiffs' suggestion that language from Section 8(h) properly addresses any limitations on the creation of sets or subsets of printed code is incorrect. That section allows for creating "electronic copy or image of limited excerpts of source code" and does not relate to making wholesale copies of all printed source code or large subsets thereof. PayPal's request to explicitly limit Plaintiffs creating additional sets of code is necessary and reasonable.

Dated:  August 13, 2025

Respectfully submitted,

By:  /s/ Dena C. Sharp
Dena C. Sharp (SBN 245869)
Adam E. Polk (SBN 273000)
Trevor T. Tan (SBN 281045)
Nina Gliozzo (SBN 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
apolk@girardsharp.com
ttan@girardsharp.com
ngliozzo@girardsharp.com

Elizabeth J. Cabraser (SBN 083151)
Roger N. Heller (SBN 215348)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
rheller@lchb.com

Jason L. Lichtman (*pro hac vice*)
Sean A. Petterson (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
jlichtman@lchb.com
delmasry@lchb.com

Nanci Nishimura (SBN 152621)
Thomas E. Loeser (SBN 202724)
**COTCHETT, PITRE &**
**MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
nnishimura@cpmlegal.com
tloeser@cpmlegal.com

Thomas E. Loeser (SBN 202724)
Karin B. Swope (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
tloeser@cpmlegal.com
kswope@cpmlegal.com
jalhadeff@cpmlegal.com

*Plaintiffs' Interim Class Counsel*

Dated:  August 13, 2025

Respectfully submitted,

By: */s/ Geoffrey G. Moss*
Paul F. Rugani (SBN 342647)
Geoffrey G. Moss (SBN 258827)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone: (949) 567-6700
prugani@orrick.com

Richard A. Jacobsen (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
rjacobsen@orrick.com

*Attorneys for Defendants PayPal, Inc. and PayPal Holdings, Inc.*

## ATTESTATION STATEMENT

I, Dena C. Sharp, am the ECF user whose identification and password are being used to file this document. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: August 13, 2025

By:  */s/ Dena C. Sharp*
Dena C. Sharp

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2025, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system. I also caused a copy of the under-seal documents to be served via electronic mail on defense counsel.

By: */s/ Dena C. Sharp*
Dena C. Sharp