CLEMENT S. ROBERTS (SBN 209203)
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RICHARD A. JACOBSEN (*admitted pro hac vice*)
MARC R. SHAPIRO (*admitted pro hac vice*)
rjacobsen@orrick.com
mshapiro@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:    +1 212 506 5000
Facsimile:    +1 212 506 5151

PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone:    +1 949 567 6700
Facsimile:    +1 949 567 6710

Attorneys for Defendants
PAYPAL, INC. AND PAYPAL HOLDINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE PAYPAL HONEY BROWSER EXTENSION LITIGATION | Case No. 5:24-cv-09470-BLF |
| | **DEFENDANTS PAYPAL, INC.'S AND PAYPAL HOLDINGS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| | Date:     November 6, 2025<br>Time:     9:00 AM<br>Judge:    Honorable Beth Labson Freeman<br>Dept:     Courtroom 1, 5th Floor |

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ........................................................................................................... 1

**ARGUMENT** ................................................................................................................ 2

I.    Plaintiffs Fail To Show They Have Article III Standing. ........................................ 2

    A.    Plaintiffs Fail To Refute That The Alleged Harm Is Not Traceable To Honey.......... 2

    B.    Plaintiffs Fail To Refute That Their Standing Allegations Are Speculative. ............ 3

II.    Plaintiffs' CFAA And CDAFA Claims Fail (Counts I, VI). ................................... 4

    A.    Plaintiffs' Claim That PayPal Acted With Permission But With An Improper Motive Is Foreclosed By *Van Buren* and *Nosal*. ..................................................................... 4

    B.    Plaintiffs Have Failed To Identify Technological "Damage" or "Loss." ................... 6

    C.    Plaintiffs Do Not Own Affiliate IDs Created By Merchants. ................................... 7

III.    Plaintiffs' Common-Law Claims Fail. ................................................................... 7

    A.    Plaintiffs Cannot State a Claim for Unjust Enrichment (Count II). ........................... 7

    B.    Plaintiffs Fail To State Interference Claims (Counts III-V). ................................... 8

        1.    Plaintiffs Have Not Pleaded A Reasonable Probability Of Economic Benefit Or Disruption Of Their Relationships With Merchants................................... 8

        2.    PayPal's Alleged Breach Of Industry Norms Does Not Constitute "Wrongful Conduct" Sufficient To State An Interference Claim. ...................................10

        3.    As Competitors, Plaintiffs And PayPal Owe No Duty To Each Other That Would Support A Negligent Interference Claim. .........................................11

IV.    Plaintiffs Fail To Defend Their Unfair Competition Claims (Counts VII-XII). ................... 12

    A.    Plaintiffs are unable to identify any wrongful conduct. ........................................... 12

    B.    Plaintiffs cannot overcome their failure to plausibly allege inadequate legal remedies. ....................................................................................................... 13

    C.    Plaintiffs do not refute the other claim-specific reasons their claims fail.................. 14

**CONCLUSION** .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Sys., Inc. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 6, 10

*Bauer v. PayPal*,
No. 5:25-cv-00580, Dkt. 1 (N.D. Cal. Jan. 16, 2025) ...................................... 11, 12

*Cap. One*,
2025 WL 1570973 ..................................................................................... 3, 5, 13, 15

*Castillo v. Walmart, Inc.*,
2025 WL 1828465 (N.D. Cal. July 1, 2025) ........................................................ 14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ..................................................................................... 12, 15

*Cenatiempo v. Bank of Am., N.A.*,
333 Conn. 769 (Conn. 2019) ................................................................................ 13

*City of Oakland v. Oakland Raiders*,
83 Cal. App. 5th 458 (2022) .................................................................................. 8

*Code Rebel, LLC v. Aqua Connect, Inc.*,
2013 WL 5405706 (C.D. Cal. Sept. 24, 2013) ...................................................... 11

*Davis v. Four Seasons Hotel Ltd.*,
122 Haw. 423 (2010) ............................................................................................. 15

*Doe v. Hochul*,
139 F.4th 165 (2d Cir. 2025) .................................................................................. 4

*Doe v. Santa Clara Cnty. Dep't of Health & Hum. Servs.*,
2024 WL 4050396 (N.D. Cal. Sept. 3, 2024) ........................................................ 3

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
277 F. Supp. 2d 269 (S.D.N.Y. 2003) .................................................................. 15

*Hakopian v. Mukasey*,
551 F.3d 843 (9th Cir. 2008) ................................................................................ 12

*ITN Flix, LLC v. Hinojosa*,
686 F. App'x 441 (9th Cir. 2017) ......................................................................... 11

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .................................................................................... 8, 11

*Lindsay-Stern v. Garamszegi,*
   2016 WL 11745948 (C.D. Cal. Oct. 13, 2016) ............................................................ 7

*Lyon Fitness, LLC, v. PayPal,*
   No. 5:25-cv-00501, Dkt. 1 (N.D. Cal. Jan. 14, 2025) ........................................... 10, 11

*Matthews v. Apple, Inc.,*
   769 F. Supp. 3d 999 (N.D. Cal. 2024) ............................................................... 12, 14

*Mendez v. Selene Fin. LP,*
   2017 WL 1535085 (C.D. Cal. Apr. 27, 2017) ........................................................ 13

*Precourt v. Fairbank Reconstruction Corp.,*
   856 F. Supp. 2d 327 (D.N.H. 2012) ...................................................................... 14

*Rhynes v. Stryker Corp.,*
   2011 WL 2149095 (N.D. Cal. May 31, 2011) ....................................................... 14

