```
 1                 UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3      Before The Honorable Beth Labson Freeman, District Judge

 4

 5  In Re:                        )
                                  )
 6  PAYPAL HONEY BROWSER          ) No. C 24-09470-BLF
    EXTENSION LITIGATION          )
 7  _____)

 8
                                  San Jose, California
 9                                Thursday, July 10, 2025

10
    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
11              RECORDING 11:30 - 11:47 = 17 MINUTES

12  APPEARANCES:

13  For Plaintiffs:
                          Girard Sharp LLP
14                        601 California Street
                          Suite 1400
15                        San Francisco, California
                            94108
16                  BY:   DENA C. SHARP, ESQ.
                          NINA GLIOZZO, ESQ.
17
                          Lieff Cabraser Heimann &
18                          Bernstein, LLP
                          275 Battery Street
19                        Floor 29
                          San Francisco, California
20                          94111
                    BY:   ROGER N. HELLER, ESQ.
21
                          Cotchett Pitre & McCarthy LLP
22                        840 Malcolm Road
                          Suite 200
23                        Burlingame, California 94010
                    BY:   NANCI E. NISHIMURA, ESQ.
24

25          (APPEARANCES CONTINUED ON THE NEXT PAGE.)
```

2

1  For Defendant:

2                              Orrick Herrington & Sutcliffe
                                LLP
3                              51 W. 52nd Street
                               New York, New York 10019
                          BY:  RICHARD JACOBSEN, ESQ.
4
5                              Orrick Herrington & Sutcliffe
                               2050 Main Street
                               Suite 1100
6                              Irvine, California 92614
                          BY:  PAUL F. RUGANI, ESQ.
7
8  Transcribed by:             Echo Reporting, Inc.
                               Contracted Court Reporter/
9                              Transcriber
                               echoreporting@yahoo.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  Thursday, July 10, 2025                          11:30 a.m.

2                      P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4           THE CLERK:  Calling case 24-9470, In Re PayPal

5  Honey Browser Extension Litigation.

6       Counsel, please state your appearances.

7           MS. SHARP (via Zoom):  Good morning, your Honor.

8  Dena Sharp from Girard Sharp on behalf of the class

9  Plaintiffs.  And with me is my colleague Nina Gliozzo.

10          THE COURT:  Welcome.

11          MS. SHARP:  Thank you.

12          MR. HELLER (via Zoom):  Good morning, your Honor.

13  Roger Heller from Lieff Cabraser Heimann and Bernstein, also

14  for Plaintiffs.

15          THE COURT:  Good morning.

16          MR. JACOBSEN (via Zoom):  Good morning, your

17  Honor.  Richard Jacobsen, Orrick Herrington and Sutcliffe.

18  And with me to my left is my partner Paul Rugani.

19          MR. RUGANI (via Zoom):  Good morning, your Honor.

20          THE COURT:  Good morning.

21          MS. SHARP:  And, your Honor, if I may, I believe

22  that Ms. Nishimura from the Cotchett Pitre Firm was planning

23  to be on.  I'm not sure if she raised her hand, but --

24          THE CLERK:  She did now, your Honor.

25          MS. SHARP:  Thank you.

4

1          THE COURT:  Good.

2      Are we waiting for her to come on?  Is that -- yes,

3  there she is.

4      Ms. Nishimura, good morning.  And you're on mute.  You

5  can just lift that.

6          MS. NISHIMURA (via Zoom):  Good morning.

7          THE COURT:  Good morning.

8      All right.  This is our -- I guess this is our first

9  case management conference.  We spent so much time at the

10  last -- at the last hearing.  It seemed like that's what it

11  was.  Thank you for the case management statement.  It was

12  very complete.

13      Ms. Sharp, issues you would like to add or just discuss

14  before we get started on the details?

