1          IN THE UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4
     IN RE PAYPAL HONEYBROWSER        )  CV-24-9470-BLF
5    EXTENSION LITIGATION             )
                                      )  SAN JOSE, CALIFORNIA
6                                     )
                                      )  NOVEMBER 6, 2025
7                                     )
                                      )  PAGES 1 - 76
8                                     )
                                      )
9                                     )
     _____ )
10
                    TRANSCRIPT OF PROCEEDINGS
11        BEFORE THE HONORABLE BETH LABSON FREEMAN
                  UNITED STATES DISTRICT JUDGE
12

13   A P P E A R A N C E S:

14   FOR THE PLAINTIFF:    LIEFF CABRASER HEIMANN BERNSTEIN LLP
                           250 HUDSON STREET, 8TH FL
15                         NEW YORK, NY 10013
                      BY:  **JASON LICHTMAN**
16                         **DANNA ELMASRY**

17   FOR THE PLAINTIFF:    GIRARD SHARP LLP
                           601 CALIFORNIA STREET, STE 1400
18                         SAN FRANCISCO, CA 94108
                      BY:  **DENA SHARP**
19                         **NINA GLIOZZO**
                           **ANTHONY ROGARI**
20

21
              APPEARANCES CONTINUED ON THE NEXT PAGE
22

23   OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                 CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER

```
1    APPEARANCES CONTINUED:

2    FOR THE PLAINTIFF:      COTCHETT PITRE & MCCARTHY LLP
                             1809 7TH AVENUE, STE 1610
3                            SEATTLE, WA 98101
                       BY:  THOMAS LOESER
4                            ANDREW FULLER

5
     FOR THE PLAINTIFF:      COTCHETT PITRE & MCCARTHY LLP
6                            840 MALCOLM ROAD, STE 200
                             BURLINGAME, CA 94010
7                      BY:   NANCI NISHIMURA

8
     FOR THE PLAINTIFF:      LIEFF CABRASER HEIMANN & BERNSTEIN LLP
9                            275 BATTERY STREET, 29TH FL
                             SAN FRANCISCO, CA 94111
10                     BY:   ROGER HELLER

11

12   FOR THE DEFENDANT:      ORRICK HERRINGTON & SUTCLIFFE LLP
                             51 W. 52ND STREET
13                           NEW YORK, NY 10019
                       BY:   RICHARD JACOBSEN
14                           SARAH UNGEHEUER

15                           ORRICK HERRINGTON & SUTCLIFFE LLP
                             355 S. GRAND AVENUE, STE 2700
16                           LOS ANGELES, CA 90071
                       BY:   GEOFFREY MOSS
17

18

19

20

21

22

23

24

25
```

```
 1            SAN JOSE, CALIFORNIA              NOVEMBER 6, 2025

 2                      P R O C E E D I N G S

 3         (COURT CONVENED AT 9:26 A.M.)

 4              THE CLERK:  CALLING CASE NUMBER 24-CV-9470.  IN RE

 5      PAYPAL HONEY BROWSER EXTENSION LITIGATION.

 6         COUNSEL PLEASE APPROACH THE LECTERN AND STATE YOUR

 7      APPEARANCES BEGINNING WITH THE PLAINTIFF.

 8              MR. LICHTMAN:  GOOD MORNING, YOUR HONOR.

 9         JASON LICHTMAN, LIEFF CABRASER, ON BEHALF OF THE

10      PLAINTIFFS.

11         WITH ME AT COUNSEL'S TABLE IS MY PARTNER, ROGER HELLER.

12      MR. ANDREW FULLER FROM COTCHETT PITRE & MCCARTHY, MS. DANNA

13      ELMASRY FROM LIEF CABRASER, AND NINA GLIOZZO FROM GIRARD SHARP.

14              THE COURT:  GOOD MORNING.

15              MS. SHARP:  AND GOOD MORNING, YOUR HONOR.

16         DENA SHARP, ALSO APPEARING FOR THE CLASS PLAINTIFFS.

17      THANK YOU FOR HAVING US.

18              THE COURT:  GOOD MORNING.

19              MS. NISHIMURA:  GOOD MORNING, YOUR HONOR.

20         NANCI NISHIMURA, COTCHETT PITRE & MCCARTHY, FOR THE

21      PLAINTIFFS.

22              MR. LOESER:  GOOD MORNING, YOUR HONOR.

23         TOM LOESER, ALSO COTCHETT PITRE & MCCARTHY, FOR

24      PLAINTIFFS.

25              MR. ROGARI:  AND GOOD MORNING, YOUR HONOR.
```

```
 1          TONY ROGARI FROM GIRARD SHARP, ALSO ON BEHALF OF THE CLASS

 2     PLAINTIFFS.

 3          THE COURT:  GOOD MORNING.

 4          MR. JACOBSEN:  MAY I APPROACH?

 5          THE COURT:  YES.

 6          MR. JACOBSEN:  GOOD MORNING, YOUR HONOR.

 7          RICHARD JACOBSEN OF ORRICK HERRINGTON ON BEHALF OF PAYPAL.

 8          WITH ME ARE MY PARTNER GEOFFREY MOSS, AND AT COUNSEL

 9     TABLE, SARAH UNGEHEUER AND SARA MULLINS BEHIND US.

10          THE COURT:  GOOD.  GOOD MORNING.

11          AND JUST SO THAT -- I THINK YOU SAW IT ON THE DOCKET, I

12     DID OPEN UP A PHONE LINE SO THAT IF OTHERS WANTED TO LISTEN

13     JUST AS A COURTESY FOR THEM, I KNOW THERE ARE MANY ATTORNEYS

14     AND MANY PARTIES IN THIS CASE AND I THOUGHT THAT WOULD PROVIDE

15     AT LEAST AN EASY OPPORTUNITY BUT I DO APPRECIATE ALL OF YOU

16     BEING HERE.

17          WE HAVE A LOT OF WORK TO DO TODAY.  LET ME MAKE A FEW

18     COMMENTS, AND THEN MR. JACOBSEN --

19          MR. JACOBSEN:  WOULD YOU LIKE ME TO GO BACK TO

20     COUNSEL TABLE?

21          THE COURT:  IT WON'T TAKE LONG SO I THINK THAT'S

22     FINE.

23          I THINK THERE ARE SOME FUNDAMENTAL PROBLEMS WITH THE

24     COMPLAINT, AND ALTHOUGH I FIND THE CAPITAL ONE ORDER INCREDIBLY

25     HELPFUL, IN FACT SOME OF THE DIFFERENCES THAT REMAIN IN THE
```

