[*Submitting counsel on signature page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE PAYPAL HONEY BROWSER
EXTENSION LITIGATION

Case No. 5:24-cv-09470-BLF

**JOINT STATEMENT REGARDING
DISCOVERY DISPUTE**

Defendants PayPal, Inc. and PayPal Holdings, Inc. ("PayPal") move to compel fifteen former named plaintiffs ("Former Plaintiffs" or "FNPs")[1] to produce materials responsive to six RFPs from PayPal's subpoenas dated January 28, 2026 (Exhibit A). Counsel for PayPal and the Former Plaintiffs met and conferred by videoconference on February 18, 2026 and March 18, 2026, and have followed up by telephone numerous times since, including as recently as May 1, 2026. Their respective positions are set forth below and in Exhibit B. PayPal previously served twenty-six Requests for Production ("RFPs") on FNPs before they voluntarily dismissed their claims without prejudice. PayPal thereafter served eight non-party RFPs, and moves to compel on six of them. Former Plaintiffs and PayPal reached agreement on RFPs 3 and 6. PayPal and Former Plaintiffs' respective proposed Orders are attached as Exhibits C and D. Fact discovery closes on November 16, 2026, and trial is set to begin on October 18, 2027.

## I.    PAYPAL'S POSITION

PayPal seeks to compel fifteen FNPs to produce materials to a narrowed set of six RFPs, which largely mirror those compelled by the Court as to former named plaintiffs in the parallel *In re Capital One Fin. Corp., Affiliate Marketing Litig.*, 1:25-cv-00023, Dkt. 226 (E.D. Va.) ("*Capital One*") browser extension litigation. FNPs prosecuted this case for over a year—through the grant of PayPal's motion to dismiss ("MTD") and service of written discovery upon them. Before their discovery responses came due, FNPs dismissed their claims *without* prejudice. PayPal's six requests seek relevant materials, including: (i) FNPs' merchant contracts and payments; (ii) materials reflecting FNPs' understanding of industry practice and terms governing commission attribution and stand-down rules; (iii) affiliate IDs, networks, and commission payments; and (iv) materials relating to the underlying allegations. This discovery directly bears on (1) allegations, particularly at the class certification stage, that contracts between Affiliate Marketers and third parties uniformly reflect an "industry standard" of owed commissions and (2) variability of injury among class members. Moreover, as to burden, FNPs' suggestion that, instead of 15 FNPs

---

[1] Gymcaddy LLC; Motion Butter, LLC; Stephen Sistek; Reid Tomasko; Sebastian Ventura; Colbow Design LLC; Richard Young; Be Victorious LLC; Christopher Komuves; Eli Silva; John Pugh; David Hiser; Just Josh Inc.; Miniac, LLC; and Shanger Danger LLC. Attached as Exhibit A is the subpoena served on Just Josh. The subpoenas' requests are all substantively identical.

providing their agreements and commission data, PayPal must issue—and dozens of *non-party* networks/merchants must respond to—subpoenas is plainly unreasonable and unsupported by law.

### A.      Background of Case and Subpoenas

Background on the case and the claims is set forth in the MTD Order.  Dkt. No. 237.  For a year, FNPs pursued first and third-party discovery, claiming they were injured because "the industry standard…[is] that credit is given to the 'last click' where multiple legitimate clicks exist[.]" *Id*. at 5.  The MTD Order rejected these conclusory assertions, holding that the actual "terms of Plaintiffs' agreements with the merchants" inform whether each plaintiff was injured by PayPal's conduct. *See id*. at 5, 9-10.  Consequently, the agreements—and, in particular, their varying language—are relevant to class certification.  The full extent of that variation remains unknown to PayPal.  Hence, the requested discovery.

On December 15, 2025, PayPal served 26 requests for production on all then-named plaintiffs.  With PayPal's requests outstanding, and a few days *after* the SAC was filed, on January 9, 2026, FNPs (15 out of the 26 previous total) filed notices voluntarily dismissing their claims *without prejudice*.  That same day, Plaintiffs' counsel asked PayPal to "withdraw its discovery requests as to [the FNPs]," and stated they would "not be providing responses to [the] requests." PayPal then served the revised discovery requests under Rule 45 on January 28, 2026—narrowing its requests from 26 to eight targeted requests that hew to the discovery allowed of former named plaintiffs in *Capital One*.  On February 11, 2026, FNPs served their responses and objections.  They declined to produce any materials.  To date, FNPs have agreed to produce material responsive to just two requests (RFPs 3 & 6) and a narrow subset of a third (RFP 1).

