CLEMENT S. ROBERTS (SBN 209203)
croberts@orrick.com
GEOFFREY MOSS (SBN 258827)
gmoss@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

RICHARD A. JACOBSEN (admitted *pro hac vice*)
MARC R. SHAPIRO (admitted *pro hac vice*)
JENNIFER KEIGHLEY (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
Facsimile: +1 212 506 5151

*Attorneys for Defendants*
PAYPAL, INC. AND PAYPAL HOLDINGS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE PAYPAL HONEY BROWSER EXTENSION LITIGATION | Case No. 5:24-cv-09470-BLF<br><br>**DEFENDANTS PAYPAL, INC. AND PAYPAL HOLDINGS, INC.'S STATEMENT IN RESPONSE TO PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED (ECF NO. 295)**<br><br>[Civil L.R. 7-11, 79-5(f)(3)]<br><br>Judge: Honorable Beth Labson Freeman |

Pursuant to Civil Local Rules 7-11 and 79-5(f)(3) and the Stipulated Protective Order, ECF No. 169, Defendants PayPal, Inc. and PayPal Holdings, Inc. (together, "PayPal") respectfully submit this response to Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed, ECF No. 295 (the "Administrative Motion"), in support of sealing the material described in the corresponding Declaration of Marc R. Shapiro ("Shapiro Decl.").

Plaintiffs' Administrative Motion provisionally placed under seal portions of Plaintiffs' Motion for Class Certification, ECF No. 299 (the "Class Certification Motion"); Appendix A and Exhibits A8, A10, A11, A12, A13, A15, and A18 to the Declaration of Dena C. Sharp in support of the Class Certification Motion, ECF No. 299-1 (the "Sharp Declaration"); Exhibits 1, 4, 5, 10–16, 19–25, and 29 to the Sharp Declaration; and portions of Plaintiffs' Proposed Order Regarding Plaintiffs' Motion for Class Certification, ECF No. 299-32 (the "Proposed Order"), each of which contains or reflects material that PayPal designated as confidential or highly confidential under the Stipulated Protective Order. PayPal submits this Statement to establish that, even under the "compelling reasons" standard, the material should remain under seal. *See* Shapiro Decl. ¶ 3.

"Compelling reasons" exist where court files might become a vehicle for improper purposes, such as to "release trade secrets," *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006), or to serve "as sources of business information that might harm a litigant's competitive standing," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Below, PayPal identifies the specific competitive harm that disclosure of each category of material would cause.

**Confidential financial and commercial information.** Courts routinely seal businesses' sensitive financial and commercial information under the compelling reasons standard. *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (pricing terms, royalty rates, and guaranteed minimum payment terms warranted sealing); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1225–26 (Fed. Cir. 2013) (reversing refusal to seal product-specific cost, sales, profit, and margin data). PayPal's Honey business earns commissions from merchants, directly and through affiliate networks, and shares a portion of those commissions with users as rewards. PayPal does not publicly disclose Honey's revenue, transaction margin, commission and take rates, monetized user and transaction volumes, forecasts, the ranking of its merchant partners by revenue, or the cost of its rewards program, all of which appear in Exhibits 13 and 22 and in figures derived from PayPal's data in Exhibit 5. *See* Shapiro Decl. ¶ 3. Disclosure of each type of information would cause PayPal concrete competitive harm. The ranking of PayPal's merchant partners by revenue would identify PayPal's most valuable merchant relationships, allowing competing browser extensions,

coupon and cashback services, and affiliate marketers to target those relationships. PayPal's commission and take rates and the cost of its rewards program would allow those competitors to calibrate their own offers to undercut PayPal's, and would give merchants and affiliate networks leverage in negotiating commission terms with PayPal. And Honey's revenue, transaction margin, monetized user and transaction volumes, and forecasts would reveal the scale and profitability of the business and PayPal's expectations for it, information that competitors could use to inform their own strategic and pricing decisions. *Id.*

A related interest applies to the merchant affiliate agreements that Plaintiffs submitted as Exhibits A8 (Lowe's), A10 (Princess Polly US), A11 (Saks Fifth Avenue), A12 (Samsung), A13 (Sephora), A15 (Udemy), and A18 (Zoro Tools), and as Exhibit 24, *see* ECF No. 299-1 ¶ 17 (identifying the merchant and Bates number of each exhibit), and to Plaintiffs' compilation of those agreements in Appendix A. These are agreements that PayPal entered into with its merchant and affiliate-network business partners, which required review and input from PayPal's legal department. *See* Shapiro Decl. ¶¶ 3–4. They set out the terms, restrictions, compliance obligations, and program settings under which PayPal participates in each merchant's affiliate program and on each affiliate network, and, taken together, would give competitors a map of the merchant programs in which PayPal participates and the restrictions under which it operates in them. *Id.*