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.,*
   2 Cal. 5th 505 (2017) ........................................................................................ 9

*In re Sagent Tech., Inc., Derivative Litig.,*
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ................................................................ 9

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir. 2020) ............................................................................. 13

*Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.,*
   138 Cal. App. 4th 1215 (2006) .......................................................................... 11

*Stiegler v. Saldat,*
   2015 WL 13686087 (W.D. Wash. Oct. 23, 2015), *aff'd*, 707 F. App'x 478 (9th
   Cir. 2017) ...................................................................................................... 15

*Talavera v. Glob. Payments, Inc.,*
   670 F. Supp. 3d 1074 (S.D. Cal. 2023) ................................................................ 8

*United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.,*
   766 F.3d 1002 (9th Cir. 2014) ............................................................................ 9

*United States v. Nosal,*
   676 F.3d 854 (9th Cir. 2012) .............................................................................. 5

*Van Buren v. United States,*
   593 U.S. 374 (2021) .......................................................................................... 5

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.,*
   42 Cal. App. 4th 507 (1996) .............................................................................. 9

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.,*
   472 F. Supp. 3d 649 (N.D. Cal. 2020) ................................................................. 6

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.,*
   601 F. Supp. 3d 625 (C.D. Cal. 2022), *opinion clarified*, 2022 WL 19425927
   (C.D. Cal. Mar. 2, 2022) .................................................................................. 13

DEFENDANTS' MOTION TO DISMISS
5:24-CV-09470-BLF

**Other Authorities**

Fed. R. Evid. 201(b) ................................................................................................ 12

Rest. 3d Restitution and Unjust Enrichment, § 48 ................................................ 8

Rest. 3d Restitution and Unjust Enrichment, § 159 .............................................. 8

**INTRODUCTION**

Plaintiffs' Opposition depends on three flawed premises.

*Flawed Premise 1*. Plaintiffs assert that "[t]his case is about theft." Dkt. 219 ("Opp.") 1. But Plaintiffs *dropped* their theft claim (conversion) from their FAC. Rightly so. Honey's exercise of its own contractual rights to receive commissions from online merchants and affiliate networks is not theft; it is legitimate competition in the online e-commerce marketplace. Plaintiffs repeatedly insist that "Plaintiffs do not allege that they compete with Honey." Opp. 21; *see* Opp. 2, 19, 20-21, 22, 24. But omitting those words cannot change the economic reality that Honey and Plaintiffs both *compete* for the same "commissions from … merchant partners." FAC ¶¶ 102-03.

*Flawed Premise 2*. Plaintiffs' claims are premised on their "agreements … with Merchants and Affiliate Networks entitling them to Affiliate Commissions through the industry-standard last-click attribution." Opp. 19. Plaintiffs contend these contracts purportedly make clear that "actions that the consumer takes once they have arrived" at merchants' websites do not qualify as the "last click." Opp. 3. It is telling, however, that the FAC declines to identify a *single* contract or contract term supporting Plaintiffs' claims. And Plaintiffs' assertion that the industry awards commission only for *external* clicks, outside of the merchants' website, is implausible. After all, merchants have been knowingly awarding Honey commissions for years even though Honey is a "browser extension," which by definition, operates on merchants' websites. Dkt. 188 ("FAC") ¶¶ 2, 95.

*Flawed Premise 3*. Plaintiffs contend that PayPal's actions qualify as "cookie stuffing." But Plaintiffs acknowledge that a party must "exceed the authorized access to a consumer's computer" to engage in cookie stuffing. Opp. 8. Plaintiffs, however, *admit* in the FAC that users grant Honey "extensive" permissions and nowhere allege that PayPal violated these permissions.

These three flawed premises are fatal to Plaintiffs' claims.

*Standing:* Plaintiffs argue that their alleged harm is traceable to Honey rather than industry attribution rules because the industry supposedly credits only external clicks. Opp. 5. Flawed Premise 2 defeats this argument: Plaintiffs do not identify any of their contracts that support this assertion, and their allegations about the industry's last-click "standards" are facially implausible.

*CFAA/CDAFA:* Plaintiffs argue PayPal's failure to disclose its "cookie stuffing" violates

the CFAA/CDAFA. But Flawed Premise 3 shows why these claims cannot survive: Plaintiffs fail to plead that PayPal exceeded the scope of the extensive permissions granted to it by users.

*Unjust enrichment:* Plaintiffs argue they have adequately stated an unjust enrichment claim simply because PayPal purportedly benefited at Plaintiffs' expense.  But Flawed Premises 1 and 2 show this claim fails too, as any benefit was undisputedly bestowed by Honey's merchant partners pursuant to their contractual agreements with Honey, and Plaintiffs have failed to allege that they have a better legal or equitable right to this benefit than their competitor.

*Tortious interference:* Plaintiffs argue that they've adequately pleaded the "relationships and obligations" in their contracts with merchants to support their tortious interference claims. But Flawed Premises 1 and 2 preclude these claims as well. Plaintiffs' general descriptions of the workings of the industry are insufficient to establish that a Plaintiff in this case has a contract with a specific merchant that entitles that Plaintiff, and not PayPal, to affiliate marketing commissions.

*Unfair competition:* Plaintiffs' largely derivative unfair competition claims rise and fall on one or more of these three flawed premises and fail for the same reasons already discussed: Plaintiffs do not allege any unfair or unlawful conduct.