15          MS. SHARP:  Thank you for having us, your Honor.

16      As you know, at the initial conference, your Honor had

17  set an initial CMC earlier, but we had some scheduling

18  issues.  I'm pleased to report, though, that the parties

19  have made some significant progress in the meantime --

20          THE COURT:  Oh, good.

21          MS. SHARP:  -- thanks to your Honor's guidance and

22  thanks to the collaborative nature with which PayPal has

23  been working with us.  We do have initial discovery

24  underway.  As the Court is aware, we have several case

25  management orders that have been entered.  The parties are

5

1  working diligently on a source code protocol and a handful
2  of other -- what I would refer to as early discovery items.
3  We have a very small production from PayPal so far,
4  understand that they're working on giving us another one in
5  due course, we hope soon.  But with that said, there's only
6  a relatively limited scope of discovery that we've all
7  agreed to conduct prior to the Court's order on the motion
8  to dismiss.
9      So just by way of background, in case -- I know that
10  your Honor has many matters.  We did file an amended
11  complaint.
12          THE COURT:  Yes.
13          MS. SHARP:  And then in a similar matter that is
14  pending in the Eastern District of Virginia and is on the
15  rocket docket, there was, as your Honor may recall, an order
16  on a motion to dismiss.
17          THE COURT:  Yes.
18          MS. SHARP:  And in our view, we were -- we thought
19  it expeditious and hopefully that it would streamline
20  matters, both for this Court and for the parties, for us to
21  really take into account and digest what Judge Trenga did
22  there and to incorporate that into our complaint.  And we
23  were pleased that PayPal again worked with us on a briefing
24  schedule.  And so it is our hope at this time that, you
25  know, the legal issues that will be in front of the Court,

6

1  we -- PayPal will be filing its motion to dismiss in early

2  August --

3           THE COURT:  Yes.

4           MS. SHARP:  -- to see what that portends for us.

5  What we anticipate is, you know, a host of legal issues that

6  I'm sure will be very interesting for all of us.

7      The one marker that we wanted to lay down is that

8  PayPal has indicated in the CMC statement and previously

9  that they're considering filing a motion to compel

10 arbitration.

11          THE COURT:  Yes.  I saw that.

12          MS. SHARP:  And that, unlike the other legal

13 issues that we see is in play in the complaint, potentially

14 raises what we view as a case management issue in the sense

15 that, as your Honor is, I'm sure, well aware in the wake of

16 the Coinbase decision of the Supreme Court, even a non-

17 meritorious arbitration -- motion to compel arbitration can

18 have the effect of staying part or whole of the case.  And

19 that, of course, since we are the Plaintiffs, is the one

20 thing that we are trying to avoid.

21     And so we -- you know, we wanted to just lay down that

22 marker.  We're pleased to discuss with your Honor how we

23 view the -- candidly, the lack of privity in terms of the

24 arbitration issues that we see being raised here.  Mr.

25 Heller is prepared to address that if it would be helpful to

7

1  the Court.

2      But aside from that, your Honor, frankly, we're -- we

3  were pleased that the parties were able to agree on a

4  schedule.  Having heard your Honor in the conference before

5  us --

6              THE COURT:  Yes.

7              MS. SHARP:  -- we heard that you're setting trials

8  in 2027.  And so we're glad that our --

9              THE COURT:  The dates were fine.

10             MS. SHARP:  -- happened to fall in that year as

11 well.  And in the near term, what would move the case along

12 most expeditiously, from our standpoint, would be to have a

13 hearing on the motion to dismiss set in November or December

14 at the Court's convenience, so that we can all do the

15 briefing and be off to the races.

16             THE COURT:  Well, I think that sounds good.  And,

17 yes, the motion to compel arbitration, it's -- it causes

18 problems when it's filed, and it causes a lot of different

19 issues to arise if it's granted.  So I guess we'll get there

20 when we get there.

21      But is there any sense of how much of the class might

22 be affected by a potential arbitration requirement?

23      Mr. Heller, maybe you're the one to answer that.

24             MR. HELLER:  Yeah.  I mean, from our perspective,

25 nobody.  We don't think there's -- honestly.  I mean, I'm

8

1  not saying that jokingly.  I don't think there's a remotely

2  viable argument for compelling arbitration here.  I mean, I

3  think they're -- what they -- what they've suggested, I

4  think, is that some of the Plaintiffs, maybe not all, are

5  subject to arb clauses in contracts they have with PayPal as

6  consumers.  In other words, like if they signed up for a

7  PayPal payment at some point or they downloaded the Honey

8  Browser extension to their personal computer.  But, of

9  course, the claims in this case have nothing to do with any

10  of that --

11          THE COURT:  All right.

12          MR. HELLER:  -- and nothing to do with those --

13          THE COURT:  Well, it just depends.

14      So I really need to turn to Mr. Jacobsen and Mr. Rugani

15  about this.  It can get very complicated, and let -- and so,

16  in your view, is the potential of arbitration widespread

17  across the class?