1    PLEADING IN <u>CAPITAL ONE</u> FROM WHAT I GLEAN FROM JUDGE TRENGA'S

2    ORDER AND THE PLEADING IN THIS CASE, LEADS ME TO HAVE REAL

3    CONCERNS ABOUT WHETHER THE STANDING ISSUE HAS BEEN PROPERLY

4    ALLEGED, WHETHER INJURY UNDER THE CFAA, AND HENCE THE STATE

5    COUNTERPART HAS BEEN ALLEGED.

6         I HAVE PROBLEMS WITH THE ELIGIBLE JURISDICTION OF THE

7    COURT, AND I'M JUST LOOKING AT THE PLEADING, FRANKLY IT LOOKS

8    LIKE MUCH OF THIS AT LEAST THERE COULD BE AN ATTEMPT TO CURE,

9    SO WE ARE NOT TALKING ABOUT THE GRAVEYARD FOR THIS CASE,

10   ALTHOUGH I KNOW --

11              MR. JACOBSEN:  I WAS HOPING THAT WAS THE CASE.

12              THE COURT:  I KNOW PAYPAL WOULD LIKE THAT, BUT YOU

13    KNOW, THAT NEVER HAPPENS.

14        SO THOSE ARE MY OVERALL CONCERNS.  MR. JACOBSEN, I KNOW

15   THAT LARGELY FOLLOWS WHAT YOU WERE URGING, BUT THERE ARE A

16   NUMBER OF OTHER ISSUES, AND OF COURSE ONE OF THE ISSUES THAT I

17   WILL HAVE TO DEAL WITH IS IF I FIND THAT THE PLAINTIFFS HAVEN'T

18   PLEAD STANDING, I'M ACTUALLY DONE UNTIL THEY DO THAT, HOWEVER

19   IF I GET AN AMENDED COMPLAINT, I WOULD LIKE EVERYTHING TO BE

20   FIXED SO THAT WE CAN MOVE FORWARD OR NOT THE NEXT TIME AROUND.

21        SO I WOULD HAVE ARGUMENT ON THE WHOLE BREADTH OF YOUR

22   MOTION.  WE WILL TAKE UP THE ARBITRATION ISSUE SEPARATELY SO I

23   DON'T NEED YOU TO ARGUE THAT NOW.  I WILL RESERVE -- I DON'T

24   THINK THAT NEEDS MORE THAN 15 MINUTES, IT'S PRETTY

25   STRAIGHTFORWARD, AT THE END.

1          MR. JACOBSEN:  YOUR HONOR, THANK YOU VERY MUCH, AND

2     THANK YOU VERY MUCH FOR THAT ROADMAP, I VERY MUCH APPRECIATE

3     IT.

4          AND THE GREAT TRADITION IN CALIFORNIA, WE GOT OUR

5     TENTATIVE, IT SEEMS RIGHT BEFORE THE ARGUMENT, BUT I DO WANT TO

6     WALK THROUGH EVERYTHING.  AS YOU SAID, THERE ARE A LOT OF

7     CAUSES OF ACTION.

8          THE COURT:  YES, A LOT OF ISSUES.

9          MR. JACOBSEN:  AND YOUR HONOR, THIS BEGINS WITH THE

10    FUNDAMENTAL POINT THAT THE PLAINTIFF'S ARGUMENT -- WELL FIRST

11    OF ALL, WE ARE COMPETING FOR THE SAME THING, COMMISSIONS FROM

12    ONLINE PURCHASES.

13         THE COURT:  SO LET ME STOP YOU RIGHT THERE BECAUSE

14    THE PLAINTIFFS ARGUE THAT THAT'S YOUR VIEW THAT YOU ARE A

15    COMPETITOR, THEY DIDN'T PLEAD THAT YOU WERE.  AND I HAVE TO

16    STAY WITHIN THE CONFINES OF THE FIRST AMENDED COMPLAINT.

17         MR. JACOBSEN:  YOUR HONOR, I ACTUALLY THINK IF YOU

18    LOOK AT ANY NUMBER OF PARAGRAPHS WITHIN THE COMPLAINT, WHILE

19    THEY DON'T USE THE WORD "COMPETE" OR "COMPETITION," THEY ARE

20    SAYING WE ARE FIGHTING FOR THE SAME COMMISSIONS.  THAT IS

21    COMPETITION, FIRST OF ALL.  SECOND OF ALL, A NUMBER OF THE

22    NAMED PLAINTIFFS --

23         THE COURT:  YOU ARE FIGHTING FOR THE SAME COMMISSIONS

24    UNLESS I ACCEPT THE PLAINTIFF'S VIEW THAT YOU JUST CAME IN AND

25    STOLE THEM.  SO IT REALLY JUST DEPENDS ON YOUR VIEWPOINT, AND

1    TODAY I'M LOOKING AT THE PLAINTIFF'S VIEWPOINT, TO THE EXTENT

2    IT'S REASONABLE.

3            MR. JACOBSEN:  AND YOUR HONOR, I'M ACTUALLY GOING TO

4    QUOTE THE PLAINTIFFS HERE.  IN A NUMBER OF THE COMPLAINTS

5    BEFORE THIS CASE WAS CONSOLIDATED, THEY ACTUALLY PLED THEY WERE

6    IN COMPETITION WITH HONEY, THEY COMPETE WITH HONEY.  AND AS YOU

7    KNOW I'M SURE IN THE NINTH CIRCUIT, HAKOPIAN V. MUKASEY, 551

8    F.3D, 843, YOU CAN TAKE JUDICIAL NOTICE OF WHAT THE PLAINTIFFS

9    HAVE PLED BEFORE A CONSOLIDATED ACTION, THAT'S BLACK LETTER LAW

10    IN THE NINTH CIRCUIT.

11            BUT YOUR HONOR, AT THE OUTSET, I THINK THERE ARE THREE

12    FLAWED ASSUMPTIONS THAT UNDERLIE AND UNDERMINE PLAINTIFF'S

13    ENTIRE CASE, THE FIRST WE JUST SPOKE TO.  WE ARE COMPETING WITH

14    THEM.  THEY CAN SAY THEY DON'T LIKE THE RESULT OF THE

15    COMPETITION, BUT THEY ACTUALLY PLED, BEFORE THIS CASE WAS

16    CONSOLIDATED, THAT THEY COMPETE WITH HONEY, AND I THINK THAT

17    THE COMPLAINT MAKES IT CLEAR THEY ARE COMPETING FOR THESE

18    COMMISSIONS.

19            THE SECOND ONE, YOUR HONOR, AND THIS GOES TO ANY NUMBER OF

20    THE CAUSES OF ACTION, THE PLAINTIFFS ASSUME THE AFFILIATE

21    MARKETING INDUSTRY ONLY AWARDS COMMISSIONS FOR THESE LAST

22    EXTERNAL CLICKS.

23            NOW THE PLAINTIFFS CLAIM NO COMMISSIONS ARE DUE FOR

24    SUBSEQUENT SHOPPER CLICKS THAT HAPPENED ONCE THE SHOPPER IS

25    ALREADY ON THE WEBSITE ON.  DETERMINING WHO GETS THE

1    COMMISSIONS DEPENDS ON THE TERMS OF EACH MARKET PARTICIPANT'S

2    INDIVIDUAL CONTRACTS.

3         NOTABLY HERE, YOUR HONOR, THIS IS A 94-PAGE COMPLAINT AND

4    THIS IS ONE OF THE MAJOR DISTINCTIONS BETWEEN THIS COMPLAINT

5    AND THE CAPITAL ONE COMPLAINT, WE HAVE 27 NAMED PLAINTIFFS,

6    THEY DON'T CITE A SINGLE SYLLABLE, LET ALONE PROVISION OR

7    CONTRACTURAL LANGUAGE LAYING OUT WHAT IS THEIR CONTRACTURAL

8    ENTITLEMENT TO THIS, WHERE IN THESE CONTRACTS DOES IT SAY I,

9    INFLUENCER, AFFILIATE MARKETER AM ENTITLED TO A COMMISSION

10   UNDER THESE CIRCUMSTANCES, THEY SHOULD HAVE PLED THAT.

11        THE COURT:  YEAH.  AND I DO THINK THAT IS THE BIGGEST

12   FLAW FOR THE COMPLAINT.  I AM GOING TO PRESUME IT WASN'T AN

13   OVERSIGHT, SO I WILL LOOK FORWARD TO HEARING WHAT'S GOING ON

14   THERE.

15        MR. JACOBSEN:  THANK YOU.

16        AND THIRD, YOUR HONOR, THEY ARE BASICALLY SAYING, I THINK

17   THIS GOES TO YOUR CONCERN UNDER THE CFAA AND CDAFA, THEY ARE

18   SAYING WE ARE ENGAGED IN ILLEGAL COOKIE STUFFING.  BUT THE

19   PLAINTIFFS AGAIN ADMIT IN THEIR COMPLAINT THAT USERS OF HONEY

20   GIVE HONEY EXTENSIVE PERMISSIONS TO OPERATE IN EXACTLY THE WAY

21   IT'S OPERATING.

22        AND I WILL REFER YOU TO, AND I WILL GET TO IT IN MORE

23   DETAIL IN A MOMENT, PARAGRAPHS 132 AND 133, THEY LAY IT OUT

24   CHAPTER AND VERSE THAT WE ARE ENTITLED TO DO EXACTLY WHAT THEY

25   ARE SAYING THEY TAKE ISSUE WITH.

1          SO YOUR HONOR, I WANT TO JUMP RIGHT INTO THE STANDING

2     ISSUE, IF YOU WOULDN'T MIND.  THEY DON'T HAVE STANDING FOR TWO

3     REASON.

4          FIRST, THE REMEMBER HARM ALLEGED IS NOT ACTUALLY TRACEABLE

5     TO HONEY.  AND SECOND, UNDER A PRECEDENT LIKE CLAPPER, THEIR

6     THEORY OF HARM IS ENTIRELY SPECULATIVE.

7          NOW PLAINTIFF'S ALLEGED HARM FOR LOST COMMISSIONS IS NOT

8     TRACEABLE TO HONEY, IT'S THE RESULT OF THE MERCHANT'S DECISIONS

9     TO AWARD COMMISSIONS TO HONEY PURSUANT TO LAST CLICK --

10          THE COURT:  SO YOU KNOW, THAT'S -- I'M NOT SURE IT'S

11     PLED THAT WAY THAT, THAT IT'S -- ON THE TRACEABILITY ISSUE THAT

12     THIS IS BECAUSE OF THE MERCHANT'S DECISION.  I ACTUALLY READ

13     THE COMPLAINT AS SAYING THAT -- OR SUGGESTING, AND I'M NOT SURE

14     IT'S A REASONABLE INFERENCE, THAT HONEY IS DOING SOMETHING THAT

15     THE MERCHANTS ARE NOT AWARE OF.

16          MR. JACOBSEN:  YOUR HONOR THAT'S ACTUALLY A

17     DISTINCTION AGAIN BETWEEN THIS CASE AND THE CAPITAL ONE CASE,

18     THEY DO NOT ALLEGE THAT THE MERCHANTS DO NOT KNOW WHAT'S GOING

19     ON, THEY DO NOT ALLEGE THAT THIS IS BEING DONE SURREPTITIOUSLY.

20     THAT WAS ALLEGED IN THE CAPITAL ONE CASE AND THAT WAS ONE OF

21     THE FINDINGS JUDGE TRENGA RELIED ON IN COMING OUT WHERE JUDGE

22     TRENGA CAME OUT.

23          THEY ARE NOT SAYING THAT HERE, THEY ARE NOT SAYING THE

24     MERCHANTS ARE BEING DUPED AND SOMEHOW ALL THE SUDDEN HONEY'S

25     AFFILIATE IDEAS BEING SWAPPED IN IN EXCHANGE FOR ANY NUMBER OF

1    THE PLAINTIFFS HERE, THEY KNOW EXACTLY WHAT'S GOING ON AND IT'S

2    THE MERCHANTS THAT AWARD THE COMMISSIONS, NOT HONEY.

3        NOW TO ARGUE THAT HONEY SHOULDN'T GET THESE COMMISSIONS,

4    PLAINTIFFS SAY THAT A SHOPPER'S CLICK ON HONEY SHOULDN'T COUNT

5    BECAUSE HONEY OPERATES ON THE MERCHANT'S WEBSITES; IN OTHER

6    WORDS, HONEY DOESN'T SEND THE SHOPPER TO THE MERCHANT'S SITE

7    BECAUSE THE SHOPPER IS ALREADY THERE.

8        THE PLAINTIFFS ARGUE THAT THE INDUSTRY ONLY CREDITS

9    EXTERNAL CLICKS.  AND THIS COMES BACK TO, WHERE IS THAT IN THE

10   CONTRACTS?  WHERE IS THAT IN THE INDUSTRY STANDARDS, ET CETERA.

11       I WANT TO OUTLINE FOR YOUR HONOR WHY THAT'S IMPLAUSIBLE.

12   THE PLAINTIFF'S NARROW DEFINITION OF LAST CLICK ISN'T PLAUSIBLE

13   BECAUSE FIRST, THEY DON'T CITE TO ANY CONTRACT TO WHICH THEY

14   ALLEGEDLY ARE A PARTY THAT DEFINES LAST CLICK, LET ALONE THE

15   WAY THEY SAY IT SHOULD BE DEFINED.

16       SECOND, THE INDUSTRY SOURCES THEY THEMSELVES CITE, AND I

17   WILL DIRECT YOUR HONOR TO THE AMENDED COMPLAINT AT PARAGRAPHS

18   92 AND 108 AT NOTES 12 AND 29 RESPECTIVELY, THEIR OWN COMPLAINT

19   CONTRADICTS THEIR INTERPRETATION OF LAST CLICK.  THE

20   PLAINTIFF'S OWN SOURCES SHOW THE INDUSTRY ACTUALLY GIVES CREDIT

21   TO ANY "MEANINGFUL EVENT OR TOUCH POINT IN A CONSUMER'S

22   JOURNEY."  IT'S NOT THIS EXTERNAL LAST CLICK STANDARD THEY SAY

23   PREVAILS.

24       AND YOUR HONOR, IT'S ALSO IMPLAUSIBLE FOR THIS REASON,

25   THEY PLEAD THAT THIS IS A MULTI BILLION DOLLAR INDUSTRY, THEY

1    PLEAD THAT HONEY HAS 17 MILLION USERS, AND THEY ALSO PLEAD THAT

2    HONEY PARTNERS WITH 10,000 MERCHANTS.  PLAINTIFFS ACKNOWLEDGE

3    THAT BY DEFINITION, HONEY IS A BROWSER EXTENSION THAT ENGAGES

4    AND OPERATES ONLY AFTER A USER HAS ALREADY ARRIVED AT A

5    MERCHANT'S WEBSITE, AND IT IS ON THAT OPERATING BASIS THAT

6    THESE MERCHANTS HAVE BEEN PAYING COMMISSIONS FOR YEARS.

7         AND YOUR HONOR, I WANT TO GO, JUST FOR THE RECORD TO MAKE

8    IT VERY CLEAR FURTHER ON STANDING, WHY THIS IS DIFFERENT FROM

9    CAPITAL ONE.  IN CAPITOL ONE THE PLAINTIFF'S COMPLAINT INCLUDED

10   CONTRACTURAL LANGUAGE ALLEGEDLY SHOWING THE PLAINTIFFS WERE

11   ENTITLED TO COMMISSIONS WHEN THEY WERE THE LAST EXTERNAL CLICK.

12   THAT IS COMPLETELY ABSENT IN THIS COMPLAINT.

13        FURTHER, YOUR HONOR, THE PLAINTIFFS HAVEN'T ALLEGED ANY

14   CONTRACT LANGUAGE AT ALL, THEY JUST ARGUE THAT THEIR CONTRACTS

15   INCORPORATE THE INDUSTRY'S PURPORTED LAST EXTERNAL CLICK

16   STANDARD.  BUT THE PLAINTIFFS HAVEN'T INCLUDED ANY ALLEGATIONS

17   THAT WOULD SUPPORT THIS CONCLUSION, IT'S ALL CONCLUSORY.

18        AND YOUR HONOR, IF THERE REALLY HAD BEEN THIS MANY

19   INSTANCES WHEN HONEY RECEIVED A COMMISSION THAT OTHERWISE WOULD

20   HAVE GONE TO PLAINTIFFS, IT IS THE TERMS OF THEIR CONTRACTS

21   WITH THE MERCHANTS THAT CAUSED THAT RESULT, NOT HONEY.

22        YOUR HONOR, THAT BRINGS ME TO MY SECOND POINT ON STANDING

23   WHICH IS THAT THEIR THEORY IS SPECULATIVE.  THE PLAINTIFF'S

24   THEORY OF STANDING HAS TO FAIL BECAUSE THEY DON'T IDENTIFY A

25   SINGLE COMMISSION BY PLAINTIFFS THEY WOULD HAVE RECEIVED BUT

1    FOR HONEY'S ALLEGED WRONGFUL CONDUCT.

2        AND I WANT TO GO THROUGH KIND OF THE SEVEN THINGS THEY

3    WOULD HAVE TO PLEAD IN ORDER TO SHOW THAT AND THEY REALLY DON'T

4    PLEAD MUCH, IF ANY, OF THEM.

5        FIRST, THEY HAVE TO PLEAD THAT A SHOPPER CLICKED ON ONE OF

6    THE PLAINTIFF'S AFFILIATE LINKS.  SECOND, THAT THE SHOPPER ALSO

7    HAS THE HONEY BROWSER EXTENSION.  THIRD, THAT THE SAME MERCHANT

8    ALSO PARTNERS WITH HONEY.  FOURTH, THAT THE SHOPPER ACTUALLY

9    PURCHASES THE PRODUCT.  FIFTH, THAT THE SHOPPER WOULD HAVE

10   PURCHASED THE PRODUCT WHETHER OR NOT HONEY OFFERED A COUPON OR

11   OTHER SAVINGS.  SIXTH, THAT THE SHOPPER USES HONEY AT CHECKOUT

12   RATHER THAN ANOTHER BROWSER EXTENSION; AND SEVENTH, THAT THE

13   MERCHANT AWARDS THE COMMISSION TO HONEY.

14       THE PLAINTIFFS DON'T PLEAD ANY OF THESE FACTS, YOUR HONOR.

15   THEY DON'T ALLEGE A SINGLE SHOPPER.  AND AGAIN, THIS IS ANOTHER

16   CONTRAST WITH CAPITAL ONE THAT BOTH RELIED ON THEIR AFFILIATE

17   LINK AND THEN USES THE HONEY BROWSER EXTENSION, NOR DO

18   PLAINTIFFS IDENTIFY ANY MERCHANT PARTNER WHO ALSO PARTNERS WITH

19   HONEY.

20       HONEY CAN'T TAKE A COMMISSION FROM PLAINTIFFS IF IT

21   DOESN'T ALSO HAVE A PARTNERSHIP WITH THAT SAME MERCHANT.

22       THAT'S NOWHERE IN THE COMPLAINT AND THAT'S ANOTHER

23   DISTINCTION BETWEEN THE CAPITAL ONE COMPLAINT AND THIS

24   COMPLAINT.

25       I DO WANT TO SAY FOR MY COLLEAGUES AT THE BAR REPRESENTING

1    CAPITAL ONE, I'M KNOW NOT CONCEDING THAT THE COURT GOT IT RIGHT

2    IN CAPITAL ONE, THOSE ALLEGATIONS ARE SUFFICIENT AND WE

3    CERTAINLY RESERVE OUR RIGHT TO TAKE ON ANY CONTRACTUAL LANGUAGE

4    THAT MAY EMERGE IN THIS CASE.  BUT FOR THESE PURPOSES TODAY,

5    THAT IS A MATERIAL DISTINCTION.

6         SO LET'S TALK ABOUT, IF YOU DON'T MIND, WHAT THEY TRIED TO

7    DO AND WHY I THINK IT'S INSUFFICIENT.  I THINK YOU ARE ALREADY

8    THERE, YOUR HONOR, I DON'T WANT TO PRESUME, BUT THEY USE THIS

9    ONE EXAMPLE OF JUSTIN TECH TIPS, THAT'S ONE OF THE INFLUENCERS

10   IN THE AFFILIATE MARKETERS, AND THEY RELY ON SOME STATISTICAL

11   ALLEGATIONS, AND I WILL GET TO WHY THAT'S FAULTY UNDER NELSON

12   IN A MOMENT, BUT THE PLAINTIFFS ONE REPRESENTATIVE EXAMPLE,

13   AGAIN SITTING IN STARK CONTRAST TO CAPITAL ONE WHERE THEY WENT

14   THROUGH THIS CHAPTER AND VERSE WITH A NUMBER, IF NOT ALL THE

15   PLAINTIFFS THERE, THIS COMPLAINT DOES NOT SAY WHETHER THE

16   PURCHASE WAS ACTUALLY COMPLETED.  THIS COMPLAINT DOES NOT

17   ALLEGE THAT THERE WAS A CONTRACT BETWEEN HONEY AND THE MERCHANT

18   IN THIS INSTANCE WITH JUSTIN TECH TIPS, AND EVEN ASSUMING THERE

19   WAS A CONTRACT, THE COMPLAINT SAYS NOTHING ABOUT HOW COMMISSION

20   ATTRIBUTION IS DETERMINED UNDER THAT CONTRACT.

21        FURTHER YOUR HONOR, THIS IS JUST ONE EXAMPLE, ANYTHING WE

22   LEARN FROM THIS ONE EXAMPLE CANNOT BE IMPUTED TO THE CLASS

23   BECAUSE NO OTHER PLAINTIFF IS ALLEGED TO HAVE PARTNERED WITH

24   THE MERCHANT, IN THIS THE EXAMPLE ADORAMA.

25        AND WITH RESPECT TO THE RELIANCE ON THE MONTE CARLO

 1    CALCULATION AND THE STATISTICAL ANALYSIS, THE NINTH CIRCUIT HAS

 2    INSTRUCTED THE COURTS THAT THEY CAN'T BASE STANDING SOLELY ON

 3    MERE STATISTICAL ASSERTIONS.

 4         NOW THEY ARE SAYING THAT'S NOT WHAT THEY ARE DOING, BUT

 5    AGAIN I HAVE GONE THROUGH HOW THEY DON'T ALLEGE THE CONTRACT

 6    LANGUAGE; BUT FURTHER, ANOTHER DISTINCTION WHILE IN CAPITAL ONE

 7    THEY DID RELY ON STATISTICS, THAT WAS TO BUTTRESS THE VERY

 8    ITEMIZED, PARTICULARIZED ALLEGATIONS THEY MADE WITH RESPECT TO

 9    EACH AFFILIATE MARKETER IN THEIR CONTRACTS.

10         YOUR HONOR, IF YOU HAVE NO QUESTIONS, I WOULD LIKE TO MOVE

11    ON TO CFAA.

12              THE COURT:  YES, I THINK WE CAN MOVE ON TO THAT.

13         I WILL TELL YOU THAT I THINK THE PROBLEM HERE THAT I SEE,

14    AND I DO AGREE WITH YOU THEY HAVEN'T MADE IT OUT, IS IN REGARD

15    TO THE -- WHETHER THERE'S -- THEY HAVE PLED THAT HONEY EXCEEDED

16    ITS AUTHORIZATION UNDER VAN BUREN AND NOSAL.

17         I DO THINK THEY HAVE ADEQUATELY PLED TECHNOLOGICAL HARM

18    THOUGH, BECAUSE I THINK THE WAY IT'S PLED, I THINK IT'S

19    REASONABLE TO INFER THAT THE HONEY BROWSER COOKIE, WHATEVER IT

20    IS, ACTUALLY INCAPACITATES THE ID, THE AFFILIATE ID, TO PREVENT

21    THAT ID FROM BEING THE ID THAT ALLOWS THE COMMISSION TO BE

22    PAID.

23         AND I THINK UNDER THE CASE LAW, THAT WOULD BE ENOUGH IN

24    THE PLEADING.  SO YOU CAN CERTAINLY ARGUE THAT I'M INCORRECT ON

25    THAT.  I DO THINK THE AUTHORIZATION IS REALLY THE PROBLEM HERE,

1    BECAUSE MISUSE, YOU BRIEFED THIS FOR ME, VAN BUREN IS PRETTY

2    CLEAR ON IT, MISUSE IS JUST SOMETHING ELSE, IT'S NOT CFAA.

3            MR. JACOBSEN:  AND AS YOU KNOW, THE FACT PATTERN IN

4    THE SUPREME COURT'S CASE IN VAN BUREN, A POLICE OFFICER WAS

5    ACCESSING LICENSE PLATE INFORMATION FOR THE PURPOSE OF --

6    BASICALLY ILLEGALLY, NOT UNDER CFAA, AND SELLING IT TO SOMEONE.

7    AND THE SUPREME COURT SAID NO, THIS IS A GATES UP/GATES DOWN

8    ANALYSIS, DOES THE PERSON OR THE ENTITY HAVE ACCESS OR NOT?  IF

9    THEY HAVE ACCESS, IT DOESN'T MATTER IF THEY HAVE THE MOST

10   MALICIOUS, AND I'M BEING A LITTLE HYPERBOLIC HERE, INTENT IN

11   THE WORLD, IT'S WHETHER OR NOT THEY HAVE ACCESS, AND WE THINK

12   THAT THEY HAVE PLED IN PARAGRAPHS 132 AND 133, THEY ABSOLUTELY

13   HAVE ACCESS.

14       ANOTHER DISTINCTION BETWEEN CAPITAL ONE, THEY GO THROUGH

15   IN THOSE PARAGRAPHS AND THEY DESCRIBE IT AS EXTENSIVE AND THEY

16   SAY WE HAVE THE ACCESS TO QUERY, CREATE WEB PAGES AND MODIFY

17   COOKIES, THAT IS COMPLETELY ABSENT FROM THE COMPLAINT IN

18   CAPITAL ONE.

19       I'M GOING TO -- I WANTED TO START WITH WHERE WE AGREE,

20   YOUR HONOR.  I WILL GO TO WHERE I RESPECTFULLY DISAGREE, AND

21   THAT'S WITH RESPECT TO THE TECHNOLOGICAL HARM.

22       I THINK THE ANDREWS V. SERIUS XM CASE, THE NINTH CIRCUIT

23   CASE, IS INSTRUCTIVE.  THE PIN CITE IS IN OUR BRIEF,

24   YOUR HONOR, I DON'T HAVE IT HERE BUT I DO WANT TO READ THE

25   LANGUAGE THERE.

1          THE STATUTE'S LOSS DEFINITION WITH ITS REFERENCES TO

2     DAMAGE AND ASSESSMENT, DATA RESTORATION AND INTERRUPTION OF

3     SERVICE CLEARLY LIMITS ITS FOCUS TO HARMS CAUSED BY A COMPUTER

4     INTRUSION, NOT GENERAL INJURIES UNRELATED TO THE HACKING

5     ITSELF.