#### 1.      The Requested Discovery Is Relevant to PayPal's Defenses

Under Rule 45, "[p]arties may [] obtain discovery from non-parties about any non-privileged matter that is relevant to any party's claim or defense." *Antman v. Uber Techs., Inc.*, 2015 WL 7759475, at *2 (N.D. Cal. 2015).  Moreover, discovery regarding a former plaintiff is permissible where, as here, she "inserted herself in the litigation." *See e.g., In re Drassinower*, 2021 WL 3772328, at *6 (S.D. Cal. 2021) (permitting deposition of former plaintiff where it "is reasonably necessary for preparation for opposing class certification due to lack of commonality"

and was not unduly burdensome); *Brown v. Wal-Mart Store, Inc.*, 2018 WL 339080, at *1 (N.D. Cal. 2018) (while discovery from absent class members is generally not permitted, "the rules pertaining to such discovery are flexible, especially where the proposed deponents have been identified as potential witnesses or have otherwise 'injected' themselves into the litigation."); *see also Moreno v. Autozone, Inc.*, 2007 WL 2288165, at *1 (N.D. Cal. 2007) (permitting depositions of absent class members who filed declarations).

Here, FNPs' boilerplate objections and "compromises" overlook that discovery regarding FNPs is permissible to probe class certification and standing issues—particularly where such FNPs pursued claims a year and had pending discovery responses at the time of withdrawal. Indeed, each category of requests is relevant:

**RFP 1** requests commission agreements between FNPs and Affiliate Networks, eCommerce Merchants, and/or other Browser Extensions. FNPs agreed to produce: (1) Affiliate Network and merchant contracts currently "in their possession"; and (2) a list of all Merchant and Affiliate Networks FNPs have partnered with, which they expect PayPal to individually subpoena. PayPal understands that FNPs have access to all of their agreements (current and historical), which FNPs have advised may number as high as 200, through their affiliate network portals. FNPs believe pulling these materials from the portals is, however, too onerous. They have thus agreed to produce only certain undisclosed agreements in *their actual possession* and told PayPal to subpoena the rest. FNPs' continued resort to a "best source" standard is, tellingly, unsupported by any caselaw and does not absolve them of basic discovery obligations.

This Court's MTD Order recognized class members' agreements are relevant to Plaintiffs' claims, as the terms go directly to Plaintiffs' "industry standard" allegations. Dkt. No. 237, at 5. Understanding the scope of differing affiliate agreements (and their unique terms) will bear critically on class certification. PayPal is entitled to demonstrate the array of contract language and the Court's class certification determination should not be artificially circumscribed by, for example, whether FNPs incidentally saved their agreements or printed them out.

**RFP 2**, as narrowed, requests discovery concerning attribution and standdown rules. FNPs have wholesale refused to produce these materials. Documents demonstrating that FNPs, affiliate

networks, and/or merchants were aware, and understood, that influencers would compete with browser extensions for commissions fundamentally bear upon Plaintiffs' interference claims. Filings in *Capital One* demonstrate that Just Josh (a plaintiff in that case and FNP here) communicated with affiliate network, Impact, days before filing that complaint and was informed that Impact was acutely aware of the competitive arrangement. *See Capital One,* at Dkt. 309 (Aug. 29, 2025). Such statements are relevant because they undermine Plaintiffs' repeated contention that PayPal engaged in surreptitious conduct unbeknownst to affiliates. SAC ¶¶ 7-8 (Dkt. No. 242).