Courts find compelling reasons to seal the terms of business agreements where, as here, disclosure would harm a party's competitive standing. *See In re Elec. Arts*, 298 F. App'x at 569; *Kazda v. Aetna Life Ins. Co.*, No. 19-cv-02512-WHO, 2022 WL 1225032, at *12 (N.D. Cal. Apr. 26, 2022) (sealing master services agreement because disclosure "could harm [defendant] by providing other customers with access to the specific terms of this particular agreement"). Further, several of the agreements contain provisions requiring that their terms or related program information be kept confidential, *see, e.g.*, Ex. A8 §§ II.1, XII (PAYPAL_9470_0102235, 0102244); Ex. A11 § 7.1(iii) & Ex. A ¶ 1 (PAYPAL_9470_0094614, 0094619); Ex. A18 §§ 8(b), 10(b) (PAYPAL_9470_0000745, 0000747), such that public disclosure would also risk placing PayPal in breach of its obligations to those business partners. Although a confidentiality provision

would not on its own justify sealing, *see Luo v. Zynga Inc.*, No. 13-cv-00186 NC, 2013 WL 5814763, at *3 (N.D. Cal. Oct. 29, 2013), these provisions reinforce the competitive harm described above.

**Internal system identifiers and technical implementation detail.** Several of PayPal's internal documents contain identifiers of PayPal's internal systems, including the addresses of internal code repositories, administrative dashboards, and project-tracking and messaging systems; Honey's affiliate IDs on named affiliate networks and Honey's internal store identifiers; the structure of the tracking value Honey inserts into affiliate links; an example of the literal patterns used in Honey's stand-down rules; and the internal names of the extension's functions, modules, and analytics events. *See* Shapiro Decl. ¶ 3; *see* Exhibits 10, 11, 14, 15, 20, 21, 23, 25 to the Sharp Declaration. PayPal does not make its source code available to the public. Disclosure of these identifiers and related information, which PayPal designated as confidential during discovery, would allow third parties to target PayPal's internal systems, to spoof or interfere with Honey's attribution, and to replicate PayPal's implementation, while doing little to elucidate the salient issues for the public. *See Kamakana*, 447 F.3d at 1179; *Adtrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2020 WL 6391210, at *2 (N.D. Cal. Mar. 24, 2020)(sealing information about the functionality of defendant's internal systems).

**Non-public internal business information.** Several exhibits comprise non-public business information. For example, Exhibit 13 contains internal PayPal analyses and data concerning the Honey business's revenue, commission rates, monetized user and transaction volumes, merchant partner rankings, forecasts, and investment plans. *See* Shapiro Decl. ¶ 3. Exhibits 11, 16, 20, 23, and 29 consist of internal PayPal communications and proposals concerning the design and operation of the Honey extension, PayPal's product plans, and PayPal's communications with an affiliate network concerning the status of their commercial relationship, none of which PayPal has made public. *Id.* In addition, Exhibit 5 and the highlighted portions of the Class Certification Motion and the Proposed Order disclose figures that Plaintiffs' expert derived from PayPal's non-public transaction-level data. *Id.* PayPal keeps this information

confidential and limits internal access to it. *See* Shapiro Decl. ¶ 5. Disclosure would give competitors and counterparties insight into PayPal's financial performance, product development, commercial relationships, strategic priorities, and decision-making that they could not otherwise obtain, and that they could use to PayPal's competitive disadvantage. Courts regularly seal sensitive financial and strategic business information on this basis. *See Apple*, 727 F.3d at 1225–26; *Kazda*, 2022 WL 1225032, at *12 (sealing internal meeting minutes, emails, and training materials containing "non-public information about [defendant's] business practices"); *Adtrader*, 2020 WL 6391210, at *2 (sealing information regarding defendant's "internal strategic decisions, policies, and processes" and "sensitive financial figures"); *In re Elec. Arts*, 298 F. App'x at 569; *Nixon*, 435 U.S. at 598.

PayPal requests that Appendix A, Exhibits A8, A10, A11, A12, A13, A15, and A18, and Exhibits 5, 10–16, 19–25, and 29 be sealed in their entirety. No less restrictive alternative would suffice for these documents. *See* Civil L.R. 79-5(c)(1)(iii). The confidential information described above is not confined to discrete passages but makes up the substance of each document. Redacting the confidential information would leave little of substance in the public record. *See* Shapiro Decl. ¶¶ 3, 5. For the remaining documents, PayPal seeks only narrow redactions: PayPal requests that the highlighted portions of the Class Certification Motion, Exhibits 1 and 4, and the Proposed Order be redacted, with the remainder of each document filed publicly. Sealing the materials accordingly does not impair the public's understanding of the issues the Court must decide: Plaintiffs' arguments, legal theories, and class definitions remain on the public docket in the public version of the Class Certification Motion, ECF No. 299, and PayPal does not seek to seal them. *See Apple*, 727 F.3d at 1226 (public has "minimal interest" in confidential financial information not necessary to its understanding of the case).

For the reasons stated above, PayPal respectfully requests that the Court seal the Confidential Information as reflected in the proposed order filed concurrently with Plaintiffs' Administrative Motion, ECF No. 295-2.

Dated: November 2, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Clement S. Roberts*
CLEMENT S. ROBERTS
*Attorney for Defendants*
*PAYPAL, INC., and PAYPAL HOLDINGS, INC.*