## ARGUMENT

### I.      Plaintiffs Fail To Show They Have Article III Standing.

#### A.      Plaintiffs Fail To Refute That The Alleged Harm Is Not Traceable To Honey.

PayPal explained that Plaintiffs' alleged harm is traceable not to Honey but to the industry's attribution rules to which Plaintiffs agreed when they elected to participate in the affiliate marketing ecosystem. Mot. 5-6. Plaintiffs do not dispute they agreed to these rules or that they are not harmed when another affiliate marketer's affiliate link is the "last click" instead of theirs.

Plaintiffs nevertheless insist Honey harms them if *Honey* is the last click because only "*legitimate* clicks" should count—i.e., those that "occur *before* a consumer reaches the merchant's site." Opp. 5-6. Plaintiffs do not identify any contracts of theirs that define last clicks in this way, however. And their assertions that the industry supposedly defines "last click" as only the last *external* click are belied by (a) the sources Plaintiffs cite in their FAC, which recognize that last click includes any "last touchpoint" or "last meaningful event" prior to a sale, *see* Mot. 3, and (b)

the fact that Honey is a major industry participant that merchants have bestowed commissions upon for years, despite Honey being a browser extension that by definition operates on merchants' websites. Notably, Plaintiffs do not dispute that merchants are aware when their *own websites* "replace[]" affiliate marketers' affiliate IDs with Honey's affiliate ID. FAC ¶¶ 73, 146; *see* Mot. 6. Since merchants knowingly award Honey commissions in these circumstances, Plaintiffs' assertion that the "industry standard" awards only last *external* clicks is implausible on its face, particularly given Plaintiffs' failure to identify any contractual language supporting their view. This Court is not required to credit such "implausible" allegations. *See Doe v. Santa Clara Cnty. Dep't of Health & Hum. Servs.*, 2024 WL 4050396, at *3, *5 (N.D. Cal. Sept. 3, 2024).

This absence of any supporting contractual language fatally undermines Plaintiffs' reliance (at Opp. 4-6) on *Capital One*, as that case's traceability holding relied on quoted language from the "merchants' agreements cited in the Complaint" that purportedly showed that the plaintiffs there were "entitled to the commissions." *Cap. One*, 2025 WL 1570973, at *6. Furthermore, as PayPal explained (Mot. 6), the *Capital One* court's analysis was tied to its belief that "neither the merchant nor the affiliate network knows that Plaintiffs have had any involvement in the transaction." *Cap. One*, 2025 WL 1570973, at *6 n.15. Here, in contrast, Plaintiffs do not allege that merchants and affiliate networks are unaware of any affiliate marketers' involvement in transactions when Honey wins a commission. Nor can Plaintiffs manufacture standing by arguing that PayPal is "not playing by the rules," Opp. 5, where Plaintiffs fail to provide any factual support for what those rules are.

### B.    Plaintiffs Fail To Refute That Their Standing Allegations Are Speculative.

PayPal explained that Plaintiffs' theory of standing rests on a lengthy chain of speculative possibilities: (1) at least one consumer clicks on one of Plaintiffs' links; (2) that consumer has Honey downloaded; (3) Honey partners with the merchant website; (4) the consumer purchases the product without first clicking on another affiliate marketers' link; (5) the consumer uses Honey when checking out; (6) Honey receives the commission rather than standing down based on its contractual agreements with merchants; and (7) Honey is not the sale's but-for cause. Opp. 6-8.

The Opposition fails to show that the happenstance of all seven of these steps is plausible. Plaintiffs attempt to factually distinguish *Clapper*, asserting that, "[u]nlike the long chain of

causation" in *Clapper*, "Plaintiffs here show that PayPal wrongly took Affiliate Commissions from Plaintiffs at checkout." Opp. 6-7. But that is precisely the problem: Plaintiffs have not shown this. All Plaintiffs point to is their "representative" example of Justin Tech Tips. Opp. 7 (citing FAC ¶¶ 141, 148). As PayPal explained (at Mot. 8) and Plaintiffs ignore, this example does not show standing as to even Justin Tech Tips because the FAC does not allege the purchase was completed.

Plaintiffs *infer* that Honey has received commissions Plaintiffs otherwise would have obtained because Plaintiffs have "affiliate marketing relationships … entitl[ing] them" to commissions; Honey is installed on "over 17 million browsers"; and Honey "mechanically replaces any existing affiliate code." Opp. 7. This does not plausibly connect the numerous "link[s] in Plaintiffs' causal chain," however. *Contra* Opp.7. For example, Plaintiffs do not address the extent of overlap, if any, between Honey's and PayPal's merchant partners or Honey users and consumers who click on Plaintiffs' links. *See* Mot. 7. The fact that a "consumer need only click one button at checkout" for Honey to be awarded a commission (Opp. 6) does not remedy these deficiencies.

That leaves Plaintiffs' "Monte Carlo" simulation. As PayPal explained, courts have rejected the use of statistics to show standing, including at the pleadings stage. Mot. 9. Plaintiffs posit that this rule applies only to allegations of organizational standing or future harm. Opp. 7. However, plaintiffs are required to plausibly allege an actual or imminent injury "[i]n every case— representative standing or otherwise." *Doe v. Hochul*, 139 F.4th 165, 181 (2d Cir. 2025). And Plaintiffs offer no explanation for why this requirement should be relaxed for plaintiffs pleading past harms, as opposed to future ones. The only case Plaintiffs cite in support of their position is *Capital One*. Opp. 8. But they ignore that the standing analysis there merely "bolstered" alleged harm stemming from "actual purchases on merchants' websites"—allegations absent here. Mot. 9.