18          MR. JACOBSEN:  Yes, it is, your Honor.  I'll defer

19  to Mr. Rugani on the details.  First of all, thank you very

20  much for your time this morning.

21      It would be -- it would be a substantial majority of

22  the class if -- based on the named Plaintiffs.  So putting

23  aside the merits, and I -- I heard from your prior one --

24          THE COURT:  Yeah.  Right.

25          MR. JACOBSEN:  -- this is not the time or the

9

1  place to discuss the merits.  That was very informative.  If

2  we were to prevail, it would have a major impact on the

3  case.

4          THE COURT:  Okay.  So I was -- just returning to

5  scheduling, it looks as though you've got a schedule for

6  filing a motion to dismiss, and you also -- and I think that

7  would include your motion to compel arbitration.  Is that

8  correct?

9          MR. RUGANI:  Your Honor, we have not formally

10 discussed with the Plaintiffs the schedule for the motion to

11 compel arbitration.

12         THE COURT:  That's --

13         MR. RUGANI:  As you know, our clients are still

14 considering what motions to bring.

15         THE COURT:  Okay.

16         MR. RUGANI:  We would be prepared to brief it on

17 the same schedule as the motion to dismiss if that --

18         THE COURT:  I'm not inviting that.  I just -- I'm

19 not inviting that at all.  There's no need to do that.

20 Please read my standing orders on motions to compel

21 arbitration.  You're limited to 10 pages.

22         MR. JACOBSEN:  Yes, your Honor.

23         THE COURT:  Generally not complicated.  In this

24 case -- because I'm -- first of all, I'm only looking at the

25 named Plaintiffs.  I'm not looking at the class.  It affects

10

1  class -- the class definition, and I don't know whether
2  you'll ultimately be giving me a room full of terms of
3  service that each of these named Plaintiffs may have entered
4  into.  That may be what's happening here.  And it ultimately
5  will be what's happening in the case in general is the terms
6  of service, terms of use that they have as -- in their many
7  roles in interfacing with PayPal and Honey Browser.
8       So I'm not -- I'm just not -- there's no schedule for a
9  motion to compel arbitration.  Clearly, if you wait too
10 long, that's a reason for me to deny it.  But you're on it
11 now, so I'm not concerned about that.
12      So let me return to the motion to dismiss.  Your
13 schedule looks fine.  Within 14 days of filing the motion,
14 so sometime at the end of this month, you can reserve your
15 hearing date.
16           MS. SHARP:  Right.
17           THE COURT:  And so I don't think it's going to be
18 any problem to have it heard before the end of the year, but
19 I can't give you a date now, and I'm not prepared to do
20 that.  So that -- that's going to be our first hurdle.
21           MR. RUGANI:  And, your Honor, just --
22           THE COURT:  Yes.
23           MR. RUGANI:  -- for clarification, that's within
24 14 days before or within 14 days after?
25           THE COURT:  Before.  Before.

11

1          MR. RUGANI:  Great.

2          THE COURT:  So you can -- and, obviously, the

3  sooner you can do it, the better.  And you'll pull all the

4  attorneys who need to be present, just to make sure you have

5  a date.  I do those in person, so has -- there are travel

6  days if any of you are out of town.

7      In terms of the rest of the schedule, you have -- let's

8  see, you've asked for filing of the motion for class

9  certification on September 1 of 2026.  So I think -- and I

10  think that's reasonable.  I usually set it within a year of

11  the case management conference.  I think an extra couple of

12  months here is reasonable.  And so I will approve that.

13  Again, you'll get your hearing date when you file the motion

14  with the same protocol.