6          AND IN THAT REGARD, YOUR HONOR, I WOULD SAY THAT THIS

7     ISN'T A TECHNOLOGICAL HARM.  WHAT THEY ARE SEEKING ARE LOST

8     COMMISSIONS, THEY ARE SEEKING A MONETARY BENEFIT.  THERE IS NO

9     ALLEGATION, I BELIEVE IN THE COMPLAINT, THAT THERE'S BEEN AN

10    INTERRUPTION TO SERVICE.

11          SO ON THAT REGARD, YOUR HONOR, AND I GET YOUR POINT THERE,

12    WE THINK ANDREWS V. SERIUS PRETTY WELL LAYS IT OUT.  AND I

13    THINK THAT MAY GET YOUR HONOR WHERE YOU NEED TO BE BUT I

14    APPRECIATE THAT THAT'S YOUR RESERVATION.

15          BUT AGAIN, BEGINNING -- GOING BACK TO WHERE I BEGAN AND

16    WHERE YOU STARTED, THEY HAD THE ACCESS, THEY WERE GRANTED THE

17    PERMISSIONS, THEY PLED IT BLACK AND WHITE, AND ON THAT BASIS I

18    DON'T THINK THERE'S CFAA OR CDAFA LIABILITY HERE.

19          YOUR HONOR, NOW TURNING TO THE UNJUST ENRICHMENT CLAIMS,

20    AND AGAIN --

21          THE COURT:  THIS IS WHERE IT GETS MUDDY AND DIFFICULT

22    AND, YOU KNOW, THE UNJUST ENRICHMENT TO ME, LAWYERS AND JUDGES

23    WASTE WAY TOO MUCH TIME ON IT, I KNOW I'VE SAID THIS TO

24    MS. SHARP IN THE PAST, HAVE YOU EVER WON A CASE ON UNJUST

25    ENRICHMENT?  AND THE ANSWER OF COURSE IS NO.  DID IT EVER EVEN

1    COME UP FOR LITIGATION?  NO, NOT REALLY.

2        SO I SAY ALL OF THAT, BUT IT'S PLED, YOU ARE OPPOSING IT,

3    WE HAVE TO DO THE WORK, IT'S REALLY TOO BAD THAT ALL OF THIS IS

4    GOING ON.  SO I FIND IT TO BE A CLAIM UNDER CALIFORNIA LAW,

5    THEORETICALLY.

6        MR. JACOBSEN:  I WAS GOING TO SAY, I WASN'T GOING TO

7    FENCE WITH WHETHER OR NOT IT WAS A -- FOR THESE PURPOSES, WE

8    WERE GOING TO CONCEDE THAT.

9        THE COURT:  BUT I THINK YOU RAISE MAYBE AT THE

10   ENTRANCE, THE ISSUE OF NOT PLEADING THE COURT'S EQUITABLE

11   JURISDICTION.

12       MR. JACOBSEN:  YES, YOUR HONOR, AND ACTUALLY OUR

13   PRIMARY ARGUMENT IS THAT THEY HAVE A REMEDY AT LAW HERE, AND WE

14   THINK THAT --

15       THE COURT:  AND THAT'S WHAT I MEAN BY EQUITABLE

16   JURISDICTION IS THAT THEY HAVE TO PLEAD THERE'S NO ADEQUATE

17   REMEDY AT LAW.

18       MR. JACOBSEN:  AND THERE IS, YOUR HONOR.  THE FACT OF

19   THE MATTER IS THEY ARE IN PRIVITY WITH THE MERCHANTS, THEY HAVE

20   CONTRACTS NOT WITHSTANDING THE FACT THAT THEY HAVEN'T

21   IDENTIFIED THEM AND QUOTED THEM AND BROUGHT THE COURT WHAT I

22   THINK THEY SHOULD DO.

23       AND IN PARAGRAPH 424 OF THE COMPLAINT, "DEFENDANTS'S

24   CONDUCT CAUSED MERCHANTS TO BREACH THEIR AGREEMENTS WITH

25   PLAINTIFFS AND CLASS MEMBERS BY PAYING DEFENDANTS INSTEAD OF

1     PLAINTIFFS AND CLASS MEMBERS."

2          IN THIS STATE WHEN YOU HAVE A REMEDY AT LAW, EVEN AGAINST

3     A DIFFERENT PARTY, AN UNJUST ENRICHMENT CLAIM CAN'T SURVIVE.

4          AND A COUPLE OTHER THINGS THAT I THINK DISTINGUISH THIS

5     FROM CAPITAL ONE, AGAIN, THE PLAINTIFFS IN CAPITAL ONE INCLUDED

6     ACTUAL CONTRACT PROVISIONS, AND I APOLOGIZE IF I KEEP GOING

7     BACK TO THIS YOUR HONOR BUT IT'S AN IMPORTANT POINT, THAT

8     PURPORTEDLY SHOWED THAT THEY HAD A RIGHT TO THE COMMISSIONS,

9     NOT SO HERE.

10         AND THEN SECOND, WITH RESPECT TO ANY RELIANCE THEY HAVE ON

11    CAPITAL ONE, VIRGINIA'S LAW IS VERY DIFFERENT THAN

12    CALIFORNIA'S, HAVING AN ADEQUATE REMEDY AT LAW IN VIRGINIA

13    DOESN'T PRECLUDE AN UNJUST ENRICHMENT CLAIM, IT DOES IN

14    CALIFORNIA.

15              THE COURT:  SO I THINK THAT FOR THE UNJUST ENRICHMENT

16    CLAIM THAT AN ADEQUATE REMEDY AGAINST THE MERCHANT, I DON'T

17    KNOW THAT THAT MAY BE ENOUGH, I THINK I'M PROBABLY -- I'M

18    CONCERNED ABOUT THIS.  I THINK THAT THE INTERFERENCE CLAIM

19    INFORMS THE ARGUMENT YOU JUST MADE, AND AS YOU SAID IT, THAT

20    THE HONEY CONTRACT CAUSED THE MERCHANT TO BREACH.  SO THAT'S

21    INTERFERENCE.  IF HONEY COMES IN AND INTERFERES WITH AN

22    EXISTING CONTRACT, KNOWING OF THE EXISTING CONTRACT, HAS

23    COMMITTED AN INDEPENDENT WRONG, WE WILL GET TO ALL OF THOSE

24    ELEMENTS, THEN IT MAY BE THAT THAT BREATHES LIFE BACK INTO THE

25    UNJUST ENRICHMENT CLAIM.

1          MR. JACOBSEN:  IT MAY, YOUR HONOR, BUT AS YOU NOTED

2     AT THE OUTSET, THAT'S NOT BEFORE US BECAUSE THEY HAVEN'T PLED

3     THAT.  AND WHEN WE GO TO THE TORTIOUS INTERFERENCE CLAIMS, AND

4     I'M NOT GOOD AT THE ACRONYMS, SO I WILL SAY IT ONCE WHEN WE ARE

5     TALKING ABOUT THE INTENTIONAL INTERFERENCE WITH CONTRACT CLAIM,

6     INTELLIGENCE INTERFERENCE WITH RESPECT TO THE ECONOMIC

7     ADVANTAGE CLAIM AND THE NEGLIGENT INTERFERENCE WITH RESPECT TO

8     ECONOMIC ADVANTAGE.

9          THE COURT:  IS THERE ANYTHING MORE YOU WANTED TO SAY

10    ON UNJUST ENRICHMENT CLAIM?

11         MR. JACOBSEN:  NO, YOUR HONOR, I THINK YOU'VE HONED

12    IN ON THAT.

13         THE COURT:  SO WE WILL CALL THEM THE INTERFERENCE

14    CLAIMS.

15         MR. JACOBSEN:  YES, I CALL THEM THE TORTIOUS

16    INTERFERENCE CLAIM.

17         THE COURT:  I WOULD LIKE TO SEPARATE OUT THE

18    NEGLIGENT INTERFERENCE BECAUSE I THINK THAT'S DIFFERENT.

19         MR. JACOBSEN:  JUST TO GIVE YOU A PREVIEW OF THAT, WE

20    ARE UPON COMPETITORS, THEY HAVEN'T PLEAD THAT WE OWE ANY

21    FIDUCIARY DUTY WHATSOEVER --

22         THE COURT:  SO I DON'T THINK I NEED TO DECIDE WHETHER

23    OR NOT YOU ARE COMPETITORS, ALTHOUGH I TAKE YOUR POINT ABOUT

24    THE PRIOR ITERATIONS OF THE COMPLAINT BUT I DON'T THINK THAT I

25    HAVE PLED A DUTY -- I DON'T THINK THEY HAVE PLED A DUTY OF

1    CARE.  THEY JUST SAY THERE IS A DUTY OF CARE, THEY HAVEN'T

2    ACTUALLY PLED IT.

3          MR. JACOBSEN:  I AGREE WITH YOU, YOUR HONOR.

4          THE COURT:  WE NEED A LITTLE MORE.

5          MR. JACOBSEN:  AGAIN.

6          THE COURT:  THAT CLAIM IS NOT DRIVING THE CASE, BUT

7    THE INTERFERENCE CLAIM IS IMPORTANT, I THINK, AND IN FACT IN

8    ITS OWN WAY, IT MAY ACTUALLY END UP BEING ONE OF THE MOST

9    SIGNIFICANT CLAIMS IN THE CASE.

10          MR. JACOBSEN:  YEAH.  IT GOES BACK TO THIS GATING

11    ISSUE WE HAVE HAD THROUGHOUT WHICH IS THEY HAVEN'T ALLEGED ANY

12    FACTS DEMONSTRATING AN ACTUAL DISRUPTION OF THEIR RELATIONSHIPS

13    WITH THE MERCHANTS OR A BREACH OF CONTRACT.

14          THE COURT:  RIGHT.

15          MR. JACOBSEN:  HOW CAN WE BE TALKING ABOUT

16    INTERFERENCE OR ANY OF THESE TORTIOUS INTERFERENCE CLAIMS WHEN

17    WE ACTUALLY DON'T HAVE THE FACTS AS PLED OF WHICH CONTRACTS ARE

18    ALLEGEDLY BEING INTERFERED WITH.

19          AND AGAIN, THEY START AT THE OUTSET, PARAGRAPH 1 OF THE

20    COMPLAINT THEY STATE COMMISSIONS ARE PAID OUT PURSUANT TO

21    AGREEMENTS.  THIS ALL STARTS IN CONTRACTURAL RIGHTS THEY SAY

22    ENTITLE THEM TO THESE COMMISSIONS BUT THEY PLEAD ZERO DETAILS

23    IN THEIR COMPLAINT.

24          IN THIS INSTANCE, UNITED NATIONAL MAINTENANCE V. SAN DIEGO

25    CONVENTION CENTER, THIS IS A NINTH CIRCUIT CASE, THIS IS A 2014

1    DECISION FROM THE NINTH CIRCUIT, IN UNITED MAINTENANCE --

2    UNITED NATIONAL MAINTENANCE THE NINTH CIRCUIT HELD THAT

3    DETERMINING WHETHER THIS WAS AN ACTUAL DISRUPTION FOR CLAIMS

4    GOVERNED BY A CONTRACT LIKE PLAINTIFFS "REQUIRE THE DISTRICT

5    COURT TO DETERMINE WHAT CONTRACTURAL RIGHTS PLAINTIFFS

6    POSSESS."

7          WE CAN'T DO THAT, THEY HAVEN'T DONE THAT.

8          NOW I DO WANT TO GET AHEAD OF WHAT THEY SAY THEY HAVE

9    DONE -- WELL, DO YOU HAVE ANY OTHER QUESTIONS ON THIS,

10   YOUR HONOR?

11          THE COURT:  I DO NEED FURTHER PLEADING ON THIS, BUT

12   IF IT WERE TO TURN OUT THAT THE PLAINTIFFS WERE ENTITLED TO A

13   COMMISSION BY BEING THE LAST CLICK THAT DELIVERED THE CONSUMER

14   TO THE MERCHANT SITE AND THEN -- AND THAT OCCURRED AND THEY CAN

15   SHOW ME THAT, THEY CAN GIVE ME EXAMPLES OF WHERE THEY WERE THE

16   LAST CLICK THAT DELIVERED THEM TO THE MERCHANT SITE AND THEN

17   HONEY IS ACTIVATED BY THE CONSUMER AND THE COMMISSION GOES TO

18   HONEY AS BEING THE LAST CLICK BEFORE PURCHASE, IN YOUR VIEW

19   DOES THIS BECOME A BREACH OF CONTRACT CASE WITH THE MERCHANT

20   AND NOTHING MORE?

21          MR. JACOBSEN:  I LEARNED VERY EARLY IN MY CAREER IF

22   YOU ARE ASKED A QUESTION, ANSWER IT DIRECTLY.  YOUR HONOR,

23   THERE ISSUE WOULD BE WITH THE MERCHANTS, THAT'S OUR VIEW.  THEY

24   WILL DO WHAT THEY WANT TO DO, BUT YES, THEIR CONTRACTS ARE WITH

25   THE MERCHANTS.

1          I WANT TO GO THROUGH A COUPLE OTHER DETAILS HERE THAT MAY

2     INFORM THIS AS WELL.  SO I ASSUME MY COLLEAGUES ARE GOING TO

3     GET UP AND SAY THEY PLED ALL OF THIS AND THEY ARE GOING TO SAY

4     THEY HAVE GOTTEN TO WHAT CONTRACTUAL RIGHTS WERE AT ISSUE AND

5     DON'T NEED, BUT THAT'S JUST NOT IN THEIR COMPLAINT.

6          PARAGRAPHS 56 AND 62 TO 66, THOSE JUST OUTLINE THE

7     AFFILIATE MARKETING PROCESS GENERALLY AND IN CONCLUSORY

8     FASHION.  PARAGRAPH 56, IT STATES MERCHANTS UTILIZE CERTAIN

9     ATTRIBUTION METHODS, INCLUDING PRIMARILY LAST CLICK

10    ATTRIBUTION.

11         SO THERE THEY ARE IN PARAGRAPH 56 THEMSELVES ADMITTING

12    WHILE THEY MAY ARGUE AND PLEAD LAST CLICK ATTRIBUTION IS THE

13    INDUSTRY STANDARD OR ITS PREDOMINANT, THEY ACKNOWLEDGE IN THEIR

14    OWN COMPLAINT PARAGRAPH 56 THAT THAT THERE COULD BE OTHER

15    ATTRIBUTION MODELS, THEIR WORDS, NOT MINE.  AND I THINK THIS

16    FALLS SHORT OF WHAT THEY ORDER REQUIRED TO DO.

17              THE COURT:  WELL OF COURSE FOR PLAINTIFFS THEY WALK A

18     FINE LINE OF TRYING TO PLEAD THEIR CASE AND NOT RUIN THEIR

19     CLASS CERTIFICATION.

20              MR. JACOBSEN:  I WOULD CHARITABLY SAY THAT'S THEIR

21     PROBLEM, NOT MINE.

22              THE COURT:  WELL YOU ARE DEFINITELY RIGHT ON THAT BUT

23     WHEN WE SEE THESE THINGS, THERE IS A REASON, IT'S NOT THAT THEY

24     FORGOT.

25              MR. JACOBSEN:  AND BY THE WAY, I AM NOT CASTING ANY

1        ASPERSIONS OR MAKING ANY JUDGMENT.

2            THE COURT:  I UNDERSTAND.

3            MR. JACOBSEN:  I UNDERSTAND THEY HAVE A JOB TO DO BUT

4    MY JOB IS TO POINT OUT THE DEFICIENCIES IN THEIR COMPLAINT AND

5    THAT'S ONE OF THEM.

6        YOU KNOW, AND THIS IS CRUCIAL BECAUSE GO BACK TO

7    PARAGRAPH 56, THEY ARE ACKNOWLEDGING THE POSSIBILITY THAT THERE

8    ARE OTHER ATTRIBUTION MODELS.

9        FOR EXAMPLE, THEY CLAIM LAST CLICK IS THE DOMINANT SCHEME

10    IN THE INDUSTRY, BUT THEY DESCRIBE HOW IT FUNCTIONS VERY

11    DIFFERENTLY THROUGHOUT THE COMPLAINT.

12        AGAIN AT PARAGRAPH 56 THEY DESCRIBE IT AS "THE LAST LINK

13    THAT A CONSUMER INTERACTED WITH PRIOR TO PURCHASE."

14        AT PARAGRAPH 66 THEY DESCRIBE IT AS "THE LAST AFFILIATE

15    LINK USED PRIOR TO PURCHASE."

16        AT PARAGRAPH 108, THEY DESCRIBE IT AS "THE LAST CLICK OF

17    AN AFFILIATE LINK WHICH DRIVES A CONSUMER TO THE WEB PAGE."

18        AND THEN AT PARAGRAPH 108, NOTE 29, THEY DESCRIBE IT AS

19    "THE LAST TOUCH POINT IN A SEQUENCE OF ADS PRIOR TO

20    CONVERSION."

21        YOUR HONOR, PLAINTIFF'S ARGUMENT THAT THEIR CONTRACTS ARE

22    BEING DISRUPTED BY HONEY IS BASED ON THEIR CLAIM THAT THEY ARE

23    ENTITLED TO THE COMMISSIONS AND THESE CONTRACTS WE HAVEN'T

24    SEEN, BECAUSE THEY ARE THE ONES THAT DROVE THE CONSUMER TO THE

25    WEBSITE WHERE THE PURCHASE CAN BE MADE.  BUT THIS ACCOUNTS FOR

1    ONLY ONE OF THE FOUR DIFFERENT WAYS THEY SAID LAST CLICK

2    ATTRIBUTION COULD WORK.  SO THE QUESTION IS HOW DO THEIR

3    CONTRACTS ACTUALLY WORK?  WE DON'T KNOW THAT BECAUSE THE

4    COMPLAINT IS SILENT.

5         AND AGAIN, IN PARAGRAPH 112, THEY ACKNOWLEDGE THAT OTHER

6    ATTRIBUTION METHODS EXIST.  WE DON'T KNOW WHAT THE ATTRIBUTION

7    METHODS -- IF THEY ARE ACTUALLY OUTLINED IN THESE CONTRACTS

8    ARE.

9         FOR INSTANCE PARAGRAPH 112, FOR EXAMPLE, THEY ACKNOWLEDGE

10   THE EXISTENCE OF "A MODEL THAT SPLITS AFFILIATE COMMISSIONS

11   AMONG MULTIPLE QUALIFYING AFFILIATE MARKETERS."

12        ARE THOSE PRESENT IN THESE CONTRACTS?  WE DON'T KNOW.  SO

13   WE NEED TO KNOW THAT.

14        NOW GOING TO THE NEGLIGENT MISREPRESENTATION OR NEGLIGENT

15   INTERFERENCE CLAIM.  YOU KNOW -- IF YOU HAVE ANY OTHER

16   QUESTIONS, IT BASICALLY BOILS DOWN TO THEY HAVEN'T STATED A

17   DUTY.  AND THERE'S MULTIPLE CASES, STOLZ, KETAB AND BEHR THAT

18   GO TO THAT.

19            THE COURT:  SO IF I DETERMINE THAT YOUR LABEL OF

20    "COMPETITORS" IS NOT PLED, CAN YOU STILL DEFEAT THE NEGLIGENT

21    INTERFERENCE CLAIM IF I'M NOT PREPARED TO DEEM HONEY A

22    COMPETITOR?

23        I MEAN, I DON'T KNOW WHAT THE DUTY OF CARE IS TO HONEY

24    EVEN IF YOU ARE NOT COMPETITORS.

25            MR. JACOBSEN:  LET ME THINK.

1          YOUR HONOR, I THINK IT BEGINS AND ENDS WITH WHETHER OR NOT

2     WE HAD A DUTY, AND IF WE DON'T, THAT'S IT.  BUT --

3          THE COURT:  SO THEY DEFINITELY HAVE TO PROVE A DUTY.

4     NEGLIGENT INTERFERENCE IS JUST NEGLIGENCE UNDER CALIFORNIA LAW

5     WITH AN APPENDED SPECIFICATION OF WHAT KIND OF NEGLIGENCE.

6          SO THE STANDARD, YOU HAVE TO ALLEGE A DUTY OF CARE THAT

7     WAS BREACHED, NO ONE QUESTIONS THAT.

8          SO MY QUESTION TO YOU IS IF I'M NOT PREPARED TO ACCEPT

9     YOUR LABEL THAT HONEY IS A COMPETITOR OF THE PLAINTIFFS, CAN

10    YOU STILL WIN ON YOUR NEGLIGENT INTERFERENCE MOTION?

11          MR. JACOBSEN:  I BELIEVE SO, YOUR HONOR, BECAUSE THEY

12    ARE POINTING TO WRONGFUL ACTS AND THEY HAVEN'T POINTED TO ONE.

13    THEY USE THEIR UCL CLAIMS AS A PREDICATE FOR THEIR TORTIOUS

14    INTERFERENCE CLAIMS.

15          THE COURT:  WELL, BUT THAT GOES TO ALL THE

16    INTERFERENCE CLAIMS, THE WRONGFUL ACT, THAT IS REQUIRED FOR ALL

17    OF THEM.

18          BUT I'M ASKING YOU ON THE NEGLIGENT INTERFERENCE, WE ARE

19    FOCUSED ON THE DUTY OF CARE.  SO I MAY AGREE WITH YOU THEY

20    HAVEN'T POINTED TO A WRONGFUL ACT, AND YOU CAN -- YOU MIGHT

21    WANT TO CIRCLE BACK TO THAT.  I WANT TO FOCUS ON DUTY OF CARE

22    IF YOU ARE NOT A COMPETITOR.

23          I AGREE WITH YOU, I THINK THE LAW IS CLEAR, THERE'S NO

24    DUTY OF CARE BETWEEN COMPETITORS.

25          MR. JACOBSEN:  I THINK -- LET'S SAY HYPOTHETICALLY,

```
 1        OF COURSE, BECAUSE I DO THINK WE ARE COMPETITORS AND THEY HAVE

 2        PLED, AS I POINTED OUT IN THEIR INDIVIDUAL COMPLAINT, THAT WE

 3        DO COMPETE AND ARE COMPETITORS WITH THEM.

 4                THE COURT:  I KNOW, LET'S GET OFF THAT.

 5                MR. JACOBSEN:  BUT I UNDERSTAND THAT.

 6        I STILL THINK THAT DOESN'T END THE ANALYSIS, THEY HAVE TO

 7        POINT TO SOMETHING -- I THINK WE STILL OWE A DUTY, AND JUST

 8        BECAUSE WE ARE COMPETITORS, OR YOU MAY FIND WE ARE NOT

 9        COMPETITORS --

10                THE COURT:  I'M SORRY, I JUST REALLY -- I GET YOUR

11        POINT ON COMPETITORS, I GET IT, NOW I'M MOVING YOU OFF OF THAT.

12                MR. JACOBSEN:  YES.

13                THE COURT:  IF I DISAGREE WITH YOU THAT THE COMPLAINT

14        WITH REASONABLY BE READ TO LABEL YOU A COMPETITOR, CAN YOU

15        STILL WIN ON YOUR MOTION ON NEGLIGENT INTERFERENCE ON THIS DUTY

16        OF CARE ISSUE?  I WANT TO FOCUS IT, IF YOU CAN'T WIN, THAT'S

17        FINE, JUST TELL ME AND WE WILL MOVE ON.

18                MR. JACOBSEN:  YEAH.  I HAVE TO THINK ON THAT, I'M

19        NOT PREPARED TO SAY.

20                THE COURT:  OKAY.

21        SO THE WRONGFUL ACT, LET'S CIRCLE BACK TO THAT BECAUSE I

22        DON'T THINK YOU ADDRESSED THAT.

23                MR. JACOBSEN:  YES.

24                THE COURT:  WRONGFUL ACT IS REQUIRED FOR ALL FORMS OF

25        INTERFERENCE.
```

1          MR. JACOBSEN:  RIGHT.  AND THEY DON'T DISPUTE IN

2     THEIR OPPOSITION THAT THEY NEED WRONGFUL CONDUCT, AND THEY

3     ARGUE EVEN IF THEIR INTERFERENCE CLAIMS ARE DISMISSED, A

4     VIOLATION OF INDUSTRY STANDARD COULD CONSTITUTE A WRONGFUL ACT

5     OR WRONGFUL CONDUCT.

6          AND AGAIN, I WOULD SAY THAT'S NOT THE LAW, CALIFORNIA

7     SUPREME COURT IN KOREA SUPPLY SAID WRONGFUL CONDUCT MUST BE

8     UNLAWFUL.  AND THE SUPREME COURT OF CALIFORNIA HAS CLARIFIED

9     THAT THE ONLY CIRCUMSTANCE WHERE AN INDUSTRY RULE OR STANDARD

10    COULD CONSTITUTE WRONGFUL CONDUCT IS WHERE THE RULES OR

11    STANDARDS PROVIDE FOR OR GIVE RISE TO -- I'M QUOTING DIRECTLY

12    FROM STEVENSON REAL ESTATE SERVICES, 2006 DECISION FROM THE

13    CALIFORNIA SUPREME COURT, "WHERE THE RULES OR STANDARDS PROVIDE

14    FOR OR GIVE RISE TO A SANCTION OR MEANS OF ENFORCEMENT."  THAT

15    HASN'T BEEN PLED, YOUR HONOR.

16         YOUR HONOR, I WILL WRAP UP BY QUICKLY ADDRESSING THE

17    UNFAIR COMPETITION CLAIMS.  THESE CLAIMS ARE --

18              THE COURT:  THIS IS WHERE MY HEAD SWIMS A LITTLE BIT.

19              MR. JACOBSEN:  WELL, I'VE GOT A CHART ON ALL THE

20    VARIOUS STATES, AND I WAS TRYING TO FIND A WAY, I THINK ONE OF

21    THE STANDARDS IN ONE OF THE STATES IS RASCALITY.  I HAVE NEVER

22    SEEN THAT STANDARD BEFORE, I WANTED TO FIT THAT IN SOMEHOW.

23              THE COURT:  WHAT STATE IS THAT?

24              MR. JACOBSEN:  NEW HAMPSHIRE, I HAVE BEEN DOING THIS

25    25 YEARS, IT'S THE FIRST TIME I'VE SEEN THAT.