**RFPs 4 and 5** request documents regarding (1) each Affiliate ID/corresponding network used by FNPs, and (2) FNPs' revenues or Commissions earned. Information regarding FNPs' Affiliate IDs, networks, and commissions go to whether Plaintiffs' claims are viable, typical and adequately represent the interests of the proposed class. For example, if a FNP (identified by their ID) partnered with a network prior to PayPal partnering with that entity and received no commissions before and after the PayPal partnership, that evinces the FNP did not suffer an injury attributable to PayPal. FNPs have offered no compromise nor explained why these documents are not readily accessible. Indeed, to the extent FNPs generate such commissions, one would expect it is readily accessible, as they would need it to prepare tax filings or it's reflected in bank records.

**RFPs 7 and 8** request (1) documents received by FNPs in discovery in other browser extension litigation, and (2) non-privileged documents shared with FNPs' counsel regarding this litigation. In connection with RFP 7, FNPs represented that there is only one set of potentially responsive materials: materials produced to FNP Just Josh in *Capital One*. However, multiple *other* FNPs are currently named plaintiffs in pending browser extension litigation (e.g., Motion Butter, LLC and Richard Young are plaintiffs in RetailMeNot litigation). As to Just Josh, while his counsel purportedly no longer has access to an active database, FNPs' counsel have not stated access is unavailable. Plaintiffs concede relevance, and their blanket claim that such materials "might very well" be privileged is insufficient to withhold them.

Tellingly, FNPs do not even attempt to address relevance under the MTD Order. Nor, despite futile efforts to distinguish PayPal's caselaw, do they ever meaningfully address the most on-point authority: *Capital One,* which involved the same claims, the same class, the same

technology, and even some of the same plaintiffs.  The *Capital One* Court compelled former plaintiffs who withdrew their claims without prejudice to produce contracts; materials regarding attribution and standdown rules; information showing each affiliate ID and corresponding affiliate network; and documents regarding online marketing transactions and revenue; and documents received in other browser extension litigation. *Capital One,* at Dkt. 226 (June 6, 2025).  Plaintiffs' counsel should not be permitted to effectively gerrymander discovery by dropping FNPs whose merchant agreements may differ or run contrary to Plaintiffs' "industry standard" allegations.

### 2.    The RFPs Are Not Unduly Burdensome and Are Made in Good Faith

Even if FNPs were true absent classmembers, the information sought is "not readily obtainable from the representative parties or other sources," and the requests are "not unduly burdensome and made in good faith." *Brown*, 2018 WL 339080, at *1.  PayPal seeks items in FNPs' possession or control—including FNPs' merchant contracts, affiliate IDs and commission information.  FNPs have not demonstrated undue burden to produce such information.  Instead, they simply posit they should not have to endure *any* discovery because they have dismissed their claims without prejudice.  For example, while FNPs claim producing their agreements would require screenshotting each agreement, it is far less onerous for FNPs to do so than for the 200+ non-party networks/merchants to individually respond to subpoenas.

The caselaw FNPs have cited does not support their position.  Indeed, FNPs cite a case in which this court ***allowed*** absent classmember discovery. *Brown*, 2018 WL 339080, at *2.  Further, in this Circuit, discovery from former named plaintiffs is distinct from absent class members, which FNPs conflate. *See e.g., In re Drassinower*, 2021 WL 3772328, at *6; *Opperman v. Path, Inc.*, 2015 WL 9311888, at *3 (N.D. Cal. 2015).  FNPs also rely on cases where discovery was denied because it could easily be obtained from a ***named*** party. *See e.g., Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005).  Here, PayPal's requests plainly seek information that is available ***only*** from FNPs themselves, e.g., their agreements, their affiliate commission/revenue, and their documents received in other litigations.  To the extent certain discovery may be in the possession of other non-parties, FNPs offer no explanation as to why hundreds of non-parties should bear such burden, as opposed to FNPs, who actively pursued this litigation.  They should not.