## II.    Plaintiffs' CFAA And CDAFA Claims Fail (Counts I, VI).

### A.    Plaintiffs' Claim That PayPal Acted With Permission But With An Improper Motive Is Foreclosed By *Van Buren* and *Nosal*.

Plaintiffs cannot state claims under the CFAA or CDAFA because they admit that consumers give PayPal permission to take the actions that Plaintiffs assert are unlawful. *See* Mot. 12-13. Each claim requires Plaintiffs to plead that PayPal either acted without authorization or

1  exceeded its authorization. *Id.* Plaintiffs allege that PayPal meets this element by creating new

2  pages in a user's browser, which causes cookies connected to a particular merchant site to be

3  modified. *See* FAC ¶ 372. But Plaintiffs admit in the FAC—and do not deny in the Opposition, *see*

4  Opp. 9—that consumers grant PayPal "extensive" permissions when they install the Honey browser

5  extension, including permission to "access[]" or "creat[e] pages" and "[q]uery and modify

6  cookies." *see* FAC ¶ 133; *see also id.* ¶¶ 132 (Honey promises "the consumer they will get discounts

7  … in exchange for granting this broad set of permissions"), 144.  Those admissions bar both claims.

8        Plaintiffs protest in their Opposition that PayPal's actions are nonetheless unauthorized

9  because PayPal does not "disclose[]" precisely how it is going to use the permissions granted by

10  consumers. *See* Opp. 9. But neither statute imposes a duty to disclose how permissions will be

11  exercised, and any suggestion that these statutes restrict the *use* of authorized permissions is

12  foreclosed by *Van Buren v. United States*, 593 U.S. 374 (2021). There, the government brought

13  charges under the CFAA against a police officer who indisputably had access to a database of

14  license plate data but misused that access. *Id.* at 380. *Van Buren* held the CFAA did not apply

15  because the officer was permitted to access the database, even if he had "obtained information from

16  the database for an improper purpose." *Id.* at 396. The Court analogized authorization under the

17  CFAA to a "gates-up-or-down inquiry—one either can or cannot access a computer system, and

18  one either can or cannot access certain areas within the system." Here, PayPal indisputably had

19  access to both consumers' computer systems (via their installation of Honey, *see* FAC ¶ 132) and

20  to the areas of those systems at issue in Plaintiffs' claim (via consumers' grant of access to Honey

21  to create pages and modify cookies during installation, *id.* ¶¶ 132-33, 144). The relevant "gates"

22  were up. *See also United States v. Nosal*, 676 F.3d 854, 864 (9th Cir. 2012) ("[T]he CFAA is limited

23  to violations of restrictions on access to information, and not restrictions on its use….").

24        Plaintiffs again point to *Capital One*. Opp. 9. But as PayPal explained, Mot. 13, this case

25  differs from *Cap. One* because the plaintiffs there alleged only that Capital One had permission to

26  "measure" and "record" user interactions. *See* 2025 WL 1570973, at *13. Plaintiffs' assertion that

27  "consumers are not expressly authorizing [PayPal] to *override* Plaintiffs' tracking codes," cannot

28  be squared with Plaintiffs' admission that PayPal obtains "extensive" permissions from users,

including permission to "modify" cookies. *Compare* Opp. 9 *with* FAC ¶¶ 132-33.

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020), is no help to Plaintiffs either. *See* Opp. 9. WhatsApp expressly "impose[d] certain limitations on accessing portions of its servers, such as **prohibiting access** to the technical call settings." *Id.* at 681. The alleged hackers in *WhatsApp* nonetheless accessed and manipulated those settings. *Id.* In contrast, Plaintiffs allege here that PayPal acted with permission when it created new pages and caused merchant websites to modify their cookies. FAC ¶¶ 132-33, 144. Plaintiffs' suggestion that PayPal "bypass[ed] browser security protocols" falls flat because the *only* security protocols identified in the FAC are those that "block or limit image and iframe injection." FAC ¶ 151. Plaintiffs allege that PayPal engages in a "redirecting technique," not "image and iframe injection." *Id.* ¶ 434.

## B.    Plaintiffs Have Failed To Identify Technological "Damage" or "Loss."

Plaintiffs also fail to allege technological "damage" or "loss." *See* Mot. 10-12.

As to "damage," Plaintiffs' affiliate IDs themselves are strings of letters and/or numbers that have no independent value as data. Mot. 10. Plaintiffs contend the IDs are like "technological chit that can be exchanged for money." Opp. 10. But Plaintiffs do not allege in the FAC (because it is not true) that affiliate IDs have a specific value or can be exchanged for money. Plaintiffs get paid only if their affiliate ID is recorded in the merchant's cookie and the merchant determines that they qualify for a commission under the applicable agreement. FAC ¶¶ 1, 65-66.

As to "loss," Plaintiffs have failed to identify revenue lost due to an "interruption of service." Mot. 11. Plaintiffs assert that their allegation that PayPal "redirect[ed] communications within the Affiliate Commission attribution system" is sufficient. Opp. 10. But the Court should not credit this type of "'naked assertion[]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs do not, in fact, allege that PayPal "redirects" any communications but instead allege PayPal causes a merchant website to store PayPal's affiliate ID in the merchant's cookie instead of Plaintiffs'. *See* FAC ¶ 372. That action does not "interrupt" the merchant's commission attribution service. At most, it changes the *outcome* of that process. If this qualifies as an "interruption in service," then *all* competition between affiliate marketers would "interrupt" the service for first-in-time affiliates. The CFAA and CDAFA do not stretch that far.