15      I will only note that if you file in September and it's

16  heard either -- I can't promise it'll be heard by the end of

17  2026.  It might lap over into the beginning of '27.  Your

18  motion for summary judgment is close on its heels.  That's

19  fine for me.  But if you need -- I just want you to have it

20  in your mind, if for some reason the motion for summary

21  judgment needs to be delayed, you'll lose your trial date --

22          MS. SHARP:  Okay.

23          THE COURT:  -- okay?

24          MR. JACOBSEN:  Okay.

25          MS. SHARP:  Thank you.

12

1          THE COURT:  So all things to keep in mind.  I know

2    that you map it all out.  I'm relatively indifferent myself

3    because someone else will take your trial date.

4          I did notice in your schedule, when we get to the

5    summary judgment schedule here, that you have a date for

6    filing summary judgment and Daubert motions.  I didn't know

7    what you were referring to there.

8          MS. SHARP:  Your Honor, I can take the -- take a

9    run at that.

10         We have, in general -- well, at times, depending on how

11   the expert work at class certification comes in, at times

12   there are Daubert motions on class certification, bit of an

13   open question, as your Honor knows.

14         THE COURT:  Right.

15         MS. SHARP:  But I have no doubt that our

16   colleagues on the other side will at least consider whether

17   they would like to file Rule 702 motions as to expert work

18   that comes in on the merits.  And it has been our practice

19   recently to have the Court make determinations on both

20   summary judgment and the admissibility or the weight of the

21   expert opinions that have been offered contemporaneously,

22   mostly because those issues are often of a piece, and often

23   the summary judgment papers, you know, rely in part or in

24   whole on the expert work.

25         THE COURT:  Okay.  I thought so.  And so I just --

1  I do it a little differently.  So -- and I do it in

2  accordance with our district local rules.  So at class cert

3  and at summary judgment, if, in opposition to the motion,

4  you wish to challenge the admissibility of the expert

5  information, that is opinions that have been submitted, that

6  Daubert-style objection, like any evidentiary objection,

7  must be contained in the body of your opposition or reply

8  brief.  They are not separate motions.  So that's what I

9  wanted to clarify, Ms. Sharp --

10             MS. SHARP:  Yes.

11             THE COURT:  -- is that you get 25 pages, and you -

12  - your Dauberts are going to be contained within it.  If you

13  file standalone Daubert motions, I will rule on them in

14  advance of trial and not before, and I will not consider

15  them until -- for the summary judgment or class cert if it's

16  not contained in the body of the papers.  That's in our

17  local rules.  I didn't make that up.  I think it's a great

18  rule.  But you do have -- I want -- I don't want anyone to

19  be cut short on such an important issue.

20             MS. SHARP:  Thank you, your Honor.  We're -- we --

21  we're aware.  We're all in favor.

22             THE COURT:  Okay.

23             MS. SHARP:  And when it comes to briefing for the

24  Court, in our view, less is more.

25             THE COURT:  Good.  Okay.  And that's great.

14

1      So on summary judgment, I do actually reserve a date
2  for you, and I'm going to give you your summary judgment and
3  trial date now, and I hope they're going to hold.  So I will
4  be able to give you the summary judgment hearing date that
5  you requested, which is June 3rd of 2027.  I'm going to
6  reserve that now, so you don't need to worry about it.  But
7  you've given me a briefing schedule as well, and I
8  appreciate that.  I'm going to set your trial date on
9  October 18 of 2027.  It's close to what you asked for.  And
10 I'm going to set your final pre-trial conference on
11 September 16 of 2027, at 1:30 in the afternoon.  Please read
12 my standing orders on Daubert motions that you wish to file
13 in advance of trial.
14          MS. SHARP:  Yes.
15          THE COURT:  Again, these are just dates I want you
16 to have in mind.  If you have standalone Daubert motions, I
17 have page limits and all that you can read.  But the key
18 piece there is you must obtain a hearing date at least 60
19 days before trial.  And I don't reserve those in advance as
20 in now.  You have -- when you file that motion, you need to
21 reserve a hearing date.  If my calendar is full and you
22 can't meet the 60 days, it's just too bad.
23          MS. SHARP:  Okay.
24          THE COURT:  So I generally tell people to file
25 Dauberts about eight months before trial.  But I have a