1          THESE ARE ALL DERIVATIVE OF --

2               THE COURT:  I GUESS IF YOU LIVE IN NEW HAMPSHIRE YOU

3     KNOW WHAT THAT MEANS.

4               MR. JACOBSEN:  I GUESS.  I DON'T.  I LIVE IN NEW

5     JERSEY AND I WORK IN NEW YORK.

6          EVERY ONE OF PLAINTIFF'S CLAIMS HAVE BEEN DISMISSED

7     BECAUSE PLAINTIFFS HAVE NOT ALLEGED ANY WRONGFUL CONDUCT.  AND

8     I'M GOING TO GO THROUGH WHERE THEY ARE INSUFFICIENT.

9          FIRST, PLAINTIFF'S ARGUE THAT HONEY'S CONDUCT IS WRONGFUL

10    AND UNFAIR BECAUSE IT VIOLATES EACH STATE'S POLICIES AGAINST

11    TORTIOUS INTERFERENCE.  AND WE SUBMIT THE PLAINTIFFS HAVEN'T

12    PLAUSIBLY ALLEGED A CLAIM FOR TORTIOUS INTERFERENCE.

13              THE COURT:  SO I PRESUME THAT THIS ARGUMENT PRESUMES

14    THAT I WILL IS DISMISS THE CFAA AND CDAFA CLAIMS AND THAT I

15    WILL DISMISS THE INTERFERENCE CLAIMS.

16              MR. JACOBSEN:  IT DOES, YOUR HONOR.

17              THE COURT:  OKAY.  AND SO ALL WE ARE LEFT WITH IS THE

18    BASIS OF SOME AMORPHOUS POLICY THAT A STATE MAY OR MAY NOT

19    HAVE.

20              MR. JACOBSEN:  YEAH, RASCALITY, UNSCRUPULOUS, ALL

21    THOSE STANDARDS, AND I DON'T THINK THEY HAVE PLED THAT.

22         ALSO, YOU KNOW, GOING BACK TO THE VIOLATION OF INDUSTRY

23    NORMS, I JUST ADDRESSED THAT, THEY ARGUE THAT HONEY'S CONDUCT

24    IS UNFAIR BECAUSE IT VIOLATES THOSE STANDARDS.  BUT I JUST

25    MENTIONED WITH THE CASE I JUST CITED IN THE NINTH CIRCUIT THAT

1    PLAINTIFFS HAVEN'T PLAUSIBLY ALLEGED ANY VIOLATION OF INDUSTRY

2    NORMS BECAUSE THERE IS NO BINDING ENFORCEMENT OR REGULATORY

3    PENALTY THAT'S IMPOSED BY A VIOLATION.

4         WITH RESPECT TO UNLAWFUL CONDUCT, GOING BACK TO THE CFAA

5    AND CDAFA, I WENT THROUGH WHY THAT'S NOT A BASIS.

6         I DO WANT TO ADDRESS SOMETHING THEY TRIED TO DO IN THEIR

7    OPPOSITION, THEY ATTEMPT TO BROADEN THEIR THEORY TO INCLUDE

8    UNSPECIFIED VIOLATIONS OF CRIMINAL COOKIE STUFFING LAWS.

9         THE COURT:  WELL THAT HAS TO BE SPECIFIED, I DON'T

10   EVEN KNOW WHAT THAT MEANS.  THERE IS SOME CRIMINALITY, I THINK

11   IT SAYS, AND I'M NOT AWARE OF A CRIMINAL LAW ON THAT.

12        MR. JACOBSEN:  YOUR HONOR, PUTTING ASIDE THEY DON'T

13   ALLEGE HOW WE VIOLATED THEM, THEY DON'T EVEN CITE THE SO CALLED

14   CRIMINAL COOKIE STUFFING LAWS WE ARE REFERRING TO.

15        AND SECOND, AS YOU KNOW, THEY CAN'T AMEND THEIR PLEADING

16   BY ARGUING SOMETHING IN OPPOSITION.

17        YOUR HONOR, THAT'S MY PRESENTATION FOR NOW.  I REALLY

18   APPRECIATE YOUR GUIDANCE AND THE THINGS YOU WANT US TO HONE IN

19   ON, AND I'M HAPPY TO ADDRESS ANY QUESTIONS YOU HAVE.

20        THE COURT:  ALL RIGHT.  THANK YOU.  I WILL GIVE YOU

21   THE LAST WORD ON THIS.

22        MR. LICHTMAN, ARE YOU TAKING THE LABORING ORE HERE?

23        MR. LICHTMAN:  I AM ACTUALLY NOT, YOUR HONOR, I JUST

24   WANTED TO SAY GOOD MORNING AGAIN, I WANTED TO THANK BOTH YOU

25   AND YOUR STAFF FOR BEING HERE TODAY, WE KNOW NOT EVERYBODY IS

1    DOING THIS RIGHT NOW, BUT I ACTUALLY WANTED TO INTRODUCE MY

2    COLLEAGUES TO YOU AGAIN.

3            THE COURT:  GREAT.

4            MR. LICHTMAN:  AND SO THAT YOU ARE NOT SURPRISED,

5    MS. GLIOZZO, MR. FULLER AND MS. ELMASRY HAVE ACTUALLY SEPARATED

6    THE ARGUMENT BETWEEN THEM, THEY WILL BE ADDRESSING YOU, AND

7    THIS IS ACTUALLY MS. ELMASRY'S FIRST FEDERAL ARGUMENT.

8            THE COURT:  WELL EXCELLENT, WHAT A GREAT OPPORTUNITY

9    AND CHALLENGE.

10        SO I'VE LAID OUT SOME OF MY CONCERNS.  AND SO I UNDERSTAND

11   MR. JACOBSEN'S POSITION THAT THEY ARE NOT CONCEDING CAPITAL ONE

12   WAS CORRECT, BUT THERE ARE SOME GLARING DIFFERENCES IN WHAT WAS

13   PLED THERE COMPARED TO WHAT YOU PLED HERE.  SO ARE YOU GOING TO

14   TAKE THE STANDING ARGUMENT?

15           MS. GLIOZZO:  YES, YOUR HONOR.

16       AND AGAIN, NINA GLIOZZO.  I'M HAPPY TO ADDRESS STANDING.

17   I WANT TO START BY SAYING I APPRECIATE THE SUGGESTION THAT

18   THERE IS MAYBE SOME MASTERMIND REASON WHY WE DIDN'T QUOTE THE

19   CONTRACTS IN THE COMPLAINT, BUT THAT'S NOT THE CASE.  WE

20   JUST -- THERE WERE SO MANY PLAINTIFFS AND THEY ALL SAY

21   BASICALLY THE SAME THING.  SO WE ARE HAPPY TO ADD THAT IF

22   THAT'S SOMETHING YOUR HONOR FEELS IS REALLY VITAL TO BE

23   INCLUDED.

24           THE COURT:  I THINK IT'S ESSENTIAL TO STANDING.  AND

25   IN READING THE CASES, I DON'T THINK YOU CAN RELY ONLY ON A

```
1         STATISTICAL PROBABILITY EVEN MORE THAN 97 PERCENT.

2             SO I WAS CREDITING YOU WITH HAVING TO THREAD THE NEEDLE ON

3     A LOT OF DIFFERENT THINGS, AND IT'S -- I NEED TO KNOW WHAT THE

4     LAST CLICK LANGUAGE IS.

5             MS. GLIOZZO:  WE ARE HAPPY TO ADD IT, YOUR HONOR, BUT

6     JUST TO PREVIEW, IT'S GOING TO BE THE SAME AS IN THE CAPITAL

7     ONE CASE, IT'S GOING TO BE THE SAME AS WE DESCRIBE IT.

8             THE COURT:  THEN YOU WILL ESTABLISH STANDING AND WE

9     WILL MOVE ON.

10            MS. GLIOZZO:  I WILL SAY I DON'T THINK THAT WE ARE --

11    I WOULDN'T AGREE WITH THE CHARACTERIZATION WE ARE RESTING ONLY

12    ON STATISTICAL ANALYSIS, BUT WE SHOW SORT OF THE STEP-BY-STEP

13    PROCESS OF HOW THE COOKIE SWAP HAPPENS, AND WE PLED THAT THE

14    MERCHANT'S USE, THERE'S ONLY ONE COOKIE IN THE COOKIE JAR USING

15    LAST CLICK, AND WHAT THEY USE IS WHICHEVER COOKIE IS THERE,

16    THAT'S WHO GETS THE CREDIT.

17            I THINK THERE WAS SOME SUGGESTION THAT ONE DIFFERENCE

18    BETWEEN THIS CASE AND THE CAPITAL ONE CASE IS THAT WE DON'T

19    PLEAD THE MERCHANTS AREN'T AWARE THIS IS HAPPENING.

20            I WOULD DIRECT YOUR HONOR TO PARAGRAPH 103 IN THE

21    COMPLAINT, IT SAYS WHAT HONEY DOES NOT DISCLOSE TO CONSUMERS OR

22    MERCHANTS IS THAT IT GETS ITS COMMISSIONS BY FRAUDULENTLY

23    INTERCEPTING AND'S PLACING AFFILIATE COOKIES TO STEAL AFFILIATE

24    COMMISSIONS THAT RIGHTFULLY BELONG TO THE AFFILIATE MARKETERS.

25            I WOULD ALSO DIRECT YOUR HONOR --
```

1    THE COURT:  SO I GUESS -- YOU KNOW, IT'S GOING TO

2  MATTER TO ME WHETHER IN THE MERCHANT CONTRACTS, THE AFFILIATES

3  ARE ENTITLED TO A COMMISSION IF THEY'RE THE LAST CLICK THAT

4  DELIVERS THE CONSUMER TO THE MERCHANT WEBSITE THAT IS THEN

5  CONSUMMATED IN A SALE OR CONVERTED.

6    I MEAN, YOU DO ALLEGE THOSE ARE VARIOUS POSSIBILITIES.  IF

7  IT'S SOMETHING DIFFERENT, BEING IF IT'S -- THAT THE AFFILIATE

8  IS ENTITLED TO A COMMISSION IF IT IS THE LAST MEANINGFUL

9  ACTIVITY UNDERTAKEN BY THE CONSUMER, THAT'S GOING TO BE A LOT

10  HARDER.

11    MS. GLIOZZO:  YEAH.  AND I DISAGREE WITH THEIR

12  CHARACTERIZATION OF THE COMPLAINT ON THAT POINT.

13    SO THEY SPECIFICALLY POINTED TO PARAGRAPH 108, FOOTNOTE 29

14  WHICH CITES A PAPER THAT TALKS ABOUT LAST CLICK BEING THE LAST

15  TOUCH POINT.

16    THE COURT:  A PAPER DOESN'T HELP ME, I'M GOING TO

17  READ A CONTRACT.

18    MS. GLIOZZO:  EXACTLY.  ALL I WOULD SAY IS THE

19  COMPLAINT IS VERY CLEAR THIS IS HOW IT WORKS, THERE IS NO

20  VARIATION IN THE FUNDAMENTAL PROCESS WHICH IS THE LAST SORT OF

21  EXTERNAL CLICK IS THE WAY THAT IT'S SOMETIMES REFERRED TO.

22    THE COURT:  I JUST NEED TO SEE IT WRITTEN BECAUSE I'M

23  NOT WILLING TO TAKE -- I DON'T -- I'M NOT WILLING TO LET YOU GO

24  FORWARD ON SOME INDUSTRY STANDARD THAT YOU'VE DEFINED, I'M JUST

25  IS NOT SATISFIED WITH THAT.

```
 1              MS. GLIOZZO:  WE ARE HAPPY TO ADD IT, YOUR HONOR.

 2              THE COURT:  OKAY.

 3              MS. GLIOZZO:  I WOULD ALSO SAY TO THIS POINT ABOUT, I

 4     THINK THERE'S SOME SUGGESTION BY PAYPAL THAT MERCHANTS HAVE

 5     SOME DISCRETION AS TO WHO GETS THE AFFILIATE CREDIT, OR AS WE

 6     WERE SAYING BEFORE, THAT THEY ARE UNAWARE THAT THIS IS

 7     HAPPENING -- THEY ARE UNAWARE THAT THIS IS HAPPENING.

 8     PARAGRAPH 166 IN THE COMPLAINT DESCRIBES THAT --

 9              THE COURT:  SO YOU KNOW, I'M LOOKING AT PARAGRAPH 103

10     THAT YOU DIRECTED ME TO, AND I MEAN IT CERTAINLY MAKES SENSE

11     THAT MERCHANTS ARE UNAWARE THAT FRAUD IS GOING ON IN THEIR --

12     UNDER THEIR NOSES, BUT WE DON'T KNOW THAT IT'S -- BECAUSE I

13     DON'T KNOW -- I GUESS THAT'S LATER, HONEY WILL PUT IN ITS OWN

14     CONTRACTS, BUT YOU DON'T HAVE TO PLEAD THEIR CONTRACTS, I

15     CERTAINLY UNDERSTAND THAT.

16              MS. GLIOZZO:  RIGHT.

17              THE COURT:  I'M NOT SURE THE BASIS ON WHICH YOU CALL

18     IT FRAUDULENT INTERCEPTION.

19              MS. GLIOZZO:  SO LET ME ZOOM OUT A LITTLE BIT.

20         SO AT PARAGRAPH, I THINK IT'S 120 TO 130, WE EXPLAIN

21     GENERALLY HOW THE COOKIE PLACEMENT WORKS.  WHEN YOU CLICK THE

22     LINK THAT HAS THIS IDENTIFIER IMBEDDED IN IT, COOKIES IS THE

23     MOST COMMON WAY THAT IT MARKS WHO SENT YOU, AND THAT'S THE

24     AFFILIATE MARKETERS IN THIS CASE, AND THAT INFORMATION IS

25     STORED IN THE COOKIE JAR.
```