## II.    FORMER PLAINTIFFS' POSITION

Former Plaintiffs are absent class members who voluntarily dismissed their claims at an early procedural stage of this litigation, before the resolution of the pleadings. They do not hold themselves out as class representatives, have not been proffered as fact witnesses, and have not otherwise inserted themselves into the litigation. PayPal now seeks a wide range of materials from them. The effect of the RFPs is to "burden" the Former Plaintiffs "for previously participating in the litigation," *Vedachalam v. Tata Am. Int'l Corp.*, 2011 WL 13161567, at *1–2 (N.D. Cal. Aug. 12, 2011), with some RFPs amounting to little more than fishing expeditions. Former Plaintiffs made a good-faith effort to compromise where reasonably possible, but PayPal fails to demonstrate a particularized need to justify imposing substantial discovery burdens on these absent class members. PayPal's complaint that it might need to subpoena dozens of entities to get the agreements or commission data it seeks, does not mean Former Plaintiffs are the right source for those materials; they are not. Former Plaintiffs respectfully request the Court deny PayPal's motion. If the Court grants any of PayPal's motion, it should direct the parties to meet and confer about production timing.

### A.    The Discovery Sought Is Unnecessary and of Limited Relevance.

A plaintiff in a class action who voluntarily dismisses their claims is treated as an absent class member. *Klein v. Meta Platforms, Inc.*, 2022 WL 22936869, at *2 (N.D. Cal. Feb. 23, 2022). "[C]ourts do not usually allow discovery from absent class members," *Brown v. Wal-Mart Store, Inc.*, 2018 WL 339080, at *1 (N.D. Cal. Jan. 9, 2018), and "the party seeking that discovery must meet a 'high' bar before it is allowed," *In re J&J Inv. Litig.*, 2023 WL 3121922, at *2 (D. Nev. Apr. 26, 2023). Courts in this scenario consider "whether the absent class member has inserted herself into the litigation, such as by submitting a declaration or being identified as a potential witness; whether the discovery is narrowly tailored to relevant subject matter; whether the discovery may be obtained from a named plaintiff or other sources; and whether the discovery requested is unduly burdensome or sought in bad faith." *Klein*, 2022 WL 22936869, at *2. The defendant "must do more than demonstrate that the requested material is relevant," it must show an "actual" or "particularized" need. Newberg and Rubenstein on Class Actions § 9:14 (6th ed.).

Here, Former Plaintiffs voluntarily dismissed their claims before resolution of the pleadings and just two months after party discovery opened. *See* Nov. 6, 2025 Hr'g Tr. at 71:17–19. As PayPal's own cited case recognizes, discovery from Former Plaintiffs is inappropriate where they have not been proffered as fact witnesses, such as "by filing factual declarations." *Moreno v. Autozone, Inc.*, 2007 WL 2288165, at *1 (N.D. Cal. 2007); *see also Brown*, 2018 WL 339080, at *1–2 (plaintiffs identified absent class members as potential witnesses); *In re Drassinower*, 2021 WL 3772328, at *8 (S.D. Cal. Aug. 25, 2021) (former plaintiff responded to written discovery before dismissal); *Opperman v. Path, Inc.*, 2015 WL 9311888, at *3 (N.D. Cal. Dec. 22, 2015) (same). Nor has PayPal made a showing of any particularized need for the discovery it seeks. PayPal suggests that this discovery will supposedly help it defeat class certification. But although "nearly every absent class member potentially possesses information relevant to certification . . . such discovery is generally still prohibited." *In re J&J*, 2023 WL 3121922, at *3 (citation modified). This is particularly true here, where PayPal made "parallel discovery requests . . . on the [eleven] named plaintiffs, which begs the question of why [PayPal] needs discovery from the absent class members on the same types of issues." *Id*. (citation modified); *Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, 2021 WL 3773607, at *3 (N.D. Cal. Aug. 25, 2021) (quashing subpoena where party "seems intent on continuing to treat [third party] as though it were still a party to this action").

### B.    PayPal Fails to Show a Particularized Need.

**RFP 1**. PayPal fails to explain why it needs agreements from *these particular absent class members*, or why Former Plaintiffs are the best source. As a compromise, Former Plaintiffs agreed to (i) produce the agreements they have in their possession; (ii) provide lists of the Affiliate Networks and Merchants they've partnered with (which could be used by PayPal and/or the parties to procure the agreements PayPal seeks, through subpoenas or informally, from the Affiliate Networks and Merchants listed). This agreement was not conditional. Former Plaintiffs also offered to produce what they could obtain via the portals for their top Affiliate Network provided that PayPal confirmed it would not seek these agreements from Affiliate Networks and Merchants. PayPal refused, indicating it intends to pursue the same information from these better sources. Unlike Former Plaintiffs, the Affiliate Networks and Merchants possess a complete set of affiliate