### C.    Plaintiffs Do Not Own Affiliate IDs Created By Merchants.

Plaintiffs CDAFA claim fails for the additional reason that Plaintiffs do not have an ownership interest in their affiliate IDs, as *Capital One* recognized. *See* Mot. 13. Plaintiffs contend that their FAC fixes the problem with the *Capital One* complaint because here they allege that Plaintiffs "took substantial steps to create their affiliate links and the unique identifiers within them." Opp. 12. But nearly all of the "steps" Plaintiffs identify are steps Plaintiffs take to produce social media content. *See* Opp. 12. These steps are irrelevant to Plaintiffs' ownership interest in affiliate IDs. *See* FAC ¶ 432. The only step that Plaintiffs allegedly take to create those IDs—"using tools and extensions to generate different link types"—reveals Plaintiffs' lack of ownership. Opp. 12. These "tools and extensions" are merchant-provided. *See* FAC ¶ 432 (IDs are "generated from an Affiliate Network or Merchant-provided tool"). The IDs do not exist until and unless they are provided by a merchant as an identifier for Plaintiffs within the Merchant's system.

Affiliate IDs are thus not "an active commercial asset created by Plaintiffs," *see* Opp. 12, but merely a tracking number identifying Plaintiffs. Plaintiffs at best allege that some merchants permit them to customize a portion of their IDs. The only example the FAC gives is "deepdis-20," in reference to the YouTube channel "DeepDiscounts." FAC ¶¶ 80-83. But even "deepdis-20" reveals that it was merchant-created because it features a number code, apparently appended by Amazon. Other examples of affiliate IDs in the FAC are just generic strings of numbers. *See, e.g.*, *id.* ¶ 146. Because Plaintiffs do not "create" IDs in any meaningful sense; case law cited by Plaintiffs in which a party was found to have an ownership interest in data they created is inapposite. *See Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *5 (C.D. Cal. Oct. 13, 2016) (concluding party had ownership interest in personal emails within their work email account).

### III.    Plaintiffs' Common-Law Claims Fail.

### A.    Plaintiffs Cannot State a Claim for Unjust Enrichment (Count II).

Even assuming an unjust enrichment claim is cognizable in California as a quasi-contract claim, Plaintiffs cannot state such a claim where they have an adequate remedy at law against a third party. *See* Mot at 14-15. Plaintiffs' argument that PayPal, rather than a third party, caused their harm is beside the point. This does not alter the fact that a remedy for the same alleged wrong,

the diversion of commissions, is available against another party: merchants and affiliate networks. Plaintiffs claim that PayPal misconstrues the meaning of a sentence from *Talavera v. Glob. Payments, Inc.*, 670 F. Supp. 3d 1074 (S.D. Cal. 2023). *See* Opp. 14. It is Plaintiffs who are mistaken in their reading. *Talavera* held that "'no action for unjust enrichment lies where a contract governs the parties' relationship to each other' ***or*** 'where a legal remedy for the same wrong is available against a different party.'" *Id.* at 1110 (emphasis added). The latter applies here.

Indeed, the role of third parties in these transactions precludes Plaintiffs' unjust enrichment claim. Where someone other than the plaintiff provides the benefit the defendants allegedly unjustly retained (here, the merchants and affiliate networks), a plaintiff is entitled to restitution only where the plaintiff "has a better legal or equitable right" to such benefit than the defendant. *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 478–79 (2022). Plaintiffs cannot meet this "highly restrictive" standard. *Id.*, *see also* Rest. 3d Restitution and Unjust Enrichment, §§ 48, 159. As industry competitors who are vying for commissions with PayPal, Plaintiffs have not demonstrated they have a "better" right to any commissions than PayPal, particularly given their failure to point to any contractual language supporting their claims. Indeed, they have not alleged that they would have received the commission if the shopper had not installed Honey. Accordingly, Plaintiffs have alleged nothing more than a "contingent expectancy of payment from a third party." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003).

### B.    Plaintiffs Fail To State Interference Claims (Counts III-V).

#### 1.    Plaintiffs Have Not Pleaded A Reasonable Probability Of Economic Benefit Or Disruption Of Their Relationships With Merchants.

Plaintiffs have not explained away their failures to adequately plead either a reasonable probability of economic benefit or the actual disruption of their relationships with merchants.

***Reasonable Probability of Benefit.*** Plaintiffs contend that the FAC adequately alleges a reasonable probability of economic benefit based on their allegations that they have continuing contracts with merchants and affiliate networks and have previously earned commissions under those contracts. Opp. 16. But this does not mean that it is "reasonably probable" that Plaintiffs will earn future commissions. Under Plaintiffs' allegations, at the time PayPal interacts with a

consumer, the consumer has clicked an affiliate link, is on a merchant site, but has not yet made a purchase. FAC ¶¶ 108-14. Plaintiffs' hopes for a commission are merely "speculative expectancies" that are insufficient to support intentional interference claims. *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996). The consumer may never make a purchase or may do so only after the cookie containing one of Plaintiffs' affiliate IDs expires. *See id.* ¶¶ 73-74. Alternatively, even if the consumer does make a purchase, a merchant may determine that Plaintiffs are still ineligible for a commission under the terms of their agreement. *Id.* ¶ 1. That Plaintiffs have previously received commissions does nothing to remove the "speculative" nature of their right to a commission in a future interaction in which they are competing with PayPal and numerous other affiliates. *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 518 (2017) (no reasonable probability of economic benefit where "[P]laintiffs were only one of several bidders .... and the public entities had not yet decided whether or not to award the contracts").