15

1  failsafe for you on Dauberts.  I give each side five motions
2  in limine, and you're welcome to use in limine motions for
3  Daubert purposes.  You're limited to five pages.  That's
4  always plenty for an expert Daubert motion, frankly, and you
5  only get five in limine motions, but it seems to work out.
6  So then you're not filing the Daubert until two weeks before
7  the final pre-trial conference, so it gives you a lot of
8  flexibility, okay?
9          MS. SHARP:  Thank you, your Honor.
10         MR. JACOBSEN:  Thank you.
11         THE COURT:  Yeah.  So that's where -- I think that
12 covers everything.  I will refer any discovery disputes to
13 the magistrate judge assigned to the case.  I always set 60
14 days from today for amendment of the complaint under Rule
15 15.  After that, the good cause standard of Rule 16 will
16 apply.
17     So that's everything I have.  Is there anything more
18 that we can discuss this morning?
19         MS. NISHIMURA:  Your Honor, I have a housekeeping
20 question.
21         THE COURT:  Yes.
22         MS. NISHIMURA:  Our in-camera submission for fees
23 and expenses is -- are currently due on July 20th.
24         THE COURT:  Okay.
25         MS. NISHIMURA:  And maybe that's besides the

16

1 point.  We're requesting to move the due dates by two weeks

2 because the initial submission is, from inception, January

3 2024 through June.  And that's -- there are 88 months that

4 we are going through now because we are doing a preliminary

5 audit, we want to ensure that all of the Plaintiffs' lawyers

6 and law firms are on the same

7 page --

8          THE COURT:  Good.

9          MS. NISHIMURA:  -- to the extent possible.  And we

10 just need some more time just to make sure it's working well

11 and smoothly.  And our June time is not due until July 20th.

12          THE COURT:  Got it.  Okay.  So -- and when will

13 the new date be?

14          MS. NISHIMURA:  The new date is August 8th.

15          THE COURT:  All right.  No objection?

16          MR. JACOBSEN:  No, your Honor.

17          THE COURT:  I mean it's (indiscernible) --

18          MS. NISHIMURA:  Thank you.

19          THE COURT:  -- it's really about you.

20          MR. JACOBSEN:  We will not fight on this one.

21          THE COURT:  No.  No, that's good.  That's good.

22          MS. NISHIMURA:  Thank you.

23          THE COURT:  All right.  Yes.  Ms. Nishimura, thank

24 you for bringing it up.  Absolutely, I do approve that.

25          MS. NISHIMURA:  Thank you.  And we're working

17

1 diligently on that.

2        THE COURT:  Okay.  Good.  All right.  Anything

3 else?  Should we set -- I don't know if we need another case

4 management conference.  I really think the motion to dismiss

5 is what we need to focus on at this point.

6        MS. SHARP:  Very well, your Honor.

7        THE COURT:  Okay.  I don't like to set case

8 management just at arbitrary intervals.  It seems like a

9 waste of time sometimes.  But, however, if any issues arise

10 where case management can help, please send me a joint

11 statement with the issues that are in dispute and the

12 parties' positions on them.  And I'll get us together on

13 Zoom, usually within a week, and we'll try to resolve it

14 right away.

15        MR. JACOBSEN:  Thank you, your Honor.

16        MR. RUGANI:  Thank you, your Honor.

17        MS. SHARP:  Thank you, your Honor.

18        THE COURT:  All right.  Well, I may not see you

19 until the end of the year with a motion to dismiss, maybe a

20 motion to compel arbitration.  So those will be -- those are

21 two important things at this early stage.  All right.  Thank

22 you all.

23        MR. JACOBSEN:  Thank you, your Honor.

24        MR. HELLER:  Thank you, your Honor.

25        MS. SHARP:  Thank you very much, your Honor.

18

1          MR. JACOBSEN:  Take care.

2          THE COURT:  Yeah.

3          THE CLERK:  Hearing is adjourned.

4       (Proceedings adjourned at 11:47 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

19

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber
Monday, November 3, 2025