1      AND THE TRICK THAT WE ALLEGE THAT PAYPAL DOES IS WHEN IT

2   OPENS THE SHADOW TAP AND IT FABRICATES A LAST CLICK, IT'S

3   REPLACING THE PLAINTIFF'S COOKIES WITH HONEY'S OWN COOKIES.

4      AND THAT'S THE LANGUAGE THAT WE USE THROUGHOUT.  WE SAY IT

5   REPLACES THE COOKIES AND IT OVERWRITES THE COOKIES, THAT IT'S

6   DECEIVING, YOU KNOW, THE BROWSER INTO OVERRIDING IT.

7      AND SO WHAT IT COMES DOWN TO IS THERE'S ONE COOKIE IN THE

8   JAR, AND IT WAS THE PLAINTIFF'S COOKIE, AND THEN AFTER HONEY'S

9   ACTIONS IT'S HONEY'S COOKIE INSTEAD.  SO WHEN THE MERCHANT IS

10  LOOKING WHO SHOULD GET CREDIT FOR THIS SALE, ALL THEY SEE IS

11  HONEY'S COOKIE.

12         THE COURT:  SO CERTAINLY THE MERCHANT NEEDS TO MAKE

13   IT EASY SO WE ARE NOT CONCERNED ABOUT THAT.  SO LET ME ASK YOU

14   A DIFFERENT FACT SITUATION.

15         MS. GLIOZZO:  SURE.

16         THE COURT:  THE PLAINTIFF IS THE AFFILIATE THAT

17  PRODUCES THE LAST CLICK TO DELIVER THE CONSUMER TO THE MERCHANT

18  SITE.  AND THEN WHILE THE CONSUMER REMAINS ON THE MERCHANT

19  SITE, THEY LOOK AT A REVIEW AND CLICK ANOTHER LINK OF AN

20  AFFILIATE WHILE THE CONSUMER IS IN THE MERCHANT'S SITE.

21      YOU AGREE THAT THE SECOND AFFILIATE REPLACES THE COOKIE OF

22  THE FIRST AFFILIATE AND EARNS THE COMMISSION.

23         MS. GLIOZZO:  YES, YOUR HONOR, THAT IS A LEGITIMATE

24  EXAMPLE OF A SUBSEQUENT CLICK.

25         THE COURT:  OKAY.  I THINK YOU'VE DISCUSSED THAT.

1          AND SO IT'S NOT THAT YOU'RE CLAIMING THE RIGHT TO A

2      COMMISSION FOR BEING THE LAST CLICK THAT DELIVERS THE CUSTOMER,

3      IT'S THAT IT'S -- YOU ARE CLAIMING YOU ARE ENTITLED TO A

4      COMMISSION IF YOU ARE THE LAST AFFILIATE BEFORE CONSUMMATION OF

5      THE SALE.

6          MS. GLIOZZO:  SO I THINK IN THE EXAMPLE YOU GAVE,

7      THEY AREN'T THE LAST ONE, SO THAT'S WHAT TURNS.

8          THE COURT:  RIGHT.  BUT IN MY EXAMPLE YOUR PLAINTIFF

9      WAS THE LAST CLICK TO GET THE CONSUMER INTO THE MERCHANT SITE

10     BUT THEN ANOTHER AFFILIATE WAS THE LAST CLICK BEFORE PURCHASE,

11     AND YOU SAID YES?

12         MS. GLIOZZO:  MAYBE I MISUNDERSTOOD WHAT YOUR HONOR

13     WAS ASKING BECAUSE IF THE SECOND INTERACTION IS AN AFFILIATE

14     LINK THAT BRINGS YOU BACK TO A PAGE THAT YOU ARE ALREADY ON,

15     THAT IS A QUALIFYING LAST CLICK.

16         THE COURT:  SO IF I GO TO A REVIEW, DO I NECESSARILY

17     LEAVE THE MERCHANT SITE?

18         MS. GLIOZZO:  SO AS A TECHNICAL MATTER YOU DON'T HAVE

19     TO LEAVE THE SITE, IT'S ANY CLICK THAT BRINGS YOU TO THE

20     MERCHANT'S SITE FROM SOMEWHERE ELSE.

21         SO YOU COULD HAVE IT OPEN IN ONE TAB AND THEN GO -- FROM A

22     SEPARATE TAB, GO TO THE SAME MERCHANT'S WEBSITE FROM A SECOND

23     AFFILIATE LINK, THAT WILL REPLACE THE COOKIE AND THAT IS A

24     LEGITIMATE SUBSEQUENT LAST CLICK BECAUSE IT'S INBOUND.

25         THE COURT:  AND HOW IS THAT DIFFERENT BECAUSE IT'S

1    INBOUND, AND YOU ARE SAYING WITH HONEY THAT OCCURS ON THE

2    MERCHANT SITE.

3         MS. GLIOZZO:  SO FOR HONEY, THE ONLY INTERACTION THAT

4    HAPPENS IS AFTER THE CONSUMER HAS DECIDED TO PURCHASE THE

5    PRODUCT, PUT IT IN THEIR CART AND BEGUN THE CHECK OUT PROCESS,

6    HONEY POPS UP AND SAYS, DO YOU WANT TO LOOK FOR COUPONS?

7         AND AT LEAST BEFORE THE COMPLAINT WAS FILED, ANY

8    INTERACTION AS ALL TRIGGERS THE SHADOW TAB, EVEN IF IT'S JUST

9    CLOSING THE POP-UP.

10        SO IN REALITY, ALL YOU ARE DOING IS INTERACTING WITHIN THE

11   SORT OF CHECKOUT PAGE, BUT THE TRICK IS THAT IT OPENS THIS

12   SHADOW TAB TO MAKE THE BROWSER ON THE MERCHANT'S WEBSITE THINK

13   THAT IT HAS LEGITIMATELY DIRECTED THE CONSUMER BACK TO THE

14   MERCHANT SITE IN THE WAY THAT WOULD BE LEGITIMATE IF IT WAS AN

15   ACTUAL EXTERNAL CLICK.

16        AND I THINK THE KEY THING TO POINT OUT HERE IS WHY WOULD

17   THEY DO THAT?  LIKE, THIS WHOLE SECRET TAB PROCEDURE IS ONLY

18   NECESSARY SO THAT THEY CAN FAKE A LAST CLICK.  AND THAT'S THE

19   CORE OF THE ALLEGATIONS HERE AND THAT'S THE CORE OF WHY WE

20   THINK, YES IT'S ABSOLUTELY TRACEABLE HARM, YES IT'S ABSOLUTELY

21   CONCRETE, AND WE HAVE SHOWN THE WAY THAT IT WORKS, WE DIDN'T --

22        THE COURT:  SO IT'S NOT CONCRETE YET UNTIL YOU SHOW

23   ME THAT ONE OF THE PLAINTIFFS HAS ACTUALLY LOST A COMMISSION.

24   IT'S ONLY A POSSIBILITY.  THIS IS HOW THE SYSTEM WORKS AND YOUR

25   PLAINTIFFS HAVE SO MANY AFFILIATE ID'S DELIVERED TO THE

 1    MERCHANT SITES THAT THEY MUST HAVE BEEN DEPRIVED.

 2         MS. GLIOZZO:  THE DIFFICULTY, YOUR HONOR, IS IN THE

 3    EXAMPLE YOU GAVE BEFORE, THE FIRST AFFILIATE, SOMEONE CLICKS

 4    THEIR LINK AND LATER IN THE CONSUMER'S JOURNEY THERE IS ANOTHER

 5    LEGITIMATE LAST CLICK.  THE AFFILIATE FOR THE FIRST LINK, THEY

 6    KNOW THAT SOMEBODY CLICKED THEIR LINK BUT THEY DON'T

 7    NECESSARILY KNOW WHY THAT CLICK DIDN'T CONVERT INTO A

 8    COMMISSION, ONLY PAYPAL KNOWS WHICH OF THE AFFILIATE

 9    COMMISSIONS THAT OUR PLAINTIFFS WERE IN LINE FOR IT TOOK,

10    RIGHT.  SO WE CAN GO THROUGH THE PROCESS OF --

11         THE COURT:  I GUESS I'M STILL STUCK ON THE FACT THAT

12    EVEN AS THE AFFILIATE COMPETITION IS STILL GOING ON ONCE THE

13    CONSUMER HAS ARRIVED AT THE MERCHANT SITE AND THE COMMISSION IS

14    NOT GUARANTEED OR EARNED UNTIL THE PURCHASE OCCURS.

15         MS. GLIOZZO:  WELL THE AFFILIATE MARKETER HAS DONE

16    ALL THE WORK THEY ARE GOING TO DO TO EARN THE ENTITLEMENT.  THE

17    LAST PIECE THAT HAS TO HAPPEN IS THE PURCHASE.

18         THE COURT:  SO CONSUMERS ARE FICKLE, AND THEY WILL --

19    I WILL JUST GO WITH MY OWN EXAMPLE.  I'VE GOTTEN RIGHT OUT TO

20    THE APPROVE PURCHASE AND SAID, I'M NOT REALLY SURE.  SO THAT'S

21    THE RISK THAT YOU LEGITIMATELY TAKE ON AS AN AFFILIATE.  BUT

22    DURING THAT ENTIRE TIME THAT THE CONSUMER IS WAFFLING OVER

23    WHETHER TO MAKE THE PURCHASE, THERE ARE LEGITIMATE

24    CIRCUMSTANCES WHERE ANOTHER AFFILIATE CAN BE THE LAST CLICK.

25         MS. GLIOZZO:  THAT'S RIGHT, YOUR HONOR.  AND THOSE

1      ARE THE RULES OF THE ROAD.

2              THE COURT:  AND I'M TRYING TO DETERMINE WHY ISN'T

3      HONEY JUST LIKE THEM?

4              MS. GLIOZZO:  THE ANSWER IS, I MEAN, THINK ABOUT

5      WHERE IN THE SORT OF CONSUMER'S PURCHASING JOURNEY THESE

6      INTERACTIONS HAPPEN.  I MEAN THE PURPOSE OF AFFILIATE

7      MARKETERS, I HATE TO BE CUTE, BUT IT'S TO DO MARKETING.

8              THE COURT:  I UNDERSTAND.

9              MS. GLIOZZO:  THEY ARE DIRECTING CONSUMERS TO THE

10      MERCHANT'S WEBSITE, THEY ARE RECOMMENDING PRODUCTS, THEY BUILD

11      A RELATIONSHIP WITH THEIR AUDIENCE.  THEY ARE DOING ALL THAT

12      WORK TO GET THEM TO THE MERCHANT'S SITE.

13          THE EXAMPLE YOU GAVE, A SECOND PERSON WAS DOING SIMILAR

14      WORK TO GET THEM TO THE MERCHANT SITE.  HONEY IS A STRANGER TO

15      THIS TRANSACTION, THE ONLY TIME IT PARTICIPATES IS RIGHT BEFORE

16      YOU ARE ABOUT TO HAND OVER THE MONEY.

17              THE COURT:  I THINK IT HAS TO DO WITH WHAT THE

18      MERCHANT IS WILLING TO PAY FOR.  THIS ALL COMES FROM THE

19      MERCHANT.

20          SO YOU COULD HAVE MERCHANTS WHO SAY WE DON'T GIVE

21      COMMISSIONS TO AFFILIATE MARKETERS, GOOD FOR YOU, BUT WE DON'T

22      PAY.  SO IT'S ALL DISCRETIONARY WITH THE MERCHANTS, IT ALL

23      COMES DOWN TO THE ACTUAL CONTRACT LANGUAGE.  I NEED -- AND THIS

24      IS A VERY THEORETICAL DISCUSSION BECAUSE I NEED TO ACTUALLY SEE

25      WHAT THE AFFILIATE, YOUR PLAINTIFF, IS ENTITLED TO AND THEN TO

1      SEE WHY WHAT HONEY IS DOING CAUSES AN INTERRUPTION IN THE

2      PLAINTIFF'S RIGHT TO BENEFIT UNDER ITS CONTRACT AND WHY WHAT

3      HONEY IS DOING USURPS THAT RIGHT IN AN UNAUTHORIZED WAY THAT IS

4      HONEY'S LIABILITY AND NOT THE MERCHANT'S.

5           SO WE'VE GOT A COUPLE OF PROBLEMS HERE.  IF YOU JUST COME

6      DOWN TO THE MERCHANTS ARE TALKING OUT OF BOTH SIDES OF THEIR

7      MOUTHS AND YOUR CLIENTS ARE GETTING HARMED, THAT'S FINE, AND WE

8      HAVE A LONG WAY TO GO TO KNOW THAT, BUT IF THE MERCHANT

9      PROMISES MANY DIFFERENT COMPETING PARTIES' COMMISSIONS AND IS

10     FULLY ON BOARD WITH WHAT HONEY IS DOING, THEN HONEY HASN'T DONE

11     ANYTHING WRONG.

12          AND I'M NOT SATISFIED THAT YOU'VE PLED ENOUGH ABOUT YOUR

13     CLIENT'S CONTRACTURAL RIGHT TO A COMMISSION THAT WOULD ALLOW ME

14     TO INFER THAT WHAT HONEY IS DOING IS UNLAWFUL.

15               MS. GLIOZZO:  UNDERSTOOD, YOUR HONOR.

16               THE COURT:  AND THAT'S THE STANDING ISSUE.

17               MS. GLIOZZO:  SO I WILL PREVIEW FOR YOU THAT WHAT WE

18     WILL PUT IN IS GOING TO LOOK A LOT LIKE WHAT THEY HAD IN

19     CAPITAL ONE BECAUSE IT'S THE SAME.

20               THE COURT:  AND I DON'T KNOW WHY YOU DIDN'T DO THAT,

21     BECAUSE YOU DID AMEND FOR CAPITAL ONE ISSUES.

22               MS. GLIOZZO:  THAT'S TRUE.  WE HAVE A LOT MORE

23     PLAINTIFFS THAN THEY DID AT THAT POINT AND WE WERE SEEING THEY

24     WERE ALL THE SAME, BUT THE POINT IS WELL TAKEN.  WE ARE HAPPY

25     TO ADD IT.  AND YOU KNOW, SOME OF THESE CONTRACTS EVEN HAVE

1    EXPLICIT LANGUAGE ABOUT COOKIE STUFFING IS NOT ALLOWED AND IT'S

2    DESCRIBING THIS CONDUCT HERE.  SO OUR VIEW IS THIS IS CLEAR BUT

3    WE ARE HAPPY TO MAKE IT MORE EXPLICITLY.

4         THE COURT:  AND I UNDERSTAND THE MINUTE YOU QUOTE A

5    CONTRACT, THE ENTIRE CONTRACT IS INCORPORATED BY REFERENCE AND

6    THE DEFENDANTS ARE GOING TO BE ABLE TO PLEAD WHAT IT SAYS, AND

7    IT DOESN'T GET SIMPLER, BUT FOR STANDING PURPOSES IT PROBABLY

8    ISN'T THAT COMPLICATED.  STANDING IS NOT WHERE YOU ARE GOING TO

9    LOSE THIS CASE.  AND HOPEFULLY, YOU KNOW, IT GOES ON VERY

10   SUCCESSFULLY, BUT I JUST HAVE TO HAVE IT PLED.

11        MS. GLIOZZO:  HAPPY TO DO THAT, YOUR HONOR.

12        THE COURT:  OKAY.  THANK YOU.  OTHER ISSUES ON

13   STANDING YOU WANTED TO TOUCH ON?

14        MS. GLIOZZO:  JUST BRIEFLY, I WANT TO MAKE SURE I

15   RESPOND TO THE ARGUMENT.

16      I THINK THERE WAS A SUGGESTION THAT YOUR HONOR SHOULD FIND

17   THE ALLEGATION ABOUT HOW LAST CLICK ATTRIBUTION WORKS IS

18   IMPLAUSIBLE BECAUSE PAYPAL SORT OF DISAGREES WITH THE FRAMING.

19      I THINK YOU RIGHTLY ACKNOWLEDGED WE ARE AT THE MOTION TO

20   DISMISS, THE STANDARD MATTERS.  BUT JUST TO POINT YOUR HONOR TO

21   A FEW SPECIFIC PARTS OF THE COMPLAINT IN RESPONSE TO THAT, OF

22   COURSE THERE ARE CIRCUMSTANCES WHERE HONEY CAN FAIRLY EARN A

23   COMMISSION UNDER ITS AGREEMENTS WITH THE MERCHANTS.  THE PRIME

24   EXAMPLE IS WHERE THEY PROVIDE -- THEY ACTUALLY PROVIDE A

25   SERVICE, AND THERE'S NOT AN AFFILIATE MARKETER IN PLACE.

1    WE DON'T SAY THEY ARE NOT ENTITLED TO A COMMISSION IN THAT

2    CIRCUMSTANCE AND I IMAGINE THAT THAT'S THE MAJORITY OF WHERE

3    THEY ARE SORT OF -- THEIR SORT OF HISTORICAL COMMISSION FUND

4    HAS COME FROM.

5    SECOND, WE ALLEGE THAT HONEY DIDN'T DISCLOSE IT WAS DOING

6    THIS COOKIE STUDYING CONDUCT.  AND THERE ARE SEVERAL SORT OF

7    CONCRETE EXAMPLES IN THE COMPLAINT OF WAYS IN WHICH VARIOUS

8    PARTIES REACTED ONCE ALL THIS CONDUCT CAME TO LIGHT.

9    SO PARAGRAPH 106 IS AN EXAMPLE, GOOGLE CLARIFIED ITS

10    POLICY TO MAKE IT CLEAR THAT HONEY'S CONDUCT IS A VIOLATION

11    AFTER THIS WAS WIDELY PUBLICIZED.

12    PARAGRAPH 104, ONCE REPORTING ON HONEY'S CONDUCT WAS

13    PUBLISHED, MILLIONS OF CONSUMERS UN INSTALLED THE HONEY

14    BROWSER, EVEN HONEY CHANGED SOME PARTS OF ITS CONDUCT IN

15    RESPONSE TO THIS LAWSUIT.  AS I NOTED EARLIER, IT USED TO BE

16    THAT EVEN CLOSING THE TAB WAS ENOUGH TO TRIGGER HONEY'S CODE

17    SUCH THAT IT WOULD, WE SAY, STEAL A COMMISSION.  AS FAR AS WE

18    CAN TELL THAT'S NOT THE CASE ANYMORE, IT ALSO SORT OF CHANGED

19    SOME OF ITS OTHER BEHAVIOR.

20    SO THESE ARE JUST SOME EXAMPLES THAT SHOW JUST BECAUSE

21    HONEY RECEIVED COMMISSIONS IN THE PAST DOESN'T MAKE IT

22    PLAUSIBLE OUR ALLEGATION THAT WE ARE NOT COMPETITORS HERE.

23    THE COURT:  SO I AGREE WITH THAT.  I DON'T KNOW WHAT

24    I'M GOING TO DO ABOUT THE ISSUE OF COMPETITORS, THAT DOESN'T

25    REALLY APPLY TO THE STANDING ISSUE.  I JUST REALLY THINK THAT

1    THIS STANDING ISSUE COMES DOWN TO NEEDING -- I NEED TO KNOW

2    WHAT THE TERMS OF YOUR CONTRACTS ARE.  AND EXAMPLES ARE FINE,

3    YOU SAY THEY ARE ALL THE SAME THEN YOU CAN PLEAD THAT THIS IS

4    AN EXEMPLAR CONTRACT.  AND I NEED MORE THAN A STATISTICAL

5    PROBABILITY OF INJURY, I NEED A CONCRETE INJURY THAT CAN BE

6    REDRESSED THAT IS REASONABLY FAIRLY TRACEABLE TO HONEY'S

7    CONDUCT.

8        SO THAT'S -- IT'S JUST THE STANDARD LANGUAGE.  SO AMENDING

9    JUST TO PUT IN THE CONTRACT MAY NOT BE ENOUGH, I NEED YOU TO GO

10   THE NEXT STEP IN YOUR PLEADING AND SHOW ME THAT SOMEBODY LOST A

11   COMMISSION BECAUSE OF HONEY'S CONDUCT.

12        MS. GLIOZZO:  SO JUST TO MAKE SURE I UNDERSTAND THE

13   GUIDANCE, WHICH OF COURSE WE APPRECIATE, WE CAN DO WHAT CAPITAL

14   ONE DID WHICH IS WE BOTH SHOW SORT OF HERE'S AN EXAMPLE OF

15   THEIR COOKIE BEING IN PLACE AND ONCE YOU INTERACT WITH HONEY IT

16   REPLACES THE COOKIE WITH HONEY'S COOKIE.

17        THAT WAY WE ARE THE SAME AS CAPITAL ONE.  THEY TAKE, I

18   THINK, THE EXTRA STEP OF ACTUALLY MAKING THE PURCHASE AND

19   SHOWING THAT THE PLAINTIFFS DIDN'T RECEIVE A COMMISSION.  WE

20   CAN DO THAT.

21        THE COURT:  GREAT.

22        MS. GLIOZZO:  WHAT WE DON'T HAVE THE POWER TO DO WITH

23   THE DOCUMENTS THAT WE HAVE ACCESS TO NOW IS SAY, AND HONEY GOT

24   THE COMMISSION.  WE SAY ONE PLUS ONE EQUALS TWO, BUT I DON'T

25   HAVE THE RECEIPT OF PAYPAL GETTING THE MONEY.

```
 1              THE COURT:  AND REASONABLE INFERENCES FROM FACTS ARE

 2      FINE.

 3              MS. GLIOZZO:  OKAY.

 4              THE COURT:  YEAH.

 5              MS. GLIOZZO:  ALL RIGHT.  UNLESS THERE ARE OTHER

 6      QUESTIONS, I WILL HAND IT OVER.

 7              THE COURT:  NO.

 8          AND THE STANDING ISSUE CLEARLY IS THE GATEWAY AND THE

 9      NINTH CIRCUIT HAS BEEN PRETTY CLEAR THAT ONCE WE FIND WE DON'T

10      HAVE STANDING, WE REALLY HANG IT UP AND WE ARE DONE.

11          BUT WHAT MY INTENTION IS, BECAUSE I THINK WE HAVE A GOOD

12      UNDERSTANDING ON WHAT YOU NEED TO DO, IS TO GRANT LEAVE TO

13      AMEND ON THE STANDING AND THEN GIVE SOME GUIDANCE ON THE OTHER

14      CLAIMS, BECAUSE THE GOAL IN A SECOND ROUND IS THE CLAIM WILL BE

15      IN OR OUT AND WE ARE NOT GOING TO JUST LIVE IN PLEADING LAND

16      FOREVER HERE.

17          OKAY.  THANK YOU.  AND I HAVE TO COMMEND YOU ON KNOWING

18      YOUR PLEADINGS SO EXCELLENTLY, THAT'S VERY HELPFUL.

19              MS. GLIOZZO:  I APPRECIATE IT, YOUR HONOR.

20              THE COURT:  OKAY.

21          SO THE JUST IN TERMS OF TIMING, I WOULD LIKE TO WRAP UP

22      THIS ARGUMENT IN ABOUT 20 MINUTES, GIVE FIVE MINUTES FOR THE

23      DEFENSE TO CLOSE AND THEN MOVE TO ARBITRATION BECAUSE I HAVE AN

24      11:00 HEARING.

25              SO LET ME HEAR THE REST OF THE ARGUMENT ON THE MOTION TO
```

1    DISMISS, AND I HAVE ABOUT 20 MINUTES FOR THAT.  AND I'M GOING

2    TO JUST WATCH THE CLOCK, BUT I THINK SOME OF THESE ISSUES WE

3    CAN TOUCH ON.

4         TELL ME YOUR NAME AGAIN.

5         MR. FULLER:  GOOD MORNING, YOUR HONOR.

6         ANDREW FULLER HERE WITH COTCHETT.  I WILL BE PROVIDING

7    ORAL ARGUMENT ON THE CDAFA AS WELL AS THE CFAA CLAIMS.

8         THE COURT:  THANK YOU.

9         MR. FULLER:  SO YOUR HONOR, I WANT TO BEGIN RIGHT

10   AWAY WITH YOUR CONCERNS, AND I WANT TO NOTE RIGHT FROM THE BAT

11   THAT THE DEFENDANT, PAYPAL, RAISED ITS -- RAISED VAN BUREN CASE

12   AND ITS ARGUMENTS RELATING TO VAN BUREN FOR THE FIRST TIME IN

13   THE REPLY BRIEF.  VAN BUREN WAS BROUGHT UP IN A DIFFERENT

14   CONTEXT OF THE MOTION, SO WHAT I'M ABOUT TO SHARE WITH YOU WAS

15   NOT SOMETHING THAT WAS IN RESPONSE, AND I WANT TO BE FORTHRIGHT

16   ABOUT THAT.

17        THE COURT:  THANK YOU.  AND I DO APPRECIATE THAT OF

18   COURSE VAN BUREN IS THERE.  AND THIS IS AN ESSENTIAL ELEMENT OF

19   THE CFAA THAT IT WAS UNAUTHORIZED ACCESS OR BEYOND.

20        MR. FULLER:  YES.

21        SO YOUR HONOR, THE FIRST THING I WANT TO NOTE IS FOR THE

22   CFAA CLAIM, PLAINTIFFS ALLEGE TWO VIOLATIONS OF THAT STATUTE.

23   THAT'S 18 USC 1030(A)(4) AND 1030(A)(5)(A).  THE VAN BUREN

24   ARGUMENT ON "EXCEEDS AUTHORIZED ACCESS" HAS NOTHING TO DO WITH

25   WILL 18 USC 1030(A)(5)(A) BECAUSE THAT PROVISION OF THE STATUTE

1      TALKS ABOUT AUTHORIZED DAMAGE, NOT AUTHORIZED ACCESS.

2          THE COMPLAINT ALLEGES THAT THE DAMAGE TO THE CODE,

3      CONSUMERS NEVER EVEN KNEW ABOUT IT, LET ALONE AUTHORIZED IT.

4      DEFENDANTS, MOREOVER, RAISED NO ARGUMENT IN THEIR BRIEFING

5      ABOUT AUTHORIZATION AS TO DAMAGE.  THEY DO RAISE AN ARGUMENT

6      ABOUT WHETHER DAMAGE OCCURRED, BUT AS TO AUTHORIZATION, THAT

7      WAS NEVER RAISED.

8          AND I DO HAVE CASE LAW ON THIS, YOUR HONOR, ABOUT HOW VAN

9      BUREN AND THE "AUTHORIZE ACCESS" ISSUE DOESN'T PERTAIN TO A

10     1030 (A)(5)(A) CLAIM.  I'M HAPPY TO SHARE THAT WITH THE COURT.