data (agreements, commission information, IDs) spanning the relevant time period and can access that data far more efficiently. *See Shopify (USA), Inc. v. Express Mobile, Inc.*, 2019 WL 5893235, at *3 (N.D. Cal. Nov. 12, 2019) (quashing subpoena where another nonparty was more likely to have the relevant discovery). The suggestion that Former Plaintiffs' position requires PayPal to serve 200 subpoenas is unsupported (PayPal has not been so advised) and also does not change that Affiliate Networks and Merchants are the best source of this discovery (as opposed to having the Former Plaintiffs conduct the same aggregate number of searches, with greater burden, to yield a less complete set).

PayPal significantly understates the inefficiency and undue burden of requiring the Former Plaintiffs to locate and extract documents from various portals. Affiliate portals often have limited lookback windows, rendering any individual data pull incomplete. And while some portals permit the marketer to download PDFs, others merely display pop-ups, requiring the collector to laboriously screenshot and scroll through multiple pages in order to capture the available information. Former Plaintiffs would be required to actively participate in these collections. This burden is multiplied because most Former Plaintiffs partner with multiple Affiliate Networks and/or Merchants. By contrast, the Affiliate Networks and Merchants can provide the documents more efficiently and comprehensively. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008) (requiring discovery from third party with more complete records). The burden of this RFP is unjustified by any particular need for the agreements of these fifteen absent class members. This RFP is also duplicative because Plaintiffs early on sought from Affiliate Networks and Merchants agreements for all of the original plaintiffs (including Former Plaintiffs). *See Updateme Inc. v. Axel Springer SE*, 2018 WL 5734670, at *4 (N.D. Cal. Oct. 31, 2018) (quashing subpoena seeking duplicative discovery). The 1,870 pages Plaintiffs have received in response and reproduced to PayPal include agreements and come from partners for 14 of 15 Former Plaintiffs. Former Plaintiffs' final compromise is to provide (i) a list of their Affiliate Network and Merchant partners, and (ii) any agreements in their possession.

**RFP 2**. To justify seeking all documents or communications concerning attribution and standdown rules, PayPal points to a *single document* referenced in another litigation concerning

representations made by an *Affiliate Network*—not a Former Plaintiff. This RFP is a textbook fishing expedition, aimed at the wrong target at that. PayPal argues this RFP goes to the question of industry standards, but even assuming *arguendo* the industry standard would turn on communications, if any, involving these fifteen absent class members, PayPal's conjecture or hope that a search of Former Plaintiffs' ESI might turn up something useful for it is no reason to subject absent class members to the undue burden of having to search their email accounts, messaging accounts, and electronic files, or of requiring counsel to negotiate search terms and review the results for responsiveness and privilege. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 2405489, at *13–14 (N.D. Cal. Aug. 19, 2025) (nonparty subpoena requiring ESI search was disproportionately burdensome). Absent a particularized need for this discovery, Former Plaintiffs cannot offer a compromise for this RFP.

**RFP 4**. Again, PayPal does not explain why it needs Affiliate IDs from these particular absent class members. Moreover, identifying and collecting every Affiliate ID would involve a time-consuming search going back many years. For instance, many Affiliate Networks use more than one ID per marketer, which would require Former Plaintiffs to hunt down numerous, hard-to-locate IDs, over a period of several years, for each Affiliate Network with which they partner. *See In re Social Media*, 2025 WL 2405489, at *8 (quashing nonparty subpoena in light of the burden of "the time and effort spent on responding"). Absent a persuasive justification for this discovery, Former Plaintiffs cannot offer a compromise for this RFP.