**Actual Disruption/Breach.** The FAC also fails to plausibly allege that PayPal disrupted or caused a breach of Plaintiffs' relationships with merchants. Mot. 17-20. First, the FAC lacks **any** details regarding the alleged contracts at issue. Plaintiffs admit that their right to payments from merchants is governed by contracts. FAC ¶ 1, 76. To determine if Plaintiffs have adequately pleaded that those relationships were disrupted or the relevant contracts breached, the Court thus needs to know the terms of the agreements. *See United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1009 (9th Cir. 2014). The FAC is entirely devoid of any such allegations.

Plaintiffs' Opposition asserts that the FAC does not need to include any contractual terms because it "walks through the relationships and obligations" in those contracts. Opp. 18 (citing FAC ¶¶ 56, 62-66). Not so. The paragraphs Plaintiffs point to describe the "affiliate marketing process" generally. *See FAC ¶¶ 56, 62-66.* Such general, undifferentiated allegations among Plaintiffs are akin to impermissible group pleading. *See In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003). Plaintiffs' allegations about their actual relationships with specific merchants are devoid of details about the contractual terms. *See id.* ¶¶ 167-349. Cases cited by Plaintiffs where courts permitted interference claims to proceed where the plaintiff described contractual rights and obligations in actual contracts cannot help Plaintiffs here. *See* Opp. 18.

PayPal explained in its Motion that specific terms are important, because Plaintiffs readily acknowledge that "[t]here are various methods for awarding credit for an online sale," aside from the "last click" method. FAC ¶¶ 66, 89. The Opposition does not dispute the existence of other attribution methods. Even if it were true that *some* affiliate marketers have contracts with *some* merchants awarding commissions only for the last "external click," the FAC says nothing about whether Plaintiffs are parties to such contracts. Plaintiffs have thus failed to state "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Second, under Plaintiffs' allegations, for a disruption or breach to occur in a particular transaction in which Plaintiffs were involved, PayPal would also need to have a relationship with the relevant merchant and then subsequently obtain a commission. *See* FAC ¶ 76 (affiliates "need to have formed a relationship with a Merchant" to be eligible for commissions). But the FAC is almost completely silent on whether ***PayPal*** has relationships with the same merchants that Plaintiffs do, or whether PayPal in fact received commissions on sales in which Plaintiffs were also involved. *See* Mot. 17. Plaintiffs point to one instance they argue establishes "actual disruption"— PayPal allegedly causing Adorama to overwrite Plaintiff Justin Tech Tips LLC's affiliate ID. Opp. 17-18. This single example is insufficient to plead "actual disruption" of merchant relationships for two dozen ***named plaintiffs*** and more putative class members. And even as to Justin Tech Tips, Plaintiffs have not pleaded more than a ***possibility*** of disruption. *See Iqbal*, 556 U.S. at 678. There are no allegations that Adorama in fact awarded PayPal, and not Justin Tech Tips, a commission.

### 2.    PayPal's Alleged Breach Of Industry Norms Does Not Constitute "Wrongful Conduct" Sufficient To State An Interference Claim.

Plaintiffs do not dispute that each of their interference claims require them to plead independently wrongful conduct. *Compare* Mot. 19 *with* Opp. 19. As a result, if their other claims are dismissed, the Court must dismiss Plaintiffs' interference claims as well. *See* Mot. 19-20. Plaintiffs, however, insist that a violation of industry norms, without a violation of law, can support their interference claims." Opp. 19-20. Plaintiffs are wrong.

The cases that Plaintiffs cite for the proposition that an industry standard alone can be "wrongful conduct" that can support an interference claim are not good law. *See id.* at 20. The

California Supreme Court has made clear that "wrongful conduct" must be "unlawful." *Korea Supply*, 29 Cal. 4th at 1159. The only circumstance where industry rules or standards can suffice is where "the rules or standards provide for, or give rise to, a sanction or means of enforcement." *Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*, 138 Cal. App. 4th 1215, 1223 (2006). Plaintiffs have identified no such enforcement mechanism for the alleged industry standards at issue. Vague allegations about industry standard, like Plaintiffs', are insufficient to plead "wrongful conduct." *See ITN Flix, LLC v. Hinojosa*, 686 F. App'x 441, 444 (9th Cir. 2017).

### 3. As Competitors, Plaintiffs And PayPal Owe No Duty To Each Other That Would Support A Negligent Interference Claim.

PayPal explained in its Motion that Plaintiffs cannot maintain a negligent interference claim because they have not pleaded, and cannot plead, that PayPal owes a duty to Plaintiffs, its direct competitors in the affiliate marketing industry. Mot. 20. Plaintiffs misrepresent both the law and the facts in their Opposition to save their negligent interference claim.

On the law, Plaintiffs assert, citing a single case, that competitors do owe each other a duty for purposes of a negligent interference claim. Opp. 20-21 (citing *Code Rebel, LLC v. Aqua Connect, Inc.*, 2013 WL 5405706, at *7 (C.D. Cal. Sept. 24, 2013)). *Code Rebel* does not help Plaintiffs because the defendant there did not challenge the "duty" element of the plaintiff's claim. *See id.* Where this issue has been raised, courts have concluded that there is no duty. *See* Mot. 20.