11             THE COURT:  OKAY.

12             MR. FULLER:  THAT WAS BETAK, IT'S B-E-T-A-K, AND

13     WESTLAW REFERENCE NUMBER IS 2024 WL5191973.  AND THAT IS A

14     NORTHERN DISTRICT OF CALIFORNIA CASE.  IT DOES APPLY TO THE

15     1030(A)(4) CLAIM, AND I WILL GET TO THAT IN A MOMENT ABOUT HOW

16     PLAINTIFF'S COMPLAINT IS CONSISTENT WITH VAN BUREN.

17         I ALSO WANT TO NOTE, YOUR HONOR, THAT CALIFORNIA FEDERAL

18     COURTS HAVE ALSO NOTED THAT THE VAN BUREN CASE DOES NOT APPLY

19     TO A CDAFA CLAIM, AND THAT IS BECAUSE CDAFA TALKS ABOUT

20     AUTHORIZE USE, NOT AUTHORIZE ACCESS.

21             THE COURT:  FOR THE RECORD C-D-A-F-A.

22             MR. FULLER:  AND THE PERMISSION LANGUAGE IN THE CDAFA

23     HAS ALSO BEEN INTERPRETED VERY DIFFERENTLY THAN IT WAS IN VAN

24     BUREN WHICH WAS A CFAA CASE, NOT A CASE INVOLVING THE CDAFA.

25         AND ON THE CDAFA ISSUE, THAT'S VOLKSWAGON GROUP OF AMERICA

1    INC. VERSUS SMART CAR, INC.  WESTLAW 2022 WL20184651.

2        NOW I DO HAVE A HANDOUT, YOUR HONOR, WITH RESPECT TO THIS

3    ISSUE AS TO WHY THE ALLEGATIONS OF THE COMPLAINT ARE CONSISTENT

4    WITH VAN BUREN ANYWAY AND WHY THE 1030 (A)(4) CLAIM SHOULD

5    STILL SURVIVE, AND I'M HAPPY TO PROVIDE THAT IF YOU WOULD LIKE.

6        THE COURT:  SO I WAS REALLY CONCERNED THAT WHAT'S

7    MISSING IN YOUR OF CFAA CLAIM IS THAT I DON'T THINK YOU'VE PLED

8    THAT THE DEFENDANTS ACTED WITHOUT AUTHORIZATION OR EXCEEDED

9    THEIR AUTHORIZATION.

10    SO HERE YOU DO PLEAD THEY HAD AUTHORIZATION, SO WE WOULD

11    BE LOOKING AT WHETHER THEY EXCEEDED THEIR AUTHORIZATION.  AND

12    HERE THE PERMISSION GRANTED WAS BROAD BUT YOU HAVEN'T PLED THAT

13    WHAT HAPPENED HERE EXCEEDED THE AUTHORIZATION.

14        MR. FULLER:  YOUR HONOR, I DO WANT TO CLARIFY

15    SOMETHING BECAUSE I THINK THE DEFENDANTS TRY VERY HARD TO MUDDY

16    THE WATERS BETWEEN THE WORD "AUTHORIZATION" AND THE WORD

17    "PERMISSIONS."  I APPRECIATE -- WE APPRECIATE THAT IN COMMON

18    PARLANCE, THESE TWO WORDS ARE USED ALMOST INTERCHANGABLE.

19        THE COURT:  UNTIL YOU SHOW ME, AND YOU HAVEN'T, YOU

20    ARE NOT EVEN DEALING WITH YOUR OWN CLIENTS HERE, YOU ARE

21    DEALING WITH A CONSUMER'S AUTHORIZATION.

22        MR. FULLER:  WELL --

23        THE COURT:  AND YOU HAVEN'T ALLEGED THAT THE CONDUCT

24    WAS WITHOUT -- THAT IT EXCEEDED THE AUTHORIZATION GIVEN.

25        MR. FULLER:  YOUR HONOR, IN PARAGRAPHS 372, WE WROTE

1    THAT -- WE PLED THAT, AND IT'S ALSO PLED SPECIFICALLY IN

2    PARAGRAPH 375 OF THE COMPLAINT, CONSUMERS DID NOT AUTHORIZE THE

3    HONEY BROWSER EXTENSION TO OPERATE IN THIS MANNER.

4          THE COURT:  BUT THAT'S CONCLUSORY, I DON'T HAVE ANY

5    FACTS ON THAT.

6          MR. FULLER:  IT'S ALSO PLED IN 103, 107, 373, 375.

7    CONSUMERS -- YOUR HONOR, THE COMPLAINT REPEATEDLY ALLEGES THAT

8    CONSUMERS NEVER EVEN WERE AWARE, LET ALONE AUTHORIZED HONEY TO

9    MAKE TWO VERY SPECIFIC TECHNICAL CHANGES TO THE PERMISSION

10   SETTINGS ON THEIR BROWSERS.

11         THE COURT:  SO IT SEEMS TO ME THAT MANY OF YOUR OWN

12   CLIENTS ARE PAYPAL AND HONEY CONSUMERS, THAT THEY HAVE -- YOU

13   KNOW THESE TERMS AND YOU CAN PLEAD THEM.

14         MR. FULLER:  I THINK, YOUR HONOR, IF -- WE CAN

15   CERTAINLY CHANGE THE ALLEGATIONS TO CLARIFY THE FACT THAT

16   PERMISSIONS IS USED AS A TERM OF ART JUST AS THE WAY COOKIES

17   ARE.  YOU KNOW, IF YOU READ THE COMPLAINT --

18         THE COURT:  SO YOU NEED TO -- SO YOU NEED TO PLEAD

19   THAT, BECAUSE PERMISSION AND AUTHORIZATION REALLY SOUND PRETTY

20   MUCH THE SAME.

21         MR. FULLER:  OKAY.  NO, NO, UNDERSTOOD, YOUR HONOR,

22   AND I APPRECIATE THAT, AND THEY DO, THEY CERTAINLY DO.

23         THE COURT:  AND THAT'S FINE, BECAUSE THERE ARE SOME

24   AUTHORIZATIONS IN THERE.  BUT AGAIN, IN THE MOTION TO COMPEL

25   ARBITRATION, IT'S VERY CLEAR THAT YOUR OWN CLIENTS HAVE SIGNED

1       THESE AGREEMENTS, AND YOU CAN -- AND FRANKLY THEY CAN BE

2       AVAILABLE ON THE INTERNET, THEY ARE EASY TO COME BY.  SO YOU

3       NEED TO ALLEGE THE AUTHORIZATION IS ONLY THIS AND WHAT HONEY IS

4       DOING IS BEYOND THAT, AND THEN WE HAVE SOMETHING TO TALK ABOUT,

5       BUT RIGHT NOW WE DON'T.

6              MR. FULLER:  OKAY.  UNDERSTOOD.

7          WITH RESPECT TO -- I'M GOING TO MOVE AHEAD.  I WILL GET TO

8       DAMAGE AND LOSS, I WILL TAKE CARE OF THAT AT THE END.

9          WITH RESPECT TO CAPITAL ONE AT THE OWNERSHIP INTEREST, I

10      DO WANT TO NOTE THAT THE CAPITAL ONE COURT TREATED CREATION AS

11      THE LODESTAR OF WHETHER OR NOT THERE'S AN OWNERSHIP INTEREST IN

12      THE CODE HERE.

13         AND JUDGE TRENGA DID NOT SET A HIGH BAR FOR THAT, WHAT

14      JUDGE TRENGA HELD WAS THAT THE PLAINTIFFS IN THAT CASE DID NOT

15      PLAY A ROLE.  I THINK THAT'S IMPORTANT LANGUAGE.  THE COURT DID

16      NOT HOLD THAT THEY NEEDED TO PLAY THE ONLY ROLE IN THE CREATION

17      OF THE LINKS, IT DID NOT HOLD THAT THE COURT NEEDED TO PLAY THE

18      MOST IMPORTANT ROLE, IT JUST HELD THAT THEY NEEDED TO PLAY A

19      ROLE.  AND INDEED, YOUR HONOR, THE COURT HELD THAT THE

20      PLAINTIFFS IN THAT CASE DIDN'T PLEAD FACTS ABOUT HOW THEY

21      PLAYED A ROLE.

22         AND WE HAD THE BENEFIT OF THAT RULING BEFORE WE PLEADED

23      OUR COMPLAINT.  SO WE DO ADD ADDITIONAL ALLEGATIONS IN

24      PARAGRAPH 75 THROUGH 78, WE ALLEGE HOW THE TYPE OF THE LINK,

25      WHETHER IT'S A STANDARD WIDGET OR DEEP LINK IS DECIDED BY OUR

1    CLIENTS.  HOW THE LINK'S LENGTH AND WHETHER IT'S OPTIMIZED,

2    INCLUDING TOOLS LIKE BITLY AND TINY URL IS DETERMINED BY OUR

3    CLIENTS.  WHETHER IT'S TAGGED WITH ANALYTICS, WHETHER IT'S

4    TAGGED WITH PARAMETERS FOR CAMPAIGN TESTING, THAT'S DETERMINED

5    BY OUR CLIENTS.

6        THE COURT:  SO WHAT'S ARGUED IN THE REPLY IS THAT ALL

7    OF THE EFFORT THAT YOUR CLIENTS PUT IN WAS THAT BURNISHING

8    THEIR OWN AFFILIATE SITE FOR MARKETING, NOT THE ID, WHICH IS

9    WHERE WE NEED TO HAVE AN OWNERSHIP INTEREST.

10       MR. FULLER:  WELL THEY CERTAINLY DID THAT AS WELL,

11   YOUR HONOR, AND WE DID ALLEGE THAT.

12       THE FACTS I'M SPECIFICALLY TALKING ABOUT HERE ARE ABOUT

13   CUSTOMIZING AND CHANGING THE LINKS TO, WHICH IS THE MEANS BY

14   WHICH THIS CODE IS PLACED INTO THE COOKIE, IT'S PART AND PARCEL

15   OF THE SAME PRODUCT, YOUR HONOR.

16       THE COURT:  OKAY.

17       MR. FULLER:  AND THAT IS ALLEGED IN THE COMPLAINT.

18   I DO WANT TO NOTE ONE OTHER EXTREMELY IMPORTANT THING

19   ABOUT CAPITAL ONE.  I REVIEWED THE TRANSCRIPT OF THAT HEARING

20   YOUR HONOR, AND I REVIEWED THE BRIEFING, AND IT DOES NOT APPEAR

21   THAT ANY PARTY ADVISED JUDGE TRENGA THAT CALIFORNIA LAW HAS A

22   DEFINITION, A STATUTORY DEFINITION FOR OWNERSHIP.

23       AND THAT, YOUR HONOR, IS CALIFORNIA CIVIL CODE

24   SECTION 654.  AND THE DEFINITION IS AS FOLLOWS:  "THE OWNERSHIP

25   OF A THING IS THE RIGHT OF ONE OR MORE PERSONS TO POSSESS AND

1    USE IT TO THE EXCLUSION OF OTHERS."

2         NOW A FEW THINGS I THINK ARE VERY IMPORTANT ABOUT THAT

3    DEFINITION.  THE FIRST, IT IS ENTIRELY CONSISTENT WITH

4    PLAINTIFF'S ARGUMENT THAT OWNERSHIP IS NOT EXCLUSIVE.

5         PAYPAL HAS ARGUED EXTENSIVELY THAT THE MERCHANTS HAVE AN

6    OWNERSHIP INTEREST.  FOR PURPOSES OF THE COMPLAINT, WE DON'T

7    CARE, IT'S NEITHER HERE NOR THERE, OUR JOB IS TO PLEAD THAT OUR

8    CLIENTS HAVE AN OWNERSHIP REGARDLESS OF THE FACT THAT THE

9    MERCHANTS MAY OR MAY NOT, THAT'S NEITHER HERE NOR THERE FOR

10   PURPOSES OF THE COMPLAINT.

11        THE SECOND THING, AND I THINK THIS IS CRITICAL, THE

12   DEFINITION OF OWNERSHIP UNDER CALIFORNIA LAW DOESN'T EVEN

13   MENTION CREATION, IT USES THE COMMON LAW FACTORS.

14        FIRST DAY OF PROPERTY CLASS IN LAW SCHOOL, WHAT DO WE TALK

15   ABOUT?  THE BUNDLE OF RIGHTS, USE, POSSESSION, RIGHT OF

16   EXCLUSION, THAT'S PERFECTLY CONSISTENT WITH HOW THE STATE OF

17   CALIFORNIA TREATS OWNERSHIP.

18        AND INDEED, YOUR HONOR, THE PLAINTIFF'S POSITION IS THAT

19   THE COMPLAINT IS VERY CONSISTENT AND PLEADS FACTS THAT

20   ESTABLISH EACH OF THOSE RIGHTS.  THAT THEY USE THE LINKS AND

21   THE CODES, THAT OUR CLIENTS POSSESSED THEM, AND THAT THEY HAVE

22   A RIGHT OF EXCLUSION.  AND INDEED I THINK THE GIST OF THE

23   ENTIRE COMPLAINT IS OUR CLIENTS HAVE A RIGHT TO EXCLUDE PAYPAL

24   FROM EXERCISING DOMINION OVER THEIR PROPERTY, OVER THESE LINKS.

25        SO IF THE COMPLAINT IS ACCEPTED AS TRUE AND VIEWED IN THE

1    LIGHT MOST FAVORABLE, I DO THINK --

2              THE COURT:  WELL I DON'T THINK YOU ALLEGE PAYPAL IS

3    TRYING TO EXPERT DOMINION OVER YOUR LINK, THEY ARE TRYING TO

4    SCUTTLE IT OFF THE --

5              MR. FULLER:  -- INDEED.

6              THE COURT:  BUT THAT'S DIFFERENT.

7              MR. FULLER:  THE LINK IS SIMPLY A MEANS OF INSERTING

8    THE CODE.

9              THE COURT:  BECAUSE ANOTHER AFFILIATE CAN DO THAT.

10        THAT'S ONE OF THE PROBLEMS HERE IS THAT YOU ACKNOWLEDGE

11   THAT A LEGITIMATE BUMPING OF YOUR CLIENT WOULD BE A DIFFERENT

12   AFFILIATE WHO IS THE LAST LINK BEFORE THE PURCHASE, EVEN ON THE

13   MERCHANT SITE, AND THAT AFFILIATE IS NOT EXERCISING DOMINION

14   OVER YOUR CLIENT'S LINK, THEY ARE JUST LATER IN TIME.

15             MR. FULLER:  YOUR HONOR, I WOULD NOTE TWO THINGS WITH

16   RESPECT TO THAT.

17        FIRST, DEFINITION UNDER CALIFORNIA LAW FOR OWNERSHIP IS

18   VERY CONSISTENT WITH THE COMMON LAW WITH RESPECT TO EXCLUSION.

19   YOU COULD HAVE A PROPERTY INTEREST EVEN THOUGH YOU DON'T HAVE A

20   RIGHT TO EXCLUDE ALL OTHERS.

21             THE COURT:  SURE.  I DIDN'T ACTUALLY THINK THIS

22   WAS -- I THINK THIS IS SO TECHNICAL THAT I THINK YOU PROBABLY

23   PLED ENOUGH ON THIS.  I JUST THINK AT A CERTAIN POINT THE

24   PLEADING CANNOT GET INTO ALL OF THE DETAIL ON SOMETHING AS

25   COMPLEX AS THIS REQUIREMENT OF OWNERSHIP IN THE CDAFA.

```
 1            MR. FULLER:  RIGHT.

 2            THE COURT:  SO I WANT TO MOVE ON.  WE HAVE THE

 3    INTERFERENCE CLAIMS, UNJUST ENRICHMENT AND THE UNFAIR

 4    COMPETITION CLAIMS.  I HAVE ABOUT SIX MINUTES FOR YOU, MAYBE

 5    SEVEN OR EIGHT.  WERE THERE OTHER AREAS YOU WERE GOING TO

 6    ARGUE?

 7            MR. FULLER:  SIMPLY ON THE DAMAGE AND LOSS QUESTION,

 8    YOUR HONOR, WITH RESPECT TO ANDREWS, OPPOSING COUNSEL BROUGHT

 9    THAT UP IN ORAL ARGUMENT, ANDREWS MERELY HELD THAT LOSS -- TO

10    PLEAD A LOSS, YOU HAVE TO SHOW THERE WAS AN INTERRUPTION OF

11    SERVICE.

12        THE PLAINTIFFS PLAINLY DIDN'T DO SO, AND I THINK

13    YOUR HONOR'S OPENING REMARKS WERE QUITE RIGHT, THERE WAS AN

14    INTERRUPTION OF A MULTIBILLION DOLLAR SYSTEM OF DIGITAL

15    COMMERCE, THEY REMOVED AND CORRUPTED CODE THAT WAS ESSENTIAL TO

16    THAT.

17            THE COURT:  YOUR LINK WAS ESSENTIALLY INCAPACITATED.

18            MR. FULLER:  EXACTLY.

19            THE COURT:  THANK YOU.  WELL DONE, I APPRECIATE THAT.

20        OKAY.  SO THE LAST PART IS KIND OF A BIG PIECE.

21        GOOD MORNING.

22            MS. ELMASRY:  GOOD MORNING, YOUR HONOR.

23        THEY TOLD ME NOT TO TALK FAST.

24            THE COURT:  NO, NO, DON'T DO THAT.  IF YOU COULD PULL

25    THAT MICROPHONE CLOSER.
```

```
 1                  MS. ELMASRY:  HOW'S THAT?

 2                  THE COURT:  JUST SPEAK UP.  AND COULD YOU REPEAT YOUR

 3      NAME?

 4                  MS. ELMASRY:  YES, MY NAME IS DANNA ELMASRY, LIEF

 5      CABRASER.  GOOD MORNING, YOUR HONOR.

 6           I'M GOING TO TRY AND COVER A FAIR AMOUNT OF GROUND.

 7                  THE COURT:  SO MY QUESTION ON UNJUST ENRICHMENT IS AN

 8      ABSENCE OF ALLEGATION THAT YOU LACK AN ADEQUATE REMEDY AT LAW.

 9           I DON'T YOU THINK CAN GET AN INJUNCTION FOR AN UNJUST

10      ENRICHMENT CLAIM.  OFTEN INJUNCTIVE RELIEF, LIKE UNDER 17200,

11      DISTINGUISHES THE CLAIM FROM LEGAL REMEDIES BUT I DON'T SEE

12      THAT HERE, THIS IS REALLY A RESTITUTION CLAIM, AND IT SEEMS

13      LIKE -- I DON'T THINK YOU HAVE ALLEGED IT YET.

14                  MS. ELMASRY:  THANK YOU FOR YOUR CONCERNS.

15           I THINK THE BEST WAY FOR ME TO ADDRESS THIS IS TO EXPLAIN

16      WHY WE THINK OUR CASE IS DIFFERENT FROM CAPITAL ONE AND ALL OF

17      THE CASES THAT PAYPAL CITED IN ITS MOTION TO DISMISS WHERE THE

18      EQUITABLE CLAIMS DID NOT GO FORWARD AT THE PLEADING STAGE FOR

19      FAILURE TO ALLEGE AN ADEQUATE REMEDY AT LAW.

20           WE THINK THAT OUR CASE IS DIFFERENT BECAUSE OUR EQUITABLE

21      CLAIMS ARE SEEKING DISGORGEMENT OF THE PROFITS THAT HONEY MAKES

22      WHEN IT STOPS OUR PLAINTIFFS FROM EARNING AN AFFILIATE

23      COMMISSION AND --

24                  THE COURT:  BUT THAT'S AN EQUITABLE CLAIM,

25      DISGORGEMENT, AND JUST BECAUSE THE MEASURE OF DAMAGE IS
```