**RFP 5**. Like affiliate agreements (RFP 1), commission data from Affiliate Networks and Merchants with whom Former Plaintiffs have partnered is only available to Former Plaintiffs on a limited basis via the network portals. RFP 5 also seeks much broader commission data than what was ordered in *Capital One*. The same burden, availability, and duplication arguments discussed above regarding RFP 1 apply here. PayPal also fails to explain why commission information for fifteen absent class members would be helpful or relevant. Whether any marketer was harmed will be informed by data from PayPal, the Affiliate Networks, and Merchants—not on whatever limited commission data might be available to these fifteen absent class members, which do not even show commissions that were *not* paid to them. Now, PayPal apparently also wants bank records and the

like, an invasive ask of highly dubious relevance. Even if such records could prove a particular marketer was not deprived of earned commissions (they can't), that would have no bearing on whether Plaintiffs can properly represent an appropriate class here. Former Plaintiffs' final compromise on RFP 5 is to produce a list of their Affiliate Network and Merchant partners.

**RFP 7**. PayPal clarified it seeks two categories of documents here. First, it seeks documents produced in browser extension cases relating to any Former Plaintiff's loss of commissions or revenue. To date, discovery has occurred in only one such case (*Capital One*) and involving only one Former Plaintiff (Just Josh). That case settled and all access to the document database in the case has been deactivated. Thus, even if relevant here (it is not) Just Josh has no responsive documents in his possession, custody, or control. Second, PayPal requests *all* Former Plaintiffs periodically search the productions in any browser extension case where they are a plaintiff, for documents about them. RFP 7 is a pure fishing expedition and unduly burdensome. PayPal fails to explain what documents it hopes to turn up or why they would be relevant to this case. To the extent there is a particularized need for some materials produced in these other cases (the case has not been made), a significantly narrower RFP should be directed to the producing parties, including because any responsive documents would likely be subject to protective orders. Absent a persuasive justification for this discovery, Former Plaintiffs cannot offer a compromise for this RFP.

**RFP 8**. PayPal makes no case for this RFP, which was not ordered in *Capital One*. Another shot-in-the-dark expedition, this RFP also invades attorney-client privilege and work product. *See Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 734 (2009) (noting that "it is the actual fact of the transmission which merits protection, since discovery of the transmission of specific . . . documents might very well reveal the transmitter's intended strategy."). Even for documents that are themselves not privileged, the fact that a Former Plaintiff shared a document with counsel is itself protected by the work-product privilege, and so having to produce documents in response to this RFP as propounded would necessarily reveal protected information. *See id.* Former Plaintiffs cannot offer a compromise for this RFP.

Dated:  May 7, 2026

Respectfully submitted,

By: */s/ Clement S. Roberts*
Clement S. Roberts (SBN 209203)
Geoffrey Moss (SBN 258827)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
croberts@orrick.com
gmoss@orrick.com

Richard A. Jacobsen (*pro hac vice*)
Marc R. Shapiro (*pro hac vice*)
Jennifer Keighley (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
rjacobsen@orrick.com
mshapiro@orrick.com

*Attorneys for Defendants PayPal, Inc. and PayPal Holdings, Inc.*

By: */s/ Roger N. Heller*
Jason L. Lichtman (pro hac vice)
Sean A. Petterson (pro hac vice)
Danna Z. Elmasry (pro hac vice)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
jlichtman@lchb.com
spetterson@lchb.com
delmasry@lchb.com

Elizabeth J. Cabraser (SBN 083151)
Roger N. Heller (SBN 215348)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
rheller@lchb.com

Dena C. Sharp (SBN 245869)
Trevor T. Tan (SBN 281045)
Nina Gliozzo (SBN 333569)

JOINT STATEMENT REGARDING DISCOVERY
DISPUTE
5:24-CV-09470-BLF

Anthony Rogari (SBN 353784)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
ttan@girardsharp.com
ngliozzo@girardsharp.com
arogari@girardsharp.com

Nanci E. Nishimura (SBN 152621)
Thomas E. Loeser (SBN 202724)
Karin B. Swope (pro hac vice)
Jacob M. Alhadeff (pro hac vice)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
nnishimura@cpmlegal.com
tloeser@cpmlegal.com
kswope@cpmlegal.com
jalhadeff@cpmlegal.com

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Classes*

JOINT STATEMENT REGARDING DISCOVERY
DISPUTE
5:24-CV-09470-BLF

**ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), the undersigned filer hereby attests that all signatures listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized filing.

Dated:  May 7, 2026

*/s/ Clement S. Roberts*
Clement S. Roberts