Regarding the facts, Plaintiffs assert the idea that "PayPal is Plaintiffs' competitor" is a "fiction … which is not found in [the FAC]." Opp. 19. That the FAC does not use the word "competitor" is irrelevant because its entire theory of harm is that Plaintiffs lost commissions that were instead awarded to PayPal. *See, e.g.*, FAC ¶ 417. And the Court does not need to take PayPal's word that PayPal and Plaintiffs compete. It can rely on the many allegations made by putative class members in complaints that Plaintiffs' counsel filed on their behalf pre-consolidation that confirm that Plaintiffs compete with PayPal. *See, e.g., Lyon Fitness, LLC, v. PayPal*, No. 5:25-cv-00501, Dkt. 1 (N.D. Cal. Jan. 14, 2025) ("Defendants' … have harmed ***influencers with whom Defendants compete*** for affiliate marketing commissions."), *Bauer v. PayPal*, No. 5:25-cv-00580, Dkt. 1 (N.D. Cal. Jan. 16, 2025) ("payment of commissions … is injurious to ***Defendant's competitors including***

1    *Plaintiff*"). Counsel in *Bauer* even appears in the signature block of Plaintiffs' Opposition. The

2    Court can take judicial notice of these allegations under Fed. R. Evid. 201(b) and treat them as

3    "judicial admissions." *See Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008).

4    **IV.    Plaintiffs Fail To Defend Their Unfair Competition Claims (Counts VII-XII).**

5              **A.      Plaintiffs are unable to identify any wrongful conduct.**

6              *No unlawful conduct.* As PayPal explained, Plaintiffs' claim under the "unlawful" prong of

7    the California UCL fails because Plaintiffs have not plausibly pled a predicate legal violation. Mot.

8    21. Plaintiffs argue they have pleaded "'unlawful' conduct under "the consumer protection laws"

9    because PayPal has allegedly "violate[d] the CFAA and the CDAFA, and cookie stuffing is the

10   basis for criminal charges." Opp. 21. But none of Plaintiffs non-California law claims are based on

11   alleged "unlawful" conduct. *See* FAC ¶¶ 454-98. Plaintiffs have also not pleaded violations of any

12   criminal "cookie stuffing" laws as a predicate for their CA UCL claim and the "complaint may not

13   be amended by briefs." *Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1015 (N.D. Cal. 2024)

14   (citation omitted). And because Plaintiffs have not plausibly alleged a violation of the CFAA or

15   CDAFA, *supra* II, those statutes cannot serve as a predicate to their UCL claim. *See* Mot. 21.

16             *No unfair conduct.* PayPal's motion explains that Plaintiffs fail to plead unfair conduct

17   because (1) Plaintiffs do not plausibly plead that Honey tortiously interfered with their prospective

18   economic advantage; (2) Plaintiffs fail to show that Honey's conduct is "immoral, unethical,

19   oppressive, and unscrupulous"; (3) alleged violations of industry norms are not unfair; and (4) the

20   UCL claim is not tied to any constitutional, statutory, or regulatory provision. Mot. 21-22 & n.2.

21             Plaintiffs' Opposition primarily argues they have plausibly shown that Honey's conduct is

22   "immoral" and otherwise unfair because Honey allegedly "diverts Plaintiffs' Affiliate

23   Commissions to itself" by engaging in "cookie-stuffing." Opp. 21-22. As discussed *supra* II.A,

24   Plaintiffs have not plausibly alleged that Honey engages in cookie-stuffing. And to the extent

25   Honey receives commissions that otherwise would have gone to Plaintiffs, that is just the nature of

26   the last-click standard to which Plaintiffs agreed. Plaintiffs' "purely subjective notions" about the

27   supposed unfairness of competing with Honey are insufficient to state a claim. *Cel-Tech Commc'ns,*

28   *Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999).

Plaintiffs also argue that a "departure from specific industry norms can be the basis of" an unfair competition claim. Opp. 22. Plaintiffs have not plausibly alleged that PayPal has departed from any industry standards, however. *See supra* I.A., IV.A. In any case, as PayPal explained (Mot. 22) and Plaintiffs ignore, merely violating a "specific" norm does not make conduct proscribed— otherwise, established competitors could squash innovation. Courts therefore deem violations of industry norms to be "unfair" only in rare circumstances, such as when the norms are "imposed by statutes, regulations, and court orders," *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 791 (Conn. 2019), or are otherwise binding, *see In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1332 (N.D. Cal. 2014). Plaintiffs, however, do not allege that any such binding industry standards.

Finally, Plaintiffs' claim under the "unfair" prong of the CA UCL must be dismissed because Plaintiffs do not identify any "constitutional, statutory, or regulatory provision" underlying that claim. Mot. 21 n.2 (quoting *Mendez v. Selene Fin. LP*, 2017 WL 1535085, at *6 (C.D. Cal. Apr. 27, 2017)). Once again, Plaintiffs ignore this shortcoming.

### B.    Plaintiffs cannot overcome their failure to plausibly allege inadequate legal remedies.

Plaintiffs' failure to plausibly allege they lack adequate legal remedies requires dismissal of their claims for equitable relief. *See* Mot. 22. Plaintiffs do not dispute that Plaintiffs must plead inadequate legal remedies for their CA UCL claim. They question, however, whether "any such requirement" exists "for the other five state statutes." Opp. 22. But no state statute can "change the nature of the federal courts' equitable powers," *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020), which is why federal courts require plaintiffs to demonstrate the absence of adequate legal remedies before granting equitable relief under other states' laws too, *see, e.g.*, *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 768-70 (C.D. Cal. 2022), *opinion clarified*, 2022 WL 19425927 (C.D. Cal. Mar. 2, 2022).