1    DIFFERENT, DOESN'T MAKE IT EQUITABLE OR BE THE -- TIP THE

2    SCALES THAT YOUR LEGAL REMEDY IS NOT ADEQUATE.

3              MS. ELMASRY:  SO THIS IS ONE REASON THAT WE ARE

4    SEEKING -- THIS IS ONE REASON WE THINK OUR CLAIM GOES FORWARD

5    HERE BECAUSE THERE IS THE UNJUST ENRICHMENT CLAIM AND THERE IS

6    ALSO THE UCL CLAIM.

7              THE COURT:  SO YOU WANT THE COMMISSION, YOU WANT THE

8    VALUE OF THE COMMISSION.

9              MS. ELMASRY:  WE WANT TWO THINGS.  ONE, UNDER OUR

10   LEGAL CLAIMS, YES, WE WANT THE ACTUAL DAMAGES WHICH IS THE

11   VALUE OF THE COMMISSION THAT OUR PLAINTIFFS WERE ENTITLED TO.

12             THE COURT:  SO WE ARE JUST LOOKING AT UNJUST

13   ENRICHMENT NOW, THAT'S ALL YOU COULD POSSIBLY GET UNDER UNJUST

14   ENRICHMENT.

15             MS. ELMASRY:  WE THINK THAT WE MIGHT BE ENTITLED

16   UNDER THE UNJUST ENRICHMENT AND THE UCL EQUITABLE CLAIMS.

17             THE COURT:  PUT THE UCL ASIDE, PLEASE, I THINK YOUR

18   UNJUST ENRICHMENT CLAIM IS FAILING.

19             AND I WOULD CERTAINLY GIVE YOU LEAVE TO AMEND THAT YOU

20   DON'T HAVE AN ADEQUATE REMEDY, BUT YOU ARE GOING TO HAVE TO

21   REALLY LOOK HARD AT DISGORGEMENT WHICH IS UNBELIEVABLY

22   DISFAVORED IN CALIFORNIA, AND IT'S VIRTUALLY UNHEARD OF UNLESS

23   ALLOWED BY STATUTE, WHICH IT IS IN SOME CASES.  BUT HERE, YOU

24   ARE JUST ALLEGING COMMON LAW UNJUST ENRICHMENT.  AND I DON'T

25   SEE ANY DIFFERENCE.  YOU SUGGEST YOU COULD GET INJUNCTIVE

1    RELIEF, I DON'T ACTUALLY THINK YOU CAN, I DON'T THINK

2    DISGORGEMENT -- I DON'T THINK DISGORGEMENT IS A REMEDY FOR

3    UNJUST ENRICHMENT, I DON'T THINK YOU GET ALL EQUITABLE REMEDIES

4    YOU'VE EVER THOUGHT OF JUST BECAUSE UNJUST ENRICHMENT IS AN

5    EQUITABLE CLAIM.  I WILL LET YOU DO THE RESEARCH ON IT BUT

6    THAT'S WHERE I THINK THIS IS DEFICIENT.

7                MS. ELMASRY:  OKAY.  THANK YOU FOR THAT GUIDANCE,

8    YOUR HONOR, AND HOPEFULLY FOR THE OPPORTUNITY TO AMEND THIS

9    CLAIM AS WELL.

10        WERE THERE OTHER POINTS ABOUT THE UNJUST ENRICHMENT I CAN

11   ADDRESS?

12               THE COURT:  NO, BECAUSE I AM GOING TO GIVE YOU LEAVE

13   TO AMEND, BUT I JUST WANT TO BE REALLY CLEAR ABOUT THAT,

14   IT'S -- I'VE GOT THE BASIC CONCLUSORY LANGUAGE THAT THERE'S NO

15   ADEQUATE REMEDY AT LAW AND OUR CASE LAW IS CLEAR THAT YOU DO

16   NEED MORE.

17        SO THE INTERFERENCE CLAIMS AND THE NEGLIGENT INTERFERENCE

18   CLAIM HAS ANOTHER PROBLEM TO IT, ALL I WILL SAY, BECAUSE OF THE

19   TIME HERE, IS YOU HAVE TO PLEAD WHAT THE DUTY IS.

20        AND YOU HAVE THE PROBLEM OF SOME PLAINTIFFS PREVIOUSLY

21   PLEADING THAT HONEY WAS A COMPETITOR, SO YOU NEED TO TAKE THAT

22   INTO ACCOUNT.  WE DON'T NEED TO TALK MORE ABOUT THAT.

23        I'M CONCERNED ABOUT THE INTERFERENCE CLAIM IN THE ABSENCE

24   OF SEEING THE CONTRACTS, WE HAVE BEEN THROUGH THAT ON THE

25   STANDING ISSUE, SO IT LOOKS LIKE THAT WILL BE CURED, BUT LET ME

1    HEAR THE REST OF YOUR ARGUMENT ON THAT, ON THE INTERFERENCE

2    CLAIMS.

3              MS. ELMASRY:  ABSOLUTELY, YOUR HONOR.

4         AS TO THE TORTIOUS INTERFERENCE CLAIM, AND SPECIFICALLY

5    WITH REGARD TO THE ARGUMENT THAT THESE CLAIMS FAIL BECAUSE THE

6    SPECIFIC TERMS OF THE CONTRACT ARE NOT ALLEGED IN THE

7    COMPLAINT, YOU HEARD EARLIER ABOUT WILL THE ATTRIBUTION METHODS

8    THAT ARE ALLEGED IN THE COMPLAINT.  WE DETAIL --

9              THE COURT:  I NEED TO SEE THE LANGUAGE.

10             MS. ELMASRY:  ABSOLUTELY.  WE UNDERSTAND AND WE ARE

11    HAPPY TO PROVIDE THAT, BUT I WANT TO MAKE ONE POINT.

12        PAYPAL ARGUES THAT BECAUSE THERE ARE DIFFERENT COMMISSION

13    ATTRIBUTIONS ALLEGED IN THE COMPLAINT, THE CONTRACTS ARE

14    NECESSARY IN ORDER TO SEE WHETHER OR NOT HONEY'S CONDUCT

15    BREACHED --

16             THE COURT:  I'M NOT LOOKING FOR EVERY ONE OF THE

17    CONTRACTS.  I MEAN, YOU GENERALLY PLEAD THAT THEY ARE SIMILAR

18    AND NOW I WANT YOU TO ACTUALLY SHOW ME, BECAUSE IF YOU PLEAD

19    THAT ONE OF YOUR CLIENT'S CONTRACT IS REPRESENTATIVE OF AND A

20    LAUNDRY LIST, I WILL ACCEPT THAT BECAUSE IT'S A PLEADING.

21             MS. ELMASRY:  UNDERSTOOD.

22             THE COURT:  OBVIOUSLY YOU WILL HAVE DONE YOUR

23    HOMEWORK ON THAT.

24             MS. ELMASRY:  UNDERSTOOD.  NO, WE WILL.

25        THE ONLY POINT I WANTED TO MAKE ABOUT THIS, AND I

1        UNDERSTAND YOUR GUIDANCE THAT WE NEED TO PROVIDE THESE

2        CONTRACTS OR SOMETHING AS AN EXEMPLAR, I JUST WANT TO POINT OUT

3        THAT THE COMPLAINT ALLEGES TWO DIFFERENT TYPES OF ATTRIBUTION.

4            ONE IS LAST CLICK, AND THIS WAS ADDRESSED EARLIER, WHICH

5        WE ALLEGE IS THE LAST EXTERNAL CLICK, AND WE UNDERSTAND YOU

6        NEED MORE GUIDANCE ABOUT THAT.

7            THE OTHER ONE IS THIS CREDIT SHARING MODEL WHERE THE

8        SECOND IN TIME AND POTENTIALLY THE FIRST IN TIME AFFILIATE

9        MARKETER WOULD SHARE CREDIT FOR A SALE.

10            UNDER BOTH OF THOSE ATTRIBUTION MODELS, AS ALLEGED IN THE

11       COMPLAINT, WE SHOW UNDER OUR TORTIOUS INTERFERENCE CLAIMS

12       ACTUAL BREACH OR DISRUPTION OF PLAINTIFF'S ECONOMIC

13       RELATIONSHIPS AND CONTRACTS WITH MERCHANTS AND AFFILIATE

14       NETWORKS, BECAUSE UNDER EITHER VERSION OF THOSE MODELS,

15       PLAINTIFFS WOULD BE ENTITLED TO A PORTION OF THE COMMISSION

16       THAT THEY DO NOT RECEIVE.

17            THE COURT:  SO THAT'S INTERESTING, AND I APPRECIATE

18       YOU POINTING THAT OUT BECAUSE I HAD MISSED THAT YOU WERE MAKING

19       THESE CLAIMS UNDER THE CREDIT SHARING MODEL.

20            MS. ELMASRY:  I JUST WANT TO CLARIFY SOMETHING.

21            WE ALLEGE THAT LAST CLICK ATTRIBUTION IS THE INDUSTRY

22       STANDARD, THAT THE VAST MAJORITY OF CONTRACTS APPLY, BUT SHOULD

23       THERE BE OTHER VARIATIONS OF CREDIT ATTRIBUTION MODELS SUCH AS

24       ONE WHERE CREDIT IS SHARED --

25            THE COURT:  YOU NEED TO PLEAD HARM FROM CREDIT

1    SHARING AND GIVE ME SOME CONTRACT LANGUAGE, BECAUSE ACTUALLY IT

2    MAY BE MORE CONCERNING, IN TERMS OF ILLEGALITY, THAT HONEY HAS

3    INTERRUPTED THE CREDIT SHARING THAN THE LAST CLICK BECAUSE LAST

4    CLICK COULD BE ALL THE WAY UP UNTIL PURCHASE AND YOU MAY NOT

5    HAVE ANYTHING.

6        I WAS AWARE THAT THIS WAS A MODEL, I WAS UNAWARE THAT YOU

7    WERE SEEKING RELIEF BASED ON LOSSES STEMMING FROM NOT GETTING

8    YOUR SHARE.

9            MS. ELMASRY:  AGAIN I WANT TO CLARIFY --

10            THE COURT:  SO IF YOU WOULD CLARIFY THAT IN YOUR

11    PLEADING, IF THAT'S WHAT YOU WANT TO DO.

12            MS. ELMASRY:  JUST TO BE SUPER CLEAR, IN THE

13    COMPLAINT WE WERE TRYING TO EXPLAIN THAT LAST CLICK ATTRIBUTION

14    IS THE PREVAILING INDUSTRY STANDARD, AND THE VAST MAJORITY, IF

15    NOT ALL OF OUR CLIENT'S CONTRACTS, WILL LIKELY FOLLOW LAST

16    CLICK ATTRIBUTION.

17        BUT WE WERE TRYING TO SHOW THAT EVEN UNDER THE RARE

18    OCCASIONS WHERE CREDIT SHARING WAS THE MODEL USED BY THE

19    MERCHANT, OUR PLAINTIFFS WOULD STILL BE HARMED UNDER THOSE

20    CIRCUMSTANCES.

21            THE COURT:  IT'S A LONG COMPLAINT AND YOU MAY HAVE

22    ADEQUATELY PLED IT.  I MISSED IT.  SO GO BACK AND LOOK AND

23    SATISFY YOURSELF THAT YOU HAVE SET THAT OUT AS A THEORY OF

24    LIABILITY OF STEALING A PORTION OF THE EARNED COMMISSION, OKAY?

25            AND AS I SAY, IF I MISSED IT, YOU WILL SEE IT THERE AND

1      YOU WILL SAY, WE ARE GOOD, AND YOU WON'T MAKE ANY CHANGES.  BUT

2      I DID MISS THAT THAT WAS A THEORY OF LIABILITY, AND I DON'T

3      THINK IT'S ANYWHERE IN THE MOTION SO MAYBE I WASN'T THE ONLY

4      ONE WHO WAS UNCLEAR, BUT THANK YOU FOR POINTING THAT OUT.

5           AND THAT MAY BE A VERY VIABLE CLAIM IF ANY OF YOUR CLIENTS

6      ACTUALLY HAD A CREDIT SHARING ARRANGEMENT, AND YOU MUST HAVE

7      ALREADY DONE THAT RESEARCH.

8           MS. ELMASRY:  YES, YOUR HONOR.

9           THE COURT:  OKAY.  LET'S SEE, WE NEED TO COVER -- YOU

10     ARE GOING TO COVER THE INTERFERENCE CLAIMS MORE GENERALLY AND

11     THE CONSUMER LAWS?  I'M GOING TO GIVE YOU A COUPLE OF MINUTES

12     TO HIT THE HIGH POINTS.

13          MS. ELMASRY:  YES, YOUR HONOR.

14     I WANT TO ADDRESS PAYPAL'S ARGUMENT THAT WE -- ABOUT

15     WRONGFUL CONDUCT, AND SPECIFICALLY THE ARGUMENT THAT OUR

16     ALLEGATIONS ABOUT A BREACH OF INDUSTRY NORMS DO NOT SATISFY THE

17     WRONGFUL CONDUCT REQUIREMENT, THE TORTIOUS INTERFERENCE CLAIMS.

18          AGAIN I WILL JUST RECAP THAT WE BELIEVE WE SATISFIED THIS

19     REQUIREMENT WITH OUR COMMON LAW CLAIMS, OUR STATE UNFAIR

20     COMPETITION CLAIMS AND OUR ALLEGATIONS THAT PAYPAL'S CONDUCT

21     CONTRAVENES AFFILIATE MARKET INDUSTRY STANDARDS.

22          THE COURT:  SO CLEARLY ANY OF YOUR LEGAL CLAIMS MOVE

23     FORWARD.

24          MS. ELMASRY:  I'M SORRY?

25          THE COURT:  CLEARLY IF ANY OF YOUR LEGAL CLAIMS UNDER

1    CFAA, CDAFA, UCL, ANY STATE LAW CLAIMS MOVE FORWARD OR WHEN

2    THEY MOVE FORWARD, THEN YOU WILL HAVE ALLEGED WRONGFUL CONDUCT.

3    BUT WHAT THE MOTION SAYS IS THEY ALL GO, AND IF ALL YOU ARE

4    LEFT WITH IS INDUSTRY NORM, YOU FAIL.

5        SO DO YOU DISAGREE WITH THAT?

6        MS. ELMASRY:  WE DO.

7    WE DISCUSS IN THE COMPLAINT THAT THE CONDUCT HONEY IS

8    ENGAGED IN IS COOKIE STUFFING, AND THIS CAN BE THE BASIS OF

9    CRIMINAL CHARGES, I HEARD YOUR HONOR'S CONCERN EARLIER.

10        THE COURT:  SO YOU SAID THAT, BUT I READ THAT IN THE

11    COMPLAINT AND I SAID THAT DOESN'T MEAN ANYTHING.  CRIMINAL LAWS

12    HAVE ELEMENTS, YOU HAVEN'T LAID THAT OUT.

13    TO SAY IT CAN BE CRIMINAL SOMEWHERE IS NOT HELPFUL.  IT'S

14    NOT A VALID ALLEGATION.  AND YOU HAVEN'T PLED ILLEGALITY.  YOU

15    HAVE TO PLEAD THAT PAYPAL VIOLATED A CRIMINAL STATUTE AND

16    THAT'S THE BASIS OF THE WRONGFUL CONDUCT, NOT THAT SOMEWHERE IN

17    THE ETHER IT COULD BE A CRIMINAL VIOLATION.

18        MS. ELMASRY:  UNDERSTOOD, YOUR HONOR.

19    I WILL POINT THE COURT TO ONE OF PAYPAL'S CASES, REDFEARN

20    V. TRADER JOE'S WHICH SAYS THAT IT'S NOT NECESSARY TO PLEAD A

21    SEPARATE STANDALONE CAUSE OF ACTION IN ORDER TO SATISFY THIS

22    ELEMENT.  I HEAR YOUR HONOR SAYING --

23        THE COURT:  I AGREE WITH THAT.

24        MS. ELMASRY:  YOU WOULD LIKE FURTHER GUIDANCE AND WE

25    ARE HAPPY TO PROVIDE THAT.

1          THE COURT:  YOU HAVE TO PLEAD THE FACTS SHOWING

2     WRONGFUL CONDUCT, AND IF YOU WANT TO BASE IT ON A VIOLATION OF

3     A CRIMINAL LAW, YOU STILL HAVE TO PLEAD IT AS THE WRONGFUL

4     CONDUCT.  YOU CAN'T JUST THROW OUT A LABEL IT MIGHT BE CRIMINAL

5     SOMEWHERE, AND THAT'S REALLY ALL YOU'VE DONE SO FAR, SO I THINK

6     YOU CAN FIX THAT.

7          MS. ELMASRY:  UNDERSTOOD.  THANK YOU FOR THAT

8     GUIDANCE.

9          THE COURT:  SO SOME OF THE PROBLEMS I SEE WITH THE

10    INTERFERENCE CLAIM HAVE TO DO WITH GOING ALL THE WAY BACK TO

11    OUR STANDING PROBLEM OF SHOWING A REASONABLE PROBABILITY THAT

12    THE CONSUMER WOULD HAVE COMPLETED THE PURCHASE WITHOUT HONEY.

13         SO YOUR STATISTICS ARE REALLY A PROBLEM THERE, BUT I THINK

14    IF YOU FIX THE STANDING ISSUE, THIS MAY COME ALONG WITH IT, AND

15    SO I THINK THAT'S REALLY WHAT YOU NEED TO DO.

16         MS. ELMASRY:  COULD I BE HEARD ON THAT POINT JUST

17    BRIEFLY?

18         THE COURT:  YES.

19         MS. ELMASRY:  WE THINK THERE'S TWO ISSUES WITH THIS

20    ARGUMENT, THE IDEA THAT CONSUMERS WOULDN'T HAVE MADE THE

21    PURCHASE BUT FOR HONEY.

22         THE FIRST IS THAT THIS DOESN'T COMPORT WITH THE FACTS AS

23    WE HAVE ALLEGED THEM, WE ALLEGED THAT BUT FOR HONEY'S

24    INTERFERENCE, PLAINTIFFS WOULD HAVE EARNED THE COMMISSION.  AND

25    WE HAVE ALSO ALLEGED THAT EACH PLAINTIFF HAS A HISTORY OF

1    THOUSANDS OF TRANSACTIONS RESULTING IN COMMISSIONS.

2        AND IF YOU ACCEPT OUR ALLEGATIONS AS TRUE, THIS MEANS THAT

3    A CONSUMER DID NOT ENGAGE WITH HONEY WHEN IT MADE THE PURCHASE

4    SO THAT THE PLAINTIFF GOT THE TRANSACTION -- GOT THE

5    COMMISSION, EXCUSE ME.

6        AND THEN THE SECOND POINT IS JUST THAT CONSUMERS MAKE

7    PURCHASES WITHOUT HONEY ALL THE TIME.

8            THE COURT:  SURE, OF COURSE.

9            MS. ELMASRY:  THEY DID SO BEFORE HONEY EXISTED, THEY

10   DID SO EVEN AFTER IT WAS PURCHASED BY PAYPAL.  SO I JUST WANTED

11   TO ADD THOSE TWO POINTS IN RESPONSE TO THE ARGUMENT, BUT IT

12   SOUNDED LIKE YOUR HONOR HAD A COUPLE OTHER POINTS.

13           THE COURT:  I THINK THAT'S HELPFUL.  I THINK WE HAVE

14   BEEN OVER THE DUTY OF CARE, I NEED YOU TO JUST ALLEGE ON THE

15   NEGLIGENT INTERFERENCE WHAT THE DUTY IS.

16       I'M NOT INCLINED TO ACCEPT THE CHARACTERIZATION OF HONEY

17   AS A COMPETITOR BECAUSE YOU DIDN'T PLEAD IT.  I'M NOT REALLY

18   INCLINED TO PLACE THAT ALBATROSS AROUND YOUR NECK THAT ANOTHER

19   PLAINTIFF MIGHT HAVE SAID THAT.  IT'S NOT GOING TO GO AWAY BUT

20   I'M NOT REALLY INCLINED TO HOLD THINGS UP HERE, BUT I DO NEED

21   TO KNOW WHAT THE DUTY IS, EVEN IF THEY ARE NOT COMPETITORS,

22   THEY ARE STILL STRANGERS TO EACH OTHER, I DON'T KNOW WHAT THE

23   DUTY OF CARE IS, SO I WILL LET YOU AMEND ON THAT.

24       SO I HAVE 12 MINUTES AND WE HAVE AN ARBITRATION CLAIM SO

25   I'M JUST GOING TO LET YOU MAKE THE LAST OF YOUR ARGUMENTS ON

1    THE STATE CONSUMER CLAIMS AND THE UCL.

2            MS. ELMASRY:  THANK YOU, YOUR HONOR.

3        I DO THINK THAT THE POINTS I WAS GOING TO MAKE ABOUT

4    WRONGFUL CONDUCT WE HAVE ADDRESSED THROUGH OUR DISCUSSION ABOUT

5    THE TORTIOUS INTERFERENCE CLAIMS, BUT I WOULD JUST LIKE TO SAY

6    SOMETHING ABOUT THE DUTY OF CARE ON THE NEGLIGENT INTERFERENCE

7    POINTS.

8        I HEAR YOUR HONOR SAYING WE NEED TO ALLEGE THE DUTY, I

9    WANT TO POINT THE COURT TO ONE OF PAYPAL'S CASES, CALIFORNIA

10   EXPANDED MENTAL PRODUCTS, AND THIS CASE DISCUSSES THE POINT

11   THAT COURTS FIND A DUTY OF CARE WHERE THE PLAINTIFF'S ABILITY

12   TO CONDUCT BUSINESS DEPENDS ON THE DEFENDANT'S CONDUCT.

13       THE COURT IN THAT CASE DISCUSSES A CASE WHERE A TENANT OF

14   A RESTAURANT PROPERTY SUED A CONTRACTOR WHO FAILED TO COMPLETE

15   RENOVATIONS ON THE PROPERTY.

16           THE COURT:  THEN ALLEGE IT.  I JUST NEED YOU TO

17    ALLEGE IT.

18           MS. ELMASRY:  UNDERSTOOD.

19           THE COURT:  OKAY.

20           MS. ELMASRY:  THANK YOU, YOUR HONOR.

21           THE COURT:  AND THEN YOU WILL STAND ON THE PAPERS ON

22   THE CONSUMER CLAIMS?

23           MS. ELMASRY:  I THINK -- AS TO THE CONSUMER CLAIMS,

24   THE POINTS THAT I WAS GOING TO MAKE ABOUT WRONGFUL HARM AND

25   COOKIE STUFFING AND BREACH OF INDUSTRY NORMS ARE THINGS WE HAVE

```
1      ALREADY DISCUSSED SO I DON'T WANT TO WASTE THE COURT'S TIME

2      WITH THAT.

3              THE COURT:  OKAY.  THANK YOU.  GOOD JOB.

4              MS. ELMASRY:  THANK YOU.

5              THE COURT:  MR. JACOBSEN, I DON'T WANT YOU TO TALK

6      FAST, BUT I HOPE YOU ONLY HAVE A COUPLE OF POINTS TO MAKE.

7              MR. JACOBSEN:  I'M GOING TO MAKE ONE QUICK POINT,

8      YOUR HONOR, I AM APPRECIATIVE OF THE TIME.

9              ONE THING I WANT TO PUT A MARKER ON IS THE REPRESENTATIVE

10     CONTRACT LANGUAGE.  I THINK WE JUST HEARD THERE COULD BE MANY

11     VARIETIES OF IT, THERE COULD BE HYBRID MODELS, FIRST CLICK

12     MODEL, LAST LICK ATTRIBUTION MODELS, LAST EXTERNAL CLICK, WE

13     DON'T KNOW, AND THAT'S WHY THEY HAVE TO PLED IT, THAT'S WHY WE

14     FOCUSED ON IT.

15             I JUST WANT TO RESPECTFULLY PUT IN A MARKER, I DON'T WANT

16     TO FIND OURSELVES IN A POSITION WHERE THEY SAY TWO CONTRACTS,

17     WHICH THE BEST THEY THINK OF A LOT WITH THE BEST LANGUAGE

18     REPRESENTATIVE OF THIS IS REPRESENTATIVE AS TO THE ENTIRE CLASS

19     OR ALL THE NAMED PLAINTIFFS, ONLY FOR US TO FIND OUT LATER THAT

20     I ASSUME THAT THEY HAD THE CONTRACTS --

21             THE COURT:  MR. JACOBSEN, THAT'S JUST THE WAY IT GOES

22      IN PLEADINGS.

23             MR. JACOBSEN:  NO, I UNDERSTAND THAT, I UNDERSTAND

24     THAT, BUT JUST NO DOUBT THEY HAVE SEEN THE CONTRACTS, THE

25     PLAINTIFFS AT CAPITAL ONE BROUGHT, IN THAT COURT, THEM THROUGH
```

1    ALL THE CONTRACT LANGUAGE, BUT WE WILL TAKE IT UP WHEN FILE

2    THEIR AMENDED COMPLAINT.

3        THANK YOU.

4            THE COURT:  HAS DISCOVERY OPENED?

5            MR. JACOBSEN:  YES.

6            THE COURT:  THEN YOU PROBABLY HAVE ALREADY ASKED FOR

7    ALL THOSE CONTRACTS.

8            MR. JACOBSEN:  AND WE ARE IN THE PROCESS OF GETTING

9    THEM.

10            THE COURT:  WELL THEN YOU KNOW WHAT, YOU KNOW WHAT'S

11    GOING ON THERE, AND I'M NOT GOING TO MAKE THEM PLEAD EVERY

12    CONTRACT.  AND I DON'T MAKE THEM DO ANYTHING, THEY ARE GOING TO

13    LOOK AT THIS CASE, TAKE MY COMMENTS INTO ACCOUNT AND MAKE THE

14    AMENDMENT AS THEY WANT.

15        RIGHT NOW YOU CORRECTLY POINTED OUT I HAVE ZERO CONTRACTS

16    BUT I'M NOT GOING TO SAY I NEED 25.  PLAINTIFFS WILL MAKE THAT

17    JUDGEMENT.

18            MR. JACOBSEN:  UNDERSTOOD, YOUR HONOR.

19            THE COURT:  THANK YOU.  SO I'M GOING TO TRY TO -- WE

20    HAVE RESERVED THIS TIME ON THE ARBITRATION.  LET ME CLOSE UP

21    SOME OF THESE PAPERS SO THEY DON'T ALL GET LOST.

22            MR. JACOBSEN:  I WILL HAND IT OVER TO MY PARTNER,

23    MR. MOSS.

24            THE COURT:  WELL THAT WAS WISE BECAUSE HE'S GOT A

25    HARDER ARGUMENT TO MAKE.

```
1           I JUST DON'T THINK YOU GET AROUND JOHNSON HERE.

2               MR. MOSS:  JEFF MOSS ON BEHALF OF PAYPAL, YOUR HONOR.

3           WE CAN JUMP STRAIGHT TO YOUR CONCERN ABOUT JOHNSON AND

4    SPARE READING WHAT THE REQUIREMENTS FOR A MOTION TO COMPEL

5    ARBITRATION ARE.

6               THE COURT:  RIGHT.

7               MR. MOSS:  YOU KNOW THAT LAW WELL.

8           YOUR HONOR, WE DON'T THINK JOHNSON APPLIES HERE BECAUSE

9    THINK ABOUT THE FACT PATTERN IN JOHNSON.  IN JOHNSON WE HAD

10   WAL-MART TRYING TO INVOKE AN ARBITRATION PROVISION FROM THEIR

11   ONLINE TERMS OF SERVICE, AND THEN THERE WAS A SEPARATE SECOND

12   CONTRACT APPLICABLE TO THE SERVICE CONTRACT THE CONSUMER GOT AT

13   THE WAL-MART STORE RELATING TO THE TIRES, RIGHT.

14          SO WHAT WE HAD THERE IS THE ARBITRATION PROVISION FROM THE

15   ONLINE TERMS OF USE TRYING TO BE APPLIED TO A SECOND AGREEMENT.

16   THAT'S NOT WHAT WE HAVE HERE, YOUR HONOR, WHAT WE HAVE HERE IS

17   PAYPAL SERVICES, WHICH INCLUDE HONEY, IS WHAT IS THE HOOK FOR

18   GIVING ARBITRATION TO PAYPAL IN THIS INSTANCE.  THERE IS NO

19   SECOND AGREEMENT AT ISSUE.

20          SO WE THINK --

21              THE COURT:  BUT I THINK JUDGE GILLIAM'S DISCUSSION OF

22   JOHNSON IN THE ATTIA CASE WAS VERY HELPFUL, BECAUSE THERE

23   MR. ATTIA FAILED TO HAVE A WRITTEN CONTRACT FOR HIS ADVISORY

24   SERVICES BUT HE DID SIGN A SECURITIES AGREEMENT WITH THE

25   COMPANY SO THAT HE COULD GET HIS PAYMENT.
```