Plaintiffs get no further in arguing that their conclusory allegation that they lack an adequate legal remedy for the CA UCL claim (FAC ¶ 441) suffices. *Cap. One* found similar allegations failed to "plausibly allege[]" the absence of adequate legal remedies. 2025 WL 1570973, at *16. Plaintiffs argue that "the result is different in this district." Opp. 23. It is not. As Plaintiffs acknowledge (at

Opp. 23), the *Capital One* court based its holding on Ninth Circuit case law. That law means that plaintiffs must plausibly "show" that their legal remedies would be "'inadequate or incomplete' in making [them] whole." *Castillo v. Walmart, Inc.*, 2025 WL 1828465, at *7 (N.D. Cal. July 1, 2025). Plaintiffs plead no such facts for their CA UCL claim, and have not even asserted that they lack adequate legal remedies for their other state claims. *See* Mot. 22.

Plaintiffs cannot overcome this flaw with unpled assertions in their Opposition (Opp. 23) about the purported inadequacy of their legal remedies. *See Matthews,* 769 F. Supp. 3d at 1015. Even setting that aside, the mere risk that this Court may find "Affiliate Commissions … not available, or not fully available" (Opp. 23) does not make Plaintiffs' legal remedies inadequate. *See Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("equitable relief is unavailable" "[w]here the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law"). And Plaintiffs have not argued they are likely to suffer any imminent "future harm" (Opp. 23) that could give them standing to pursue prospective injunctive relief. *See* Opp. 4, 8.

### C.   Plaintiffs do not refute the other claim-specific reasons their claims fail.

*No out-of-state conduct (Counts VIII-XII).* Plaintiffs' non-California unfair competition claims all fail because Plaintiffs do not allege that Honey conducted any wrongful conduct in those states. Mot. 23. Plaintiffs respond that Honey operates "nationwide," Opp. 23, but they cannot dispute their allegations that Honey's alleged *wrongful* conduct occurred in California. FAC ¶¶ 42, 44, 48. Nor are "Plaintiffs' residence allegations … sufficient" to bring out-of-state claims. *Contra* Opp. 23. While any future choice-of-law analysis may well turn on where Plaintiffs were allegedly "harmed," Opp. 23-24, whether Plaintiffs can state a claim turns on the location of the alleged *wrongful conduct*. In *Precourt v. Fairbank Reconstruction Corp.*, 856 F. Supp. 2d 327 (D.N.H. 2012), for instance, the court rejected a claim under New Hampshire's unfair competition statute even though the harm (death from contaminated beef) occurred there, because the defendant's "offending conduct" (false representations about the beef's quality) did not occur in New Hampshire. *Id.* at 343; *see* Mot. 23 (collecting cases).

*No anticompetitive conduct (Counts VII, IX).* Plaintiffs' claims under California and Hawaii's consumer protection laws fail because they allege no anticompetitive conduct. Mot. 23-

24. PayPal's alleged "serial[]" disruption of alleged "economic relationship[s]" between affiliate marketers and merchants (Opp. 24) does not show anticompetitive conduct. Conduct must "negatively affect competition" to be anticompetitive, *Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 438 (2010), because "antitrust laws … were enacted for 'the protection of *competition*, not *competitors*.'" *Cel-Tech.*, 20 Cal. 4th at 186 (citation omitted). Plaintiffs have not plausibly alleged any harm to *competition*, particularly given their allegations that the "affiliate marketing industry is growing rapidly," FAC ¶ 52, and is "robust[ly]" competitive, FAC ¶ 59. And Plaintiffs' assertion (at Opp. 24) that they do not compete with Honey fails for the reasons already discussed. *Supra* III.

*No substantial consumer or public-interest harm (Counts XI, XII)*. Plaintiffs' New York and Washington claims also fail because Plaintiffs have not plausibly alleged substantial consumer or public-interest harm. Mot. 24. Plaintiffs argue that they have identified "two separate bases" of relevant harm, Opp. 25, but neither suffices. Plaintiffs nowhere allege that consumers' "goal" is to "pay[]" affiliate marketers when they click their links. *Contra* Opp. 25. Moreover, any such allegations would be insufficient since "the alleged harm to [influencers]" from lost commissions "far outweighs any incidental harm to the public at large" from frustrating this purported goal. *Cap. One*, 2025 WL 1570973, at *15. Plaintiffs fare no better with their argument that Honey "deceive[d]" consumers because some users allegedly uninstalled Honey after publication of a critical video. Opp. 25. Plaintiffs do not allege how consumers (or Plaintiffs) were harmed by any such deception, *see* Mot. 24, and in any case, the "core of the claim is merely harm to a competitor." *Cap. One*, 2025 WL 1570973, at *15. Plaintiffs claim the *Capital One* complaint "focused more on the impact to Affiliate Marketers" than their FAC, Opp. 25, but that distinction is baseless. The *Capital One* complaint also alleged that Capital One had "misle[d] consumers." 2025 WL 1570973, at *15. In any event, where, as here, the "gravamen" of a claim is harm to a competitor, these claims fail. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003); *see also Stiegler v. Saldat*, 2015 WL 13686087, at *3 (W.D. Wash. Oct. 23, 2015) (absence of alleged injury to non-class-members required dismissal), *aff'd*, 707 F. App'x 478 (9th Cir. 2017).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC with prejudice.

1

2     Dated: October 16, 2025

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By: */s/ Clement S. Roberts*
Clement S. Roberts (SBN 209203)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    (415) 773 5700
croberts@orrick.com

Richard A. Jacobsen (admitted pro hac vice)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
rjacobsen@orrick.com

Paul F. Rugani (SBN 342647)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone: (949) 567-6700
prugani@orrick.com

*Attorneys for Defendants PayPal, Inc. and
PayPal Holdings, Inc.*

DEFENDANTS' MOTION TO DISMISS
5:24-CV-09470-BLF