1        I THOUGHT THAT WAS MAYBE EVEN A CLOSER SCENARIO.  AND

2    FRANKLY I FIND YOUR PARSING OF THE INTRODUCTORY SENTENCE OF THE

3    USER AGREEMENTS TO BE THE UNREASONABLE ONE.

4        MR. MOSS:  OKAY, YOUR HONOR.  I THINK AT LEAST WITH

5    ATTIA, I WOULD SAY THAT IN THAT CASE THERE WAS THE ALLEGATION

6    OF A SECOND AGREEMENT, RIGHT.

7        SO UNLIKE HERE WHERE THERE'S -- THE ONLY AGREEMENT AT

8    ISSUE HERE IS THE USER AGREEMENTS THAT WE HAVE DISCUSSED IN OUR

9    OPENING MOTION.  SO THAT IS A DISTINCTION.

10       THE COURT:  OKAY.

11       MR. MOSS:  MAYBE I WILL PAUSE IN LIGHT OF THE TIME WE

12   HAVE.

13       THE COURT:  SO I WOULD SAY THAT IF I AGREED WITH YOU

14   ON JOHNSON, I THINK EVERYTHING ELSE ABOUT THE ARBITRATION

15   CLAUSE IS ENFORCEABLE.  BUT THIS IS -- AND IT'S BEEN BRIEFED

16   THIS WAY, I MEAN THIS IS CLEARLY WHAT THE PLAINTIFFS ARE

17   CLAIMING TO BE THE ROADBLOCK AND I THINK THEY ARE RIGHT.

18       I MEAN, FRANKLY I THINK I HAVE A CLEAR AND UNMISTAKABLE

19   DELEGATION UNDER THE AAA RULES THAT IT IS THE ARBITRATOR THAT

20   DECIDES UNCONSCIONABILITY, SO I DON'T EVEN NEED TO GET INTO

21   THAT.  PLUS THERE WAS NO ARGUMENT OF PROCEDURAL

22   UNCONSCIONABILITY, SO I NEVER GET TO SUBSTANTIVE.  SO ON ALL OF

23   THAT, YOU WOULD WIN.

24       AND SOME OF THAT, YOU DIDN'T ACTUALLY PICK IT UP THAT WAY,

25   YOU DIDN'T ARGUE THE PROCEDURAL UNCONSCIONABILITY IN YOUR REPLY

1       THAT THAT WAS MISSING, BUT I HAVE TO APPLY THE LAW.

2               MR. MOSS:  UNDERSTOOD, YOUR HONOR.

3           AND THIS COURT, YOU IN PARTICULAR, HAVE SEEN THE PAYPAL

4       ARBITRATION PROVISIONS BEFORE AND NOT DEEMED THEM TO BE

5       UNCONSCIONABLE SO WE DIDN'T WANT TO BURDEN THE COURT WITH THAT.

6               THE COURT:  THANK YOU.  THE.

7           ALL RIGHT.  WE HAVE PICKED UP OUR SCHEDULE.  AND FRANKLY

8       YOU NEED TO BE CAREFUL WHAT YOU ASK FOR WHEN YOU BIFURCATE A

9       CASE LIKE THIS INTO SOME ARBITRATION AND SOME CLASS ACTION.

10      IT'S NOT NECESSARILY A LOSS FOR YOUR CLIENT HERE.

11              MR. MOSS:  UNDERSTOOD, YOUR HONOR.  THANK YOU.

12              THE COURT:  GOOD MORNING.

13              MR. HELLER:  YOUR HONOR, I'M GOING TO KEEP IT

14      EXTREMELY BRIEF.  ROGER HELLER.

15          WE OBVIOUSLY AGREE WITH YOUR HONOR ABOUT JOHNSON AND I DO

16      WANT TO POINT OUT ON THE PARSING ISSUE, THERE IS ACTUALLY TWO

17      THINGS THAT THEY NEED -- THAT WE NEED YOUR HONOR TO AGREE WITH

18      THEM ON IN ORDER FOR THEM TO BE RIGHT ON THE JOHNSON ISSUE.

19          THEY ARE ASKING YOU TO BOTH SPLIT THE SENTENCE UP INTO TWO

20      PARTS IN A WAY THAT I THINK IS COMPLETELY UNREASONABLE, AND

21      THEN THEY ARE ALSO ASKING YOU TO INTERPRET THE SECOND PART IN

22      AN EXTRAORDINARILY BROAD WAY THAT'S JUST NOT SUPPORTED.

23          WE THINK THE OTHER ARGUMENTS WE MADE IN OPPOSITION WERE

24      ALSO VALID ARGUMENTS, WE DON'T THINK THEY HAVE SUFFICIENTLY

25      ADDRESSED THEM, BUT I'M HAPPY TO LEAVE IT THERE, YOUR HONOR,

1    UNLESS YOU HAVE OTHER QUESTIONS.

2           THE COURT:  I READ JOHNSON AS BEING A BAR TO THE

3    CLAIM, AND SO EVEN THOUGH IT MIGHT BE A VALID ARBITRATION

4    AGREEMENT WHERE IT'S APPLICABLE, IT'S NOT APPLICABLE HERE.

5    THAT'S REALLY ALL WE ARE SAYING.  SO THERE WAS NO CONTRACT

6    FORMATION.

7        I WILL SAY THAT, QUITE HONESTLY, I WAS COMPLETELY

8    UNFAMILIAR WITH THE JOHNSON CASE AND THE IDEA, AND I HAD TO

9    READ IT A FEW TIMES TO REALLY UNDERSTAND IT BASED ON HOW I

10   UNDERSTAND THIS DISTINCTION BETWEEN WHAT'S DELEGABLE TO THE

11   ARBITRATOR AND WHAT ISN'T, BUT THE NINTH CIRCUIT IS VERY CLEAR,

12   AND YOU ARE THE BENEFICIARY OF THAT FOR THIS ARGUMENT.

13          MR. HELLER:  THANK YOU, YOUR HONOR.  I APPRECIATE IT.

14          THE COURT:  ALL RIGHT.

15       OKAY.  SO THANK YOU ALL FOR LETTING ME RUSH YOU THROUGH

16   THIS LAST PART.  AND I DO APPRECIATE SPLITTING UP THE ARGUMENT,

17   IT DID SLOW THINGS UP, BUT FOR A GOOD CAUSE, AND I REALLY

18   APPRECIATE THAT AND REALLY COMMEND ALL OF YOU FOR KNOWING THESE

19   PAPERS SO WELL, IT HELPS ME ENORMOUSLY.

20       I'M GOING TO GRANT LEAVE TO AMEND, I THINK ON EVERYTHING,

21   OF COURSE THAT WILL COME FROM -- IT WILL BE BASED ON MY ORDER,

22   SO YOU DON'T -- YOU WILL START THINKING ABOUT IT, BUT YOU WILL

23   GET MY ORDER.

24       SO I HAVE A QUESTION FOR YOU.  MS. SHARP, YOU MAY BE THE

25   ONE TO ANSWER THIS, I WANT TO GIVE YOU ENOUGH TIME TO AMEND

1    THIS PLEADING TO CURE THE DEFECTS SO THE CASE CAN MOVE FORWARD

2    OUT OF MOTION TO DISMISS LAND, SO I WANT TO KNOW YOUR HONEST

3    REQUEST, KNOWING THANKSGIVING IS ALMOST TOMORROW, AS TO WHEN

4    YOU WOULD PREFER TO HAVE A DEADLINE FOR FILING AN AMENDMENT.

5            MS. SHARP:  THANK YOU, YOUR HONOR.

6        DENA SHARP FOR THE CLASS PLAINTIFFS, AND THANK YOU AGAIN

7    TO THE COURT AND STAFF FOR BEING HERE TODAY, WE KNOW THESE ARE

8    EXTRAORDINARY TIMES.

9        AND WITH THAT IN MIND, I HAVE CONSULTED BRIEFLY WITH MY

10   COLLEAGUES, 30 DAYS SHOULD BE SUFFICIENT FOR US, YOUR HONOR, IF

11   THAT'S ACCEPTABLE TO THE COURT.

12       AND THE FURTHER QUESTION I HAVE FOR YOUR HONOR IS WHAT THE

13   ROAD AHEAD LOOKS LIKE OTHER THAN US AMENDING.  AS THE COURT MAY

14   RECALL, WE HAD AN AGREEMENT WITH PAYPAL AND A SCHEDULE FOR THE

15   CASE AND YOUR HONOR SET CLASS CERTIFICATION, SUMMARY JUDGEMENT

16   AND TRIAL DATES FOR US --

17           THE COURT:  YES.

18           MS. SHARP:  -- AT THE CMC IN JULY.  LOOKING AT THAT

19   SCHEDULE, WHICH I SHOULD NOTE FOR THE RECORD HAS NOT ACTUALLY

20   BEEN ENTERED ON THE COURT'S DOCKET, IT'S REFLECTED IN THE

21   TRANSCRIPT OF THE CMC IN JULY, IT'S QUITE ALL RIGHT, WE DO HAVE

22   A PROPOSED ORDER --

23           THE COURT:  WE HAD SOME STAFFING PROBLEMS THAT HAVE

24   CAUSED SOME THINGS TO DROP.

25           MS. SHARP:  WELL THAT MAY HAVE BEEN ON THE PARTIES'

```
 1          SIDE AS WELL.

 2                  THE COURT:  NO, NO, WE ISSUE A CASE MANAGEMENT ORDER

 3          AS SOON AS THE CASE MANAGEMENT OCCURS.  SO I HAVE TRIAL SET

 4          OCTOBER 18TH OF 2027.

 5                  MS. SHARP:  YES, YOUR HONOR.  WHAT WE WOULD PROPOSE,

 6          SUBJECT TO THE TIMING OF THE COURT'S ORDER AND OUR WORK WITH

 7          AMENDMENT, IS FOR THE PARTIES TO STICK WITH THAT SCHEDULE AT

 8          PRESENT, AND WE HAD A CHANCE TO CONFER WITH MR. JACOBSEN AND

 9          HIS TEAM BEFOREHAND, WE HAVE AN AGREEMENT THAT THAT SCHEDULE

10          IS, FOR THE MOST PART, IN PLACE.

11              I THINK THE ONE THING THAT IS INTEGRAL, GIVEN THE COURT'S

12          COMMENTS TODAY AND UNDERSTANDING WE HAVE OUR WORK CUT OUT FOR

13          US, BUT IN THE SPIRIT OF OPTIMISM I'M HOPING, AS THE COURT MAY

14          RECALL, THERE WAS A LITTLE BIT OF DISCOVERY THAT HAPPENED WHILE

15          THE MOTIONS WERE PENDING, WE HAVE A SERIES OF CMO'S THAT HAVE

16          BEEN ENTERED, AND WHAT WE WOULD LIKE TO DO, OF COURSE SUBJECT

17          TO THE COURT'S GUIDANCE, IS TO GET DISCOVERY UNDER WAY IN FULL

18          NOW.

19                  THE COURT:  YES.  I HAVE NO REASON TO HOLD IT UP.

20                  MS. SHARP:  TERRIFIC.

21                  THE COURT:  I CAN'T SAY WHAT CLAIMS WILL ACTUALLY GO

22          FORWARD.  SO YOUR MOTION FOR CLASS CERTIFICATION IS DUE TO BE

23          FILED ON SEPTEMBER 1ST OF NEXT YEAR.

24                  MS. SHARP:  YES.

25                  THE COURT:  SO THAT'S STILL A LONG TIME.
```

```
1              MS. SHARP:  IT IS LESS THAN A YEAR NOW THOUGH.

2              THE COURT:  YES, IT IS.

3              MS. SHARP:  SO WE HAVE OUR WORK CUT OUT FOR US,

4    YOUR HONOR.

5              AND I WILL NOTE IN CAPITAL ONE, THEY DID FILE A MOTION FOR

6    THE CLASS CERTIFICATION BECAUSE THEY WERE ON THE ROCKET DOCKET.

7    AN UPDATE FOR YOUR HONOR IS THEY SETTLED THOSE CLAIMS.  WE

8    UNDERSTAND THAT BECAUSE OF A BETTER UNDERSTANDING OF WHERE

9    THOSE CLAIMS AND THE CAPITAL ONE LIABILITY ISSUES SAT, SO TO

10   THE EXTENT THE COURT HAS THE BENEFIT OF JUDGE TRENGA HAVING

11   PLOWED THE SNOW A LITTLE BIT, I THINK THOSE DAYS ARE CLOSE TO

12   OVER.

13             THE COURT:  HE'S DONE.

14             MS. SHARP:  THAT'S RIGHT.  SO WE WANTED TO NOTIFY THE

15   COURT YOU WON'T HEAR ABOUT IT ALL THE TIME.

16             THE COURT:  I WAS UNAWARE, MAYBE IT'S NOT ON THE

17   DOCKET THAT -- THAT THE CASE IS SETTLED.

18             MS. SHARP:  THAT'S WHAT WE UNDERSTAND, IT'S JUST A

19   NOTICE OF SETTLEMENT SO FAR.

20             THE COURT:  THERE IS A NOTICE OF SETTLEMENT.  SO GOOD

21   FOR THEM.

22             MS. SHARP:  DETAILS TO FOLLOW.

23             EVERY CASE IS DIFFERENT IS WHAT WE WILL SAY, AND WE HAVE A

24   SENSE THAT THE MARKET CAPITAL HERE MIGHT BE SUBSTANTIALLY

25   LARGER.
```

1    THE COURT:  SO KNOWING THAT CIRCUMSTANCE WHICH IS

2    UNRELATED TO THIS CASE BUT NOT ENTIRELY, I WILL CIRCLE BACK TO

3    MY NOTES FROM THE CASE MANAGEMENT CONFERENCE.  WE DIDN'T REALLY

4    SETTLE ON WHEN WE WOULD -- I WOULD REQUIRE YOU TO ENGAGE IN

5    MEDIATION.

6    MS. SHARP:  IN FACT I DON'T THINK WE DISCUSSED IT AT

7    ALL, YOUR HONOR.  I WENT THROUGH MY NOTES, AND WE ARE OF

8    COURSE -- WE ARE THE PLAINTIFFS, WE ARE ALWAYS OPEN FOR

9    BUSINESS, BUT WE -- AT A TIME THAT OUR COUNTERPARTS THINK IS

10   APPROPRIATE AND THE COURT.

11   THE COURT:  SO I WOULD LIKE TO SET A DEADLINE FOR YOU

12   TO ENGAGE IN MEDIATION.  I PRESUME -- WELL YOU EITHER WOULD

13   BE -- I DON'T THINK COURT MEDIATION IS GOING TO BE HELPFUL IN

14   THIS CASE.  SO EITHER A MAGISTRATE JUDGE OR PRIVATE MEDIATOR.

15   I WILL LET YOU ALL PICK WHAT'S GOING TO BE BEST FOR YOUR

16   CLIENTS.

17   YOU KNOW IF YOU CHOOSE MAGISTRATE JUDGE, YOU CAN ASK, IF

18   YOU BOTH AGREE ON SOMEONE THEN I WILL APPOINT THAT PERSON,

19   OTHERWISE I WILL RANDOMLY ASSIGN IT.

20   BUT I WOULD LIKE YOU TO ENGAGE IN MEDIATION.  AND I'M

21   REALLY LOOKING IN SOME TIME BY THE EARLY SPRING.

22   IS THERE ANY OBJECTION TO THAT?

23   MS. SHARP:  NOT FROM ME, YOUR HONOR.

24   MR. JACOBSEN:  YOUR HONOR, WE DID PREVIEW, WE WERE

25   REQUESTING TO DISCUSS THIS, I'M HAPPY TO CONFER WITH MY CLIENT.

```
 1              THE COURT:  WOULD YOU?

 2              MS. ELMASRY:  IF YOU DON'T MIND, I WOULD LIKE TO

 3      RESERVE ON THAT.

 4              THE COURT:  THAT'S FAIR.

 5          SO HERE'S WHAT I WOULD LIKE YOU TO DO, I'M LOOKING FOR A

 6      DEADLINE FOR YOU TO HAVE A MEDIATION SESSION BY EARLY SPRING,

 7      SO WE WILL CALL THAT APRIL 1ST.

 8          SO ONE, IF YOU DISAGREE WITH THAT, I WOULD LIKE YOU TO

 9      GIVE ME A SHORT STATEMENT ON WHY THAT'S NOT APPROPRIATE, AND IF

10      YOU DON'T DISAGREE WITH IT, I DON'T KNOW THAT YOU WILL BE

11      EMBRACING IT, MR. JACOBSEN, I WOULD LIKE YOU TO GIVE ME -- I

12      NEED A JOINT STATEMENT ON WHETHER YOU CHOOSE A PRIVATE

13      MEDIATOR, I NEVER ORDER IT BECAUSE I KNOW IT'S EXPENSIVE, OR

14      YOU WOULD LIKE A REFERRAL TO A MAGISTRATE JUDGE.

15              AND IF IT'S A REFERRAL TO A MAGISTRATE JUDGE, LET ME KNOW

16      IF THE COURT SHOULD ASSIGN OR WHETHER YOU WOULD LIKE TO

17      RECOMMEND A JOINT SELECTION.

18              MS. SHARP:  WILL DO, YOUR HONOR.

19              THE COURT:  AND YOU KNOW THAT CAN BE ANYWHERE IN OUR

20      DISTRICT, YOU ARE NOT LIMITED TO THE SAN JOSE MAGISTRATE

21      JUDGES.

22              MS. SHARP:  AND WE ARE VERY FORTUNATE TO HAVE

23      EXCELLENT MAGISTRATES.

24              THE COURT:  WE CERTAINLY DO, BUT SOMETIMES IT'S HARD

25      TO REACH AN AGREEMENT.
```

1          MS. SHARP:  INDEED.  BUT THAT'S THE PARTIES' PROBLEM

2     THOUGH, NOT THE COURT'S.

3          THE COURT:  SO IF I COULD HAVE THAT, ALL THOSE THINGS

4     PROVIDED TO ME BY NOVEMBER 21ST, I WOULD APPRECIATE THAT.

5          MR. JACOBSEN:  WILL DO.

6          MS. SHARP:  TERRIFIC.

7       AND PERHAPS WHAT WE COULD DO IS THE PARTIES COULD CONFER

8     ABOUT THAT APRIL 1ST DATE AND THE CONTEXT OF THE SCHEDULING

9     ORDER I JUST DESCRIBED, HOPEFULLY WE INCLUDE APRIL 1 IN A

10    DEADLINE FOR THAT, BUT --

11         THE COURT:  IF YOU RECOMMEND MAY 1ST, GIVE ME A DATE

12    YOU WOULD LIKE IT TO BE, IT'S NOT A NO DATE, THAT'S NOT AN

13    OPTION.

14         MS. SHARP:  AND YOUR HONOR, YOU PRE STAGED WHAT I DID

15    NOT WHICH IS THAT GIVEN THE THANKSGIVING HOLIDAY AND GIVEN THE

16    MANY CLIENTS THAT WE HAVE, IF IT WOULD BE ALL RIGHT WITH

17    YOUR HONOR IF WE SET THAT AMENDMENT DATE JUST A LITTLE FURTHER

18    OUT, PERHAPS THE SECOND WEEK OF DECEMBER, IT MIGHT BE A LITTLE

19    MORE MERCIFUL IF THAT'S ACCEPTABLE TO THE COURT.

20         THE COURT:  ALL RIGHT.  I WILL MAKE THAT 45 DAYS.  IT

21    WILL BE FROM THE DATE OF THE ORDER, NOT FROM TODAY, BECAUSE I

22    WANT YOU TO SEE WHAT I'M WRITING.

23         MS. SHARP:  THANK YOU.

24         THE COURT:  SO THAT WILL GIVE YOU A LITTLE MORE TIME

25    AS WELL.

1    MS. SHARP:  SUPER.  AND IF WE CAN FILE SOONER, WE OF

2    COURSE WILL.  AND I'M SURE WE WILL CONFER WITH THE DEFENDANTS,

3    IF THEY WANT TO FILE ANY FURTHER MOTIONS, WHICH THEY MAY, THEN

4    WE CAN OF COURSE BRIEF THOSE, HAVE THEM HEARD AT THE COURT'S

5    CONVENIENCE.

6         THE COURT:  RIGHT.  AND I'M SURE YOU CAN WORK OUT AN

7    AGREEMENT, IF THE DEFENSE NEEDS MORE TIME OVER CHRISTMAS TO BE

8    PREPARING A MOTION TO DISMISS, I'M SURE YOU WILL WORK THAT OUT

9    BECAUSE I KNOW THAT THE DEGREE OF PROFESSIONALISM IS AT THE

10   HIGHEST LEVEL IN THIS CASE.

11        MR. JACOBSEN:  I AM VERY CONFIDENT, RIGHT COUNSEL,

12   THAT WE ARE GOING TO AGREE TO A VERY, VERY NICE SCHEDULE.

13        MS. SHARP:  ABSOLUTELY.  ALL OF US HAVE HOLIDAYS TO

14   THINK ABOUT, YOUR HONOR.

15        THE COURT:  WE ALL HAVE HOLIDAYS.

16    OKAY.  I THINK THAT TAKES CARE OF EVERYTHING.

17    THANK YOU ALL.

18        MS. SHARP:  THANK YOU AGAIN, YOUR HONOR.

19             (PROCEEDINGS CONCLUDED AT 11:04 A.M.)

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7         I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE

12   INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF

13   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

14

15

16

17

18

19

20

21

22         _____
           SUMMER A. FISHER, CSR, CRR
23         CERTIFICATE NUMBER 13185

24
           DATED:  NOVEMBER 13, 